David C. Bohrer (SBN 212397)
dbohrer@confluencelaw.com
**CONFLUENCE LAW PARTNERS**
60 South Market Street, Suite 1400
San Jose, California 95113-2396
Telephone:  (408) 938-3882; Facsimile:  (408) 971-4332

Bruce G. Chapman (SBN 164258)
bchapman@cblh.com
Keith D. Fraser (SBN 216279)
kfraser@cblh.com
**CONNOLLY BOVE LODGE & HUTZ LLP**
333 S. Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone:  (213) 787-2500; Facsimile:  (213) 687-0498

Attorneys for Plaintiff
PLANTRONICS, INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANTRONICS, INC.,<br><br>              Plaintiff,<br><br>       vs.<br><br>ALIPH, INC., et al.<br><br>              Defendants. | Case No. 3:09-cv-01714-BZ<br><br>**PLANTRONICS, INC.'S PATENT L.R. 4-5(a) OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date:            September 9, 2011<br>Time:            10:00 a.m.<br>Courtroom:   D, 15th Floor<br>Judge:           Hon. Bernard Zimmerman |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    PRINCIPLES OF CLAIM CONSTRUCTION.................................................... 1

III.   LEVEL OF ORDINARY SKILL IN THE ART ................................................. 1

IV.    BACKGROUND OF THE '453 PATENT ......................................................... 2

       A.     The Technology Background ................................................................. 2

       B.     The Invention........................................................................................ 6

       C.     The Prosecution of the '453 Patent and this Litigation ............... 6

V.     PROPOSED CONSTRUCTIONS FOR THE '453 PATENT ........................... 7

       A.     Dimensioned to Cover Portion of Receiver.................................... 7

       B.     Stabilizer Support ................................................................................. 8

       C.     Dimensioned to Fit Within Upper Concha ..................................... 10

       D.     Concha Stabilizer Pad ...................................................................... 10

       E.     The Receiver Having A Tragus Contact Point, And An
              Anti-Tragus Contact Point Disposed Substantially Opposite
              To The Tragus Contact Point ........................................................... 11

       F.     Concha Stabilizer ............................................................................... 13

       G.     Dimensioned To Contact An Upper Concha Between An
              Antihelix And A Crux Of A Helix................................................... 14

       H.     Toroid and Torus................................................................................ 14

       I.     Adapted to Self-Adjust to a Proper Position ................................ 15

       J.     Portion (in connection with "Torus Shaped")............................... 16

       K.     Ring Shaped and Ringed Shape ....................................................... 16

       L.     Portion (in connection with "Ring Shaped") ................................ 17

       M.     Concha Stabilizer Shape Of The Concha Stabilizer ................... 17

VI.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Abbott Labs. v. Sandoz, Inc.,*
    566 F.3d 1282 (Fed. Cir. 2009)................................................................................ 1

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,*
    616 F.3d 1283 (Fed. Cir. 2010).............................................................................. 12

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
    340 F.3d 1298 (Fed. Cir. 2003)................................................................................ 8

*Computer Docking Station Corp. v. Dell, Inc.,*
    519 F.3d 1366 (Fed. Cir. 2008)................................................................................ 1

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
    246 F.3d 1336 (Fed. Cir. 2001)................................................................................ 8

*Daiichi Sankyo Co. v. Apotex, Inc.,*
    501 F.3d 1254 (Fed. Cir. 2007)................................................................................ 1

*Envtl. Designs, Ltd. v. Union Oil Co.,*
    713 F.2d 693 (Fed. Cir. 1983).................................................................................. 1

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010).....................................................................passim

*Intervet Inc. v. Merial Ltd.,*
    617 F.3d 1282 (Fed. Cir. 2010)......................................................................... 9, 13

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)....................................................................... 1, 13

*Playtex Products, Inc. v. Procter & Gamble Co.,*
    400 F.3d 901 (Fed. Cir. 2005).................................................................................. 8

*U.S. Surgical Corp. v. Ethicon, Inc.,*
    103 F.3d 1554 (Fed. Cir. 1997)................................................................................ 7

<u>Other Authorities</u>

American Heritage Dictionary, Third Edition ............................................................ 15

Jeffrey G. Sheldon, *How To Write A Patent Application,*
    PLI (2003), § 6.6.3.1 at p. 6-111 .......................................................................... 17

*Manual of Patent Examining Procedure,*
    § 706.03(d) at p. 700-74........................................................................................ 17

1

## I.  INTRODUCTION

This patent infringement case concerns in-the-ear or "concha" headsets.  Today such headsets are frequently equipped with Bluetooth technology for use with cellular phones.  Pursuant to Patent Local Rule 4-5(a), Plantronics, Inc. ("Plantronics") respectfully submits this Opening Brief on the proper construction of disputed claim terms of United States Patent No. 5,712,453 ("the '453 patent").[1]

## II.  PRINCIPLES OF CLAIM CONSTRUCTION

Plantronics proposes constructions of the '453 patent in accordance with long-established principles of claim construction – giving a claim term the full breadth of its ordinary meaning that one of skill in the art, at the time of the invention and in light of the patent's specification and prosecution history, would have given it, except in the unusual circumstances where the intrinsic record provides a special definition for the term.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1316–17 (Fed. Cir. 2005); *see also Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1373-75 (Fed. Cir. 2008).  Because the law of claim construction is well developed, Plantronics will discuss specific claim construction principles below where applicable to the facts of this case.

## III.  LEVEL OF ORDINARY SKILL IN THE ART

Claims are to be construed from the viewpoint of a person of ordinary skill in the art.  *Phillips*, 415 F.3d at 1313.  The level of ordinary skill in the art is a function of many factors, including "'(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field.'"  *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (quoting *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983)).

---

[1] A copy of '453 patent, along with the Reexamination Certificate, is attached to the Declaration of Keith D. Fraser in Support of Plantronics, Inc.'s Patent L.R. 4-5(a) Opening Claim Construction Brief as Exhibit A ("Fraser Exhibit A").

PLANTRONICS' OPENING CLAIM CONSTRUCTION BRIEF
Case No. 3:09-cv-01714-BZ

4387677_1

Considering all of those factors in the context of the technology of the '453 patent, one of ordinary skill in the art would have a college degree in industrial design or mechanical engineering.[2]

## IV.   BACKGROUND OF THE '453 PATENT

### A.   The Technology Background

Plantronics is a leader in headset technology that began manufacturing headsets in 1961 to address deficiencies in existing aviation headsets (Plantronics is a combination of the words "plane" and "electronics").  It also developed headsets for use in the space programs, including the headsets used during the first moon walk, over which Neil Armstrong's famous words were spoken.  By the 1990s, the office environment became a center of headset innovation, as office workers adopted headsets in increasing numbers.  Headsets that interact with the physical structure of the ear, such as those typically used for the office environment, must take into consideration the anatomy of the ear. A simplified representation of that anatomy is shown below.[3]



---

[2] *See* Deposition of Edmund J. Morrissey at 31:11-32:7 (Fraser Exhibit B), Deposition of Luis A. Pedraza at 32:21-33:2 (Fraser Exhibit C), Deposition of Elizabeth P. Goodrich at 21:17-22:6 (Fraser Exhibit D).
[3] '453 patent, Figure 3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In terms of supporting and stabilizing a headset on a user's head, there are three categories of headsets: headband headsets, ear hook headsets, and concha headsets.[4]  An example of a headband headset is shown below.[5]



[4] *See generally* '453 patent, Description of the Background Art, Col. 1, lines 13-63.
[5] Example is drawn from U.S. Patent No. 4,420,657, cited during the re-examination of the '453 patent, Fraser Exhibit E.

The headband headset locates the receiver in front of the ear canal using a metal or plastic band that arches over the top of the head.[6]  Headband headsets have drawbacks, though.  This type of headset adds weight, complexity, and requires additional effort to put on and take off.[7]

An example of an ear hook headset is shown below.[8]



---

[6] '453 Patent, Col. 1, lines 51-3.
[7] '453 patent, Col. 1, lines 53-55.
[8] Example is drawn from U.S. Patent No. 5,260,997, cited during the prosecution of the '453 patent, Fraser Exhibit F.

PLANTRONICS' OPENING CLAIM CONSTRUCTION BRIEF
Case No. 3:09-cv-01714-BZ

4

4387677_1

As the name suggests, an ear hook headset has a hook-shaped portion that fits behind the ear to stabilize the headset.  Ear hook headsets also have several disadvantages.  For example, an ear hook is awkward and time consuming to place on the ear, and may not ensure that the receiver stays in front of the ear canal.[9]

Finally, an example of a concha headset is shown below.[10]



[9] '453 patent, Col. 1, lines 38-49.
[10] Example is drawn from U.S. Patent No. 4,720,857, cited during the re-examination of the '453 patent, Fraser Exhibit G.

Such a concha headset transmits received sounds to the ear by means of a small receiver which is sized to fit in the lower concha in front of the ear canal.[11]  Conventional concha style headsets position the receiver inside the lower concha between the tragus and anti-tragus to establish placement and support on the ear.[12]  Different ear shapes and sizes make it difficult for a single design to both fit the ear correctly and stabilize the headset.[13]  Also, in telecommunication headsets, a boom or a voice tube is often coupled to the receiver and extends down and towards the user's mouth for receiving the user's voice.[14]  The voice tube or boom adds to the challenge of stabilizing the headset.

### B.    The Invention

The inventors set out to develop a way to stabilize a concha headset across different ear shapes and sizes that did not add significant weight or mechanical complexity.[15]  In the process, they developed a receiver attachment that connects the receiver to a concha stabilizer.  The concha stabilizer engages the upper concha when the receiver is placed in the lower concha between the tragus and antitragus.[16]  As a result, the receiver is supported by three points of contact increasing the use, fit and stability of the headset without adding significant weight or complexity.

### C.    The Prosecution of the '453 Patent and this Litigation

The original application for the '453 patent was filed on April 28, 1994.  The '453 patent issued on January 27, 1998 with fifteen claims.  Plantronics has incorporated the claimed inventions in different commercially successful headsets offered for sale from 1994 and continuing up through the present.

In early 2009, Plantronics filed the current suit for patent infringement in the Eastern District of Texas.  That case was subsequently transferred to the Northern District of California.  In November 2009, Aliph filed an *ex parte* reexamination request in the United States Patent and

---

[11] '453 patent, Col. 1, lines 13-16.
[12] '453 patent, Col. 1, lines 20-22.
[13] '453 patent, Col. 1, lines 23-24.
[14] '453 patent, Col. 1, lines 16-20.
[15] '453 patent, Col. 1, lines 57-63.
[16] '453 patent, Col. 1, line 66 to Col. 2, line 6.

1  Trademark Office ("PTO") and sought to stay this case, alleging in its moving papers "that the PTO

2  will invalidate or substantially narrow the scope of the '453 patent's claims."[17]  Contrary to Aliph's

3  representation, the PTO confirmed that claims 1, 7, 10 and 11 of the '453 patent were patentable

4  (claims 2-6, 8, 9, and 12-15 were not subject to reexamination).  In addition, the Patent Office

5  deemed new claims 16-56 patentable and granted them in the Reexamination Certificate.  Plantronics

6  then amended its infringement disclosures to assert infringement of original independent claims 1 and

7  10, original dependent claims 7 and 11, and new claims 18, 20-21, 25-26 and 28-56.

8  **V.     PROPOSED CONSTRUCTIONS FOR THE '453 PATENT**

9     **A.     Dimensioned to Cover Portion of Receiver**

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "dimensioned to cover a portion of the receiver" [Claim 1, 10] | Plain meaning | fashioned to have a spatial extent that ensures coverage of part but not all of the receiver |

14     Sometimes a construction adopting the "plain and ordinary meaning" of claim language is

15  appropriate.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010).  *See

16  also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (trial judge is not

17  required to restate every claim term).  This is one of those times.

18     The scope of the claim language "dimensioned to cover a portion of the receiver" is readily

19  apparent from the plain language.  Aliph's proposed construction introduces ambiguity that simply

20  does not exist in the original language.  What does "spatial extent" require?  What does "ensures

21  coverage" require?  Indeed, these phrases might introduce new limitations not present in the original

22  language – limitations that themselves would require construction.  Moreover, by including the

23  language "not all of," Aliph's proposed construction plainly introduces a limitation that is completely

24  absent from the claim.  There is nothing in the claim language "cover a portion of the receiver" that

---

[17] *See* Notice of Motion and Motion to Stay Proceedings Pending Re-examination of U.S. Patent No. 5,712,453, filed November 11, 2009, at 4:18-19 [D.I. 77].  The stay was granted, and case management deadlines and discovery were stayed pending reexamination.

1   would preclude coverage of "all of the receiver," because if "all" were covered a "portion" would

2   certainly be covered. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d

3   1336, 1347-48 (Fed. Cir. 2001) ("disposed over a portion" meant "disposed over at least one portion"

4   and did not exclude from the literal claim scope a layer disposed over the entire substrate).

5       The motivation behind Aliph's proposed construction is a mystery. This much is, however,

6   apparent: the plain and ordinary meaning of the words in the claim more clearly delineates the scope

7   of the claim than does Aliph's proposal. The plain and ordinary meaning is, under these

8   circumstances, the correct construction.

9       **B.      Stabilizer Support**

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "stabilizer support" [Claim 1, 11, 21, 30] | Structure connecting the ear cushion to the concha stabilizer pad | a column extending from the upper surface of an ear cushion that stabilizes a headset and supports a concha stabilizer pad |

15      The parties appear to agree that the "stabilizer support" member connects the ear cushion to

16  the concha stabilizer pad. *See* Aliph's proposed construction ("… extending from the … ear cushion

17  … and support[ing] a concha stabilizer pad."). The dispute centers on the issue of whether the recited

18  stabilizer support member requires a particular type of structure, *i.e.* a column. It does not.

19      The patent broadly describes the stabilizer support member in one embodiment as "elongated

20  and flexible."[18] The preferred embodiment in Figure 1 of the '453 patent is an elongated compressed

21  foam member that could perhaps be described as a column.[19] Of course, "the mere fact that the

22  patent drawings depict a particular embodiment of the patent does not operate to limit the claims to

23  that specific configuration." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d

24  1298, 1306-07 (Fed. Cir. 2003). *See also Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d

25  901, 907-08 (Fed. Cir. 2005) (refusing to limit claim term "substantially flattened surfaces" to

---

27  [18] '453 patent, Col. 2, lines11-18.
28  [19] '453 patent, Col. 3, lines17-37.

4387677_1

1    surfaces that were flat even though the drawings only showed a flat surface because the drawings

2    depicted only the preferred embodiment).  Moreover, the '453 patent specification provides other

3    examples of structures for the stabilizer support member: it can be an "arch"[20] or a torus or ring shape

4    connected to a stalk.[21]

5            Aliph's proposed construction – limiting the structure to a column – is an improper attempt to

6    import a limitation into the claim from the preferred embodiment.  *Intervet Inc. v. Merial Ltd.*, 617

7    F.3d 1282, 1287 (Fed. Cir. 2010) ("Construing the claims in light of the specification does not,

8    however, imply that limitations discussed in the specification may be read into the claims. It is

9    therefore important not to confuse exemplars or preferred embodiments in the specification that serve

10   to teach and enable the invention with limitations that define the outer boundaries of claim scope.").

11   Here, the claim and patent specification are broad enough to encompass a range of structures

12   connecting the ear cushion to the concha stabilizer pad.

13           Aliph's proposed construction also attempts to attribute the stabilization function entirely to

14   stabilizer support, when the '453 patent states that stabilization is the result of three points of contact:

15   engagement with the concha, the tragus and the antitragus.[22]   Moreover, Aliph – without any

16   support that Plantronics can discern – seeks to add the limitation that the stabilizer support member

17   must extend from the upper surface of an ear cushion.  The "stabilizer support" term should be

18   construed consistent with the breadth of the '453 patent's disclosure, and Aliph's attempt to import

19   extraneous limitations into the term should, we submit, be rejected.

20

21

22

23

24

25

26

---

[20] '453 patent, Col. 2, lines 19-26.
[21] '453 patent, Col. 2. Lines 26-28.
[22] '453 patent, Co. 2, lines 2-6.

### C.   Dimensioned to Fit Within Upper Concha

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "dimensioned to fit within an upper concha" [Claim 1] | Plain meaning | fashioned to have a spatial extent that ensures fit within an upper concha |

The parties have agreed to the definition of "upper concha."[23]   Given that agreement, the plain and ordinary language fully delineates the scope of this limitation.  As discussed above, by using words such as "spatial extent" and "ensures fit," Aliph is introducing more uncertainty and less clarity than exists with the original language.  In this situation, a construction adopting the plain and ordinary meaning is appropriate.  *Finjan*, 626 F.3d at 1206-07.

### D.   Concha Stabilizer Pad

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "concha stabilizer pad" [Claim 1, 11, 21, 30] | Soft structure that contacts the upper concha | a piece of soft thick material that protects the upper concha |

The parties agree that the "concha stabilizer pad" must be soft.  It should also be clear (simply from the language of claim 1 of the '453 patent) that the concha stabilizer pad is "for contacting the upper concha."  Plantronics proposed construction fully encompasses these basic limitations.

Aliph's proposed construction would, however, add additional, unsupported limitations.  First, Aliph's construction would add the requirement of "thick material."   In this regard, it appears that Aliph is relying primarily on a July 2, 2010 Amendment in the reexamination proceedings.[24]   That amendment argued the cited prior art was lacking a "pad," which was defined by citation to two dictionaries.[25]   Although one dictionary did use the word "thick" when defining "pad," the other

---

[23] Joint Claim Construction and Prehearing Statement, filed June 10, 2011[D.I. 99] ("a depression in a human ear that lies above the crux of the helix and below the antihelix, as illustrated by example in Figure 3 of the '453 patent").
[24] July 2, 2010 Amendment, Fraser Exhibit H.
[25] *Id.* at 19.

dictionary was much broader, defining a pad as a "mass of anything soft."[26]  There is nothing that suggests that Plantronics was giving up the broad scope provided by the latter definition.  Indeed, the full breadth of the definitions provided to the Patent Office during reexamination argues against the addition of a "thick material" limitation.  Secondly, Aliph would add the limitation that the concha stabilizer pad "protects" the upper concha.  This proposed wording would introduce unnecessary ambiguity into the claim.  For example, what is the upper concha being protected from?  Aliph's proposed construction should be rejected in favor of Plantronics' proposal.

### E.     The Receiver Having A Tragus Contact Point, And An Anti-Tragus Contact Point Disposed Substantially Opposite To The Tragus Contact Point

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "the receiver having a tragus contact point, and an anti-tragus contact point disposed substantially opposite to the tragus contact point" [Claim 10] | The receiver having portions that can contact, directly or through the ear cushion, the tragus and antitragus | the receiver having two points, substantially opposite to one another, that directly touch the tragus and the anti-tragus |

The contact points of the receiver with the tragus and antitragus are well illustrated, by example, in the '453 patent.  Figure 1 of the patent shows receiver 27 covered by ear cushion 11, where ear cushion 11 contacts the tragus at 23 and the antitragus at 25.[27]  Figure 1 is reproduced below.

---

[26] *Id.*
[27] '453 patent, Col. 3, lines 9-17.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



**FIGURE 1A**             **FIGURE 1B**

18
19
20
21
22
23
24
25
26
27
28

In the embodiment illustrated in Figure 1, the contact point of the receiver with the tragus and antitragus is through ear cushion 11, as allowed by Plantronics' proposed construction. Aliph, on the other hand, attempts to add a limitation that the receiver must **directly** contact the tragus and antitragus, *i.e.* not through the ear cushion. Such a construction would exclude the preferred embodiment shown in Figure 1. "A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010). Aliph's proposed construction should be rejected for this reason alone.

F.      **Concha Stabilizer**

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "concha stabilizer" [Claim 10, 11, 18, 25, 26, 29, 31-56] | Structure, a portion of which contacts the upper concha | a column extending from the upper surface of an ear cushion that stabilizes a headset |

As discussed above, the patent broadly describes a stabilizer in one embodiment as including a member that is "elongated and flexible."[28]  Although the preferred embodiment is an elongated compressed foam member,[29] other examples are given for this structure, including an "arch"[30] and a torus or ring shape.[31]  Thus, the concha stabilizer encompasses different types of structures. Moreover, from the language of claim 10 of the '453 patent itself, the concha stabilizer "contact[s] the upper concha."  As such, Plantronics' proposed construction is consistent with both the patent specification and the language of the claim.

Aliph's proposed construction would, however, add unnecessary structural limitations improperly imported from the preferred embodiment.  *Intervet*, 617 F.3d at 1287 ("It is … important not to confuse exemplars or preferred embodiments … with limitations that define the outer boundaries of claim scope.").  In this regard, Aliph's attempt to limit the structure of the concha stabilizer to "a column" must inherently be incorrect.  For example, claim 41 further specifies that the concha stabilizer of claim 10 is "substantially ring shaped."   The concha stabilizer of claim 10 must therefore include – but not be limited to – substantially ring shaped structures.  *Phillips,* 415 F.3d at 1314 (other claims of the patent in question, both asserted and unasserted, can also be a valuable source of enlightenment as to the meaning of a claim term).  As such, the concha stabilizer of claim 10 cannot be a column only.  As discussed above with regard to the "stabilizer support" claim term, Aliph is also attempting to add other unsupported limitations – such as the requirement that the

---

[28] '453 patent, Col. 2, lines11-18.
[29] '453 patent, Col. 3, lines17-37.
[30] '453 patent, Col. 2, lines 19-26.
[31] '453 patent, Col. 2, lines 26-28.

concha stabilizer extend from the upper surface of an ear cushion. The Court should reject Aliph's

attempt to add such improper limitations to the construction of the term "concha stabilizer."

### G.     Dimensioned To Contact An Upper Concha Between An Antihelix And A Crux Of A Helix

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "dimensioned to contact an upper concha between an antihelix and a crux of a helix" [Claim 10] | Plain meaning | fashioned to have a spatial extent that ensures touching an upper concha between an antihelix and a crux of a helix |

The parties have agreed to the definition of "upper concha," and there is no dispute about the

meaning of "antihelix" and "crux of a helix."[32]   As a result, the plain and ordinary language fully

delineates the scope of this limitation.  As discussed above, by using words such as "spatial extent"

and "ensures touching," Aliph is simply introducing more uncertainty and less clarity than exists with

the original language.  In this situation, a construction adopting the plain and ordinary meaning is

appropriate.  *Finjan*, 626 F.3d at 1206-07.

### H.     Toroid and Torus

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "toroid shaped" (25); "torus shaped" (35, 36, 39, 40, 47, 49, 53); "torus shape" (55); "substantially toroid shaped" (25); "substantially torus shaped" (39, 49); "substantially torus shape" (55); "comprises a toroid" (29) [Claim 25, 29, 35, 36, 39, 40, 47, 49, 53, 55] | Plain meaning | "Torus" or "toroid," as used in these phrases, means a doughnut-shaped body or surface generated by a circle rotated about an axis. |

It is not clear that the parties have any real dispute regarding the scope of claim terms "torus"

and "toroid."  In that case, there does not appear to be a need to construe those terms.  A torus or

---

[32] Joint Claim Construction and Prehearing Statement, filed June 10, 2011 [D.I. 99].

toroid is a well know shape, and a person skilled in the art would be able to understand and apply the terms.  Patent litigation frequently involves technical claim terms that expert witnesses address in their testimony without the need for claim construction.  Should the Court believe that construction is needed, however, the jury can be given a dictionary definition of the terms.  That definition should not, however, be the narrowest definition available.  For example, the definition provided by one of the dictionaries cited by Aliph defines "toroid" as "a surface generated by a closed curve rotating about … an axis…."[33]  As such, any construction should not be limited to a "circle" rotated about an axis or other perfectly circular shape, as it is in Aliph's proposed construction.  Furthermore, Aliph's proposed construction appears to require a toroid or torus *per se*, while the plain language requires something that is torus-shaped or substantially torus-shaped.  Plantronics accordingly believes that the plain language suffices.

## I.   Adapted to Self-adjust to a Proper Position

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "adapted to self-adjust to a proper position" [Claim 26] | plain meaning | Indefinite; alternatively: made to automatically change to a suitable position |

The words "adapted to self-adjust to a proper position" are clear on their face.  To the extent that Aliph proposes a construction, it appears to simply substitute other similar words for the words in the claim.  In doing so Aliph introduces ambiguity where none existed.  For example, it is unclear whether the parties have any dispute regarding the actual scope (as opposed to validity) of the language.  "Adapted" and "made" appear to mean the same thing.  "Self-adjust" and "automatically change" also appear to mean the same thing.  And, finally, there is no discernable difference between "proper" and "suitable."  A construction adopting the plain and ordinary meaning is proper.  *Finjan*, 626 F.3d at 1206-07.

---

[33] American Heritage Dictionary, Third Edition, Fraser Exhibit I.

**J.      Portion (in connection with "Torus Shaped")**

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "at least a portion of the concha stabilizer is torus shaped" (35); "the portion of the concha stabilizer which is torus shaped" (36); "a torus shaped portion" (47); "at least a portion of the concha stabilizer that is torus shaped" (53) [Claim 35, 36, 47, 53] | plain meaning | "Portion," as used in these phrases, means a part but not all. (Other terms are addressed separately.) |

The meaning of the claim term "portion" is completely clear. Using the word "part" to define "portion," as Aliph proposes, would not alter the scope of the claims, nor would it assist the jury in applying those claims. Furthermore, in the context of the claim language, the addition of "but not all" in Aliph's proposed construction would add a limitation that has no basis. For example, the claim language "**at least a portion** of the concha stabilizer is torus shaped" (emphasis added) inherently means that **all** of the concha stabilizer could, but is not required to, be torus shaped. Yet Aliph's proposed "a part but not all" would mean, contrary to the claim language, that part of the stabilizer must not be torus shaped. So, not only is the plain language "portion" sufficient, but Aliph's proposed construction would improperly alter the scope of the claim. The plain meaning of "portion" is, we submit, the proper construction.

**K.      Ring Shaped and Ringed Shape**

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "ring shaped" (37, 38, 41, 42, 48, 50, 54, 56); "ringed shape" (56); "substantially ring shaped" (41, 50); "substantially ringed shape" (42, 56) [Claim 37, 38, 41, 42, 48, 50, 54, 56] | plain meaning | "Ring shaped" and "ringed shaped," as used in these phrases, means shaped as a circular band. |

"Ring-shaped" and "ringed shape" are common ordinary terms. Both a person skilled in the art and a lay juror should be able to apply these terms without any problem. Aliph's proposed

construction appears to lack support and, in any case, adds nothing of substance. A construction

adopting the plain and ordinary meaning is, once again, appropriate. *Finjan*, 626 F.3d at 1206-07.

### L.   Portion (in connection with "Ring Shaped")

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "at least a portion of the concha stabilizer is ring shaped" (37); "the ring shaped portion of the concha stabilizer" (38); "a ring-shaped portion"(48); "at least a portion of the concha stabilizer that is ring shaped" (54) [Claim 37, 38, 47, 48, 53, 54] | plain meaning | "Portion," as used in these phrases, means a part but not all. (Other terms are addressed separately.) |

The construction of the term "portion" was addressed in section V.J., at page 16 above.

That discussion applies with equal force here. The term should be construed by its plain meaning.

### M.   Concha Stabilizer Shape Of The Concha Stabilizer

| Claim Term | Plantronics' Construction | Aliph's Construction |
|---|---|---|
| "concha stabilizer shape of the concha stabilizer" [Claim 44-50] | the shape of the concha stabilizer | Indefinite; alternatively: a shape conforming to and matching the cavity of an upper concha. |

The somewhat awkward language at issue in this limitation is the result of the specialized

practice within the PTO. During prosecution of a patent in the PTO, patent claims can be rejected if a

claim term lacks "antecedent basis."[34] As a result patent lawyers and agents are taught that "the

definite articles 'the,' 'said,' and 'such' cannot be used unless the following noun has already been

introduced in the claim."[35]

Here, claims 45-50 use the phrase "the concha stabilizer shape." That phrase could not be

used without first providing antecedent basis. In other words, the phrase had to be introduced. Claim

---

[34] *See Manual of Patent Examining Procedure*, § 706.03(d) at p. 700-74, Fraser Exhibit J.
[35] *See* Jeffrey G. Sheldon, *How To Write A Patent Application*, PLI (2003), § 6.6.3.1 at p. 6-111, Fraser Exhibit K.

1  44 provides that introduction with "a concha stabilizer shape of the concha stabilizer."  After that

2  introduction, the term "the concha stabilizer shape" could be used.  The particular shape of the

3  concha stabilizer is then specified in claims 45-50.  As used in the context of claims 44-50, "a concha

4  stabilizer shape of the concha stabilizer" means the shape of the concha stabilizer.  The Court should,

5  we submit, adopt that construction.

6  **VI.    CONCLUSION**

7         Plantronics' proposed constructions reflect how the terms would be understood by a person of

8  ordinary skill in the art in view of the entire intrinsic record, including the problem with conventional

9  concha headsets that is solved by the '453 patent.  Plantronics proposes constructions that are faithful

10  to the invention and that comport with the significant contributions that the patent represents.

11  Accordingly, Plantronics respectfully requests that the Court adopt its proposed constructions for the

12  '453 patent.

13

14  DATED:  July 11, 2011                    Respectfully submitted,

15                                            CONNOLLY BOVE LODGE & HUTZ LLP

16

17                                 By:  */s/ Bruce G. Chapman*
                                         Bruce G. Chapman
18                                       Attorneys for Plaintiff
                                         PLANTRONICS, INC.

19

20

21

22

23

24

25

26

27

28