Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Bernard Zimmerman

|                         |   |                 |
|-------------------------|---|-----------------|
| Plantronics, Inc.,      | ) | No. C09-1714 BZ |
|          Plaintiff,     | ) |                 |
|      vs.                | ) |                 |
| Aliph, Inc.,            | ) |                 |
|          Defendant.     | ) |                 |

San Francisco, California
Friday, June 24, 2011

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES:**

For Plaintiff:

            Confluence Law Partners, LLP
            60 South Market Street, Suite 1400
            San Jose, CA 95113
      **BY:  DAVID C. BOHRER**
            **ATTORNEY AT LAW**

            Connolly Bove Lodge & Hutz LLP
            333 South Grand Avenue, Suite 2300
            Los Angeles, CA 90071-1504
      **BY:  KEITH DOUGLAS FRASER**
            **ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Transcribed By:    Stacy Wegner
                   Transcriber
                   smwtyping@yahoo.com
                   (859) 539-2802

**APPEARANCES:    (Continued)**

For Defendant:

                    Quinn Emanuel Urquhart & Sullivan,
                    LLP
                    555 Twin Dolphin Drive, Fifth Floor
                    Redwood Shores, CA 94065
            **BY:  GABRIEL S. GROSS**
                  **ATTORNEY AT LAW**

| | |
|---|---|
| 1 | Friday, June 24, 2011                                    9:02 a.m. |
| 2 | |
| 3 | TRANSCRIBER'S NOTE:   Audio transmission begins |
| 4 | mid-sentence. |
| 5 | **MR. BOHRER:**  -- for Confluence Law Partners along |
| 6 | with Connolly Bove.  We are counsel for Plantronics. |
| 7 | **THE CLERK:**  Calling civil 09-1714, Plantronics |
| 8 | versus Aliph Inc. et al. |
| 9 | **THE COURT:**  Well, I -- you already have |
| 10 | appearances.  Are you satisfied?  We've done this a little |
| 11 | backwards. |
| 12 | All right.  Look, folks, I've read your papers, and |
| 13 | I think -- I think I can -- I think this may be the first |
| 14 | discovery dispute we've had. |
| 15 | **UNIDENTIFIED SPEAKER:**  That's correct, Your Honor. |
| 16 | **THE COURT:**  All right.  So let me explain -- |
| 17 | **UNIDENTIFIED SPEAKER:**  Yes. |
| 18 | **THE COURT:**  -- to you what I'm going to do.  I'm |
| 19 | going to work through -- try to work through these issues |
| 20 | with you and see if I can help you resolve them informally. |
| 21 | Some of these things have come up before, and I have some |
| 22 | ideas on how I deal with them.  You know, there's one issue |
| 23 | that I haven't encountered with yet. |
| 24 | If we can resolve these things informally -- and I |
| 25 | may ask you to meet one more time after this -- then that's |

1   the end of it.  Actually, on one of these issues I think I

2   may be able to rule today, unless somebody decides they need

3   further briefing.

4          But otherwise, if I can't help you resolve it

5   informally and somebody wants to file a motion, I will give

6   you leave to do so, set up a briefing schedule and a hearing

7   schedule, if appropriate.

8          I just caution you that once you sort of have my

9   views on these issues, if you want to file a motion or have

10  briefing, and so on, you need to have a principled reason for

11  doing so.  It can't simply be, "Well, we'll prolong this for

12  at another couple of months and run the same issues around a

13  different block."  If I conclude that that's what's

14  happening, well, I may well conclude that somebody is acting

15  without substantial justification and there will be

16  consequences.

17         So with that, let me talk to you about the two

18  issues we have.  The one that I think I can rule on is the

19  issue, which is posed by letters -- let's see.  This would be

20  document 98 and 101.  The letters are highly nuanced, so I

21  don't know that I can actually resolve anything, but I'm

22  hoping than once I give you my views this will go away.

23         What the -- let's see.  With plan -- okay.  It was

24  Plantronics' instructions, so the first letter I have, which

25  is 98, is Aliph's letter.  Now --

1            **MR. GROSS:**  Right, Your Honor.

2            **THE COURT:**  What -- and as I understand the dispute

3   here, is that during the deposition of one of the inventers,

4   there was some discussion about a diagram, and the inventor

5   was asked to mark -- well, this is part of the nuances.

6            Let me just tell you what my views are.  If during

7   the deposition or during trial a witness is shown something

8   like a photograph, a map, a sketch, and is asked to point out

9   where something is -- you know, "Where is the arm" -- which

10  seems to have been the -- you know, one version of what

11  happened here.  "Where were you standing in the room?  You

12  know, could you mark that on the diagram?  Could you put an

13  arrow, you know, where you think the accident occurred?"  You

14  know, that sort of thing.  Now, I believe that that's proper,

15  and that seems to be what Aliph is saying happened.

16            Now, the -- Plantronics disagrees and asks -- it

17  says that the witness was being asked to diagram testimony.

18  I don't think it's proper during a deposition or during trial

19  to just ask a witness to go to a board and start making

20  drawings.  There may be circumstances under which it's

21  improper.  There may be instances where the witness is having

22  trouble explaining something.  The witness may be

23  inarticulate.  You know, there is an old adage that a picture

24  is a worth a thousand words.

25            I can't tell from these highly nuanced letters what

1  happened here.  So if the guidance I'm giving you in terms of

2  what I think should have happened is not enough, then I guess

3  I'll give somebody leave to file an appropriate motion.  The

4  bigger problem I have is who will that be.  The only --

5        **MR. GROSS:**  Your Honor, this is Gabe --

6        **THE COURT:**  -- basis --

7        **MR. GROSS:**  -- Gross for Aliph.  May -- may I be

8  heard, please?

9        **THE COURT:**  Well, just -- before you do, I think

10  you need to hear the rest of what I'm about to say.

11        **MR. GROSS:**  I'm sorry.  I didn't mean to interrupt.

12        **THE COURT:**  Because the bigger concern I have is,

13  you know, sort of whose burden is this going to be because

14  what -- what there seems to be no disagreement about is that

15  a witness was apparently three or four times instructed not

16  to do something.

17        Now, the only basis for instructing the witness not

18  to do something that I'm aware of is if the answer is

19  privileged or otherwise invades some right that once the

20  answer is given it can't be undone.

21        The proper way for Plantronics to have dealt with

22  this issue, as far as I'm concerned, is to allow the

23  testimony to proceed, allow the witness to make whatever

24  markings he was asked to do so, and then file a motion for a

25  protective order precluding the use of the marked-up exhibit

1  or striking the testimony, whatever is important.  Or I

2  suppose if Plantronics had concluded that the insistence on

3  the witness making whatever the markings were had gotten to

4  the point where it became oppressive, then it had the

5  opportunity to adjourn the deposition and move for a

6  protective order.

7         So my suggestion -- then I'll turn it over to the

8  parties -- is that the witness be produced, be allowed to

9  make the markings, if they are of -- of the kind that I have

10 said, and if it turns out that what was asked for was what

11 Plantronics calls "a diagram," I'll give Plantronics, I

12 guess, leave to file some sort of a motion for a protective

13 order.

14        Now, Mr. Gross.

15        **MR. GROSS**:  Thank you, Your Honor.  I -- I do think

16 the Court's views of the propriety of instructions are pretty

17 much lined up with the way Aliph feels -- views Rule 30 and

18 the relevant case law interpreting it.

19        The -- the problem that developed in this

20 deposition was, in fact, that Plantronics was asking for the

21 types of labeling that you described.  Those -- those

22 questions were met with instructions not to answer.

23        The one time Plantronics' counsel did allow the

24 witness to mark up a document was when he on his own wanted

25 to, in fact, create a brand new drawing from scratch.  So

1  there was some disconnect between what was permitted when it

2  was helpful to Plantronics, what was forbidden when it was

3  not helpful to Plantronics.

4       And where we're left is that we now have a witness

5  who through these instructions all but told very explicitly

6  in the middle of a deposition to stop offering testimony

7  that's helpful to the Defendants, and it was very clear

8  through these instructions how he was coached.  His answers

9  became evasive and far less cooperative after the

10 instructions.

11      So we -- we may well need more time with the

12 witness.  Although, I'm not optimistic after this sort of

13 coaching that he'll provide completely unrehearsed testimony.

14      So what we -- what we would ask the Court to help

15 us with is -- and I -- I think -- I think it has so far is to

16 make very clear that going forward there are only narrow

17 grounds for instructing a witness not to answer, so that this

18 doesn't happen again because we -- we are concerned that it

19 may.

20      **THE COURT:**  I don't see why --

21      **MR. GROSS:**  And we would like to --

22      **THE COURT:**  -- I have to make that clear.

23      **MR. GROSS:**  (Inaudible - - due to simultaneous

24 colloquy).  Excuse me.  Aliph would have like to have the

25 right to bring this witness back, if it's necessary.  He did,

1  in fact, testify, as we'll get to in a moment, I'm sure,

2  about the second motion, that there are a number of other

3  documents relating to his invention that have still yet to be

4  produced to Aliph.

5       **THE COURT:**  Well, then let's --

6       **MR. GROSS:**  (Inaudible - - due to simultaneous

7  colloquy.) instructions.  We -- we appreciate the Court's

8  guidance, and we think it's been very clear, and we would

9  like to reserve the right to bring this witness back.

10      Counsel for Plantronics does have all of his

11  objections on the record, at which point the Court -- and the

12  Court could rule on those if motion practice becomes

13  necessary at a later point, but we want to avoid these sorts

14  of instructions going forward.

15      **THE COURT:**  Yeah.

16      **UNIDENTIFIED SPEAKER:**  Yeah.

17      **THE COURT:**  All right.  Look, you said about 19

18  things.  Of course, you know, the -- we'll have to bring the

19  witness back so he can answer the questions he was instructed

20  not to answer.  Many of the rest of the things you've said I

21  don't know what to -- to say.

22      Does Plantronics really believe that it has rights

23  that are not contained in Rule -- I don't have my rule book

24  in front of me -- it's 26 something?  Maybe it's in the 30s.

25  That it has rights to instruct the witness, which are not

1   given in the Federal Rules?  Well, let me ask you a specific

2   question.

3          **UNIDENTIFIED SPEAKER:**  (Inaudible - - due to

4   simultaneous colloquy.)

5          **THE COURT:**  Why does Plantronics think it had the

6   right to do what it did?

7          **MR. BOHRER:**  Your Honor, this is Dave Bohrer.

8   Would it be appropriate if -- if I could respond now?

9          **THE COURT:**  Yeah.  Maybe you can start just by

10   answering my -- my question.  As I say, in my mind, that's

11   the bigger problem because if you -- I'm just curious --

12          **MR. BOHRER:**  The short answer is there's no --

13          **THE COURT:**  -- Mr. Bohrer (Inaudible - - due to

14   simultaneous colloquy.)

15          **MR. BOHRER:**  Oh, the short is answer is (Inaudible

16   - - due to simultaneous colloquy.)

17          **THE COURT:**  Mr. Bohrer, where -- where are you

18   from?

19          **MR. BOHRER:**  (Inaudible - - due to simultaneous

20   colloquy.) I'm a --

21          **THE COURT:**  Confluence Law Partners.  Where are

22   they located?

23          **MR. BOHRER:**  San Jose, Judge.

24          **THE COURT:**  Oh, okay.  So you're local.  I mean,

25   sometimes I get people from out of state who tell me that

1    it's their practice in, you know, Chicago, New York,

2    wherever, to do these kinds of things.  So explain to me what

3    was your -- the -- what was the basis for your instructing

4    the witness not to answer?

5         **MR. BOHRER**:  Well, first of all, I -- I wanted to

6    answer your question is that I agree with Your Honor that

7    there is no rule or -- or that it is not within the rules to

8    prevent someone from marking a document at request.  I'm not

9    taking the position that you -- you have the ability as -- as

10   a general rule to instruct someone to do that.  So I -- I --

11   I want to be clear.  I'm -- I'm not trying to just -- just

12   yell into the wind.

13        In this particular situation, the witness had been

14   asked repeatedly with respect to the written description,

15   with respect to the figures.  In fact, in counsel's letter

16   that Your Honor has in front of you, you have a preferred

17   embodiment, and there's an item number 17.

18        And the witness orally said, "Well, as I describe

19   the different elements of the invention, item 17 in figure 1

20   A would be an arm."  We went through several hours of that,

21   with respect to CAD drawings, etcetera, on and on and on.

22        At a certain point we crossed the line where

23   counsel was essentially doing -- or -- or -- or engaging in a

24   Rule 26 expert deposition.  And furthermore, it was clear

25   that there was no misunderstanding, either by counsel or the

1  witness.  So I -- I think he's got the witness locked in, and

2  we never ever instructed not to answer orally.

3          So I -- I don't see the need to have the witness

4  come back, and if -- if -- if with your guidance and -- which

5  we didn't have at the time -- and this was on a Saturday, and

6  there was no advance notice that counsel was seeking any

7  broader diagram.  If this is simply a matter of marking the

8  document to confirm his -- the testimony or an item like

9  you've described, fine, but at the time we don't know where

10  that's going and didn't want to open it up so --

11          **THE COURT**:  Look, I don't have --

12          **MR. BOHRER**:  (Inaudible - - due to simultaneous

13  colloquy.) is understood.  I -- I don't see the need to have

14  to reproduce him, but I'm open.  If -- if counsel is saying

15  he thinks that's necessary, I'm open to engaging in that, but

16  we didn't have your guidance at the time and (Inaudible - -

17  due to simultaneous colloquy.)

18          **THE COURT**:  But you don't need it, Mr. Bohrer.

19  This is why -- I wish you would answer my basic question.

20  Why do you think you had the authority to instruct the

21  witness not to answer, as opposed to what the rules oblige

22  you to do, which is permit the testimony to go forward, so in

23  this case he marks up the diagram?

24          I don't have the transcript in front of me, so I

25  don't know whether the questioning was of the kind that you

1  have said or the questioning was of the kind that Aliph had

2  said.  And if the parties want to -- as I say, I'll give

3  somebody leave to file a motion.  You can file the relevant

4  portions of the transcript, and I'll deal with it, and the

5  consequences will be what the consequences will be.

6          But you have -- you had an easy remedy.  Just allow

7  the witness to mark up the document, then move to exclude,

8  strike, delete, whatever you want to call it.  Why are we

9  having this discussion, Mr. Bohrer?

10      **MR. BOHRER:**  We didn't have the opportunity to call

11  and ask you (Inaudible - - due to simultaneous colloquy.)

12      **THE COURT:**  Well, why do you need to call and ask

13  me?

14      **MR. BOHRER:**  Judge, the answer is -- is that where

15  we -- this is not someone who was designated to testify as an

16  expert.  And in my opinion, at the time, after several hours

17  of discussion, oral, which had been given unimpeded, we had

18  crossed the line into an area where this third party witness

19  was prejudiced, both by being asked to give free expert

20  testimony and as an inventor being asked to give opinions,

21  not based on -- on what had gone on or what he had done or

22  what he had seen, but opinions as a testifying expert, and

23  that was the basis.  If I -- I --

24      **THE COURT:**  All right.  Look --

25      **MR. BOHRER:**  I -- I -- and -- and so --

1          **THE COURT**:  -- I have to move on here.

2          **MR. BOHRER**:  I understand your guidance, and we --

3    we will comply with that.

4          **THE COURT**:  Well, no.  I don't think you do.  I

5    don't think you do, and I need to make this clear.  Okay.

6          First of all, I wasn't able to deal with this issue

7    when it arose because I was on vacation.  I just got back

8    this week.

9          Secondly, you know, we're going to be with each

10   other for a period of time.  So you need to understand some

11   really basic rules about conducting discovery in this case.

12         And rule number one is -- just give me a minute.

13   Okay.  Rule number one is you can't not make discovery

14   because you're awaiting my guidance to tell you that you have

15   to comply with the rules.  I'm issuing a blanket statement to

16   both sides.  You got to comply with the rules.

17         And I'm not sure what's not clear about that, Mr.

18   Bohrer.  Is rule is very clear.  The rule says -- and I'm

19   looking at Rule 30(c)(2).  "Objections, you know, must be

20   noted on the record, but the examination still proceeds.  The

21   testimony is taken subject to any objection.  An objection

22   must be stated concisely in a non-argumentative and non-

23   suggestive manner.  A person may instruct a deponent not to

24   answer only when necessary to preserve a privilege, to

25   enforce a limitation ordered by the Court" -- I've ordered

1    none -- "or to present a motion under Rule 30(d)(3)," which

2    is what I had suggested.  And that's, I believe, a motion for

3    a protective order on the grounds that it's, you know,

4    harassing, oppressive and the like.

5            So what I want to make clear because I don't want

6    to be referring, so to speak, these kinds of disputes every

7    week because -- we're about to come to some of this --

8    somebody hasn't made discovery because I haven't given them

9    guidance that I expect them to do what the rules require.

10           So let me go around the room.  Mr. Bohrer, do you

11   have any questions about that?

12           **MR. BOHRER:**  Not at all, Judge.  You're crystal

13   clear.

14           **THE COURT:**  Mr. Fraser, do you have any questions

15   about that?

16           **MR. FRASER:**  No, Your Honor.

17           **THE COURT:**  Mr. Gross?

18           **MR. GROSS:**  We understand, Your Honor.

19           **THE COURT:**  All right.  Now, whatever you all want

20   to do about this is fine.  If you want to continue to contest

21   this issue, I will give -- I believe the only appropriate

22   motion would be a motion, I think, by Plantronics for a

23   protective order to prevent the witness from being asked to

24   mark up the diagram.  I will give Plantronics leave to file

25   that motion.

1          And I'll -- as I say, if you want to, just make

2     sure you're complying with Rule 37-2.  Well, this isn't

3     really a 37-2 issue.  What I need is the relevant portions of

4     the transcript, so that I can decide whether the witness is

5     being asked to point to where something is or whether the

6     witness is being asked to diagram testimony.

7          Now, that said, let me move on to the other issue.

8     I'll -- and when -- well, let me just find out.  Does either

9     side have anything they wish to add before I move on to the

10    documents and interrogatories?  Mr. Gross (Inaudible - - due

11    to simultaneous colloquy.)

12         **MR. GROSS:**  This is Gabe Gross for Aliph, Your

13    Honor.  No, we're fine.  Thank you.

14         **THE COURT:**  All right.  And Mr. Bohrer or Mr.

15    Fraser, anything you wish to add?

16         **MR. BOHRER:**  No, Judge.

17         **THE COURT:**  Okay.  So with respect to document

18    productions, discovery ends for this phase of the case, by

19    stipulation, July 1st.  Now, is the discovery -- what is the

20    status -- as of today, which is June 24th, what is the status

21    with the discovery?

22         **MR. GROSS:**  Your Honor, this is Gabe Gross again

23    for -- for Aliph.  The status of discovery, at least as it

24    relates to claim construction, is very much incomplete.

25         We have received empty interrogatory responses

1  relating to claim construction from Plantronics, in which

2  they've invoked Rule 33(d) and pointed us to a small handful

3  of documents that simply aren't responsive to questions about

4  who, what, when and where the development of the invention

5  occurred, who contributed -- who contributed in what ways to

6  the claimed inventions.  We have no meaningful interrogatory

7  responses on those.

8          And with respect to a group of document requests

9  that also relate to the development of this invention, we

10 have a partial production, and we are told by counsel to

11 expect much more in three to four weeks, which will be after

12 the claim construction discovery cutoff.

13         And we've also learned from witnesses, including

14 Mr. Morrissey -- about his testimony we just talked about --

15 we learned that there are things like lab notebooks at

16 Plantronics that we haven't seen.

17         So claim construction discovery is very much

18 unfinished right now, and we've already deposed three of the

19 four inventers without having seen all of the relevant

20 records, which has us very concerned.

21         **THE COURT**:  All right.  Look, let me -- again, the

22 Rule 33(d) issue comes up all the time, and I think the rule

23 is quite clear in its case -- on its face, and if -- and --

24 and the cases construing it are quite clear.

25         You cannot simply answer an interrogatory.  And

1   I've looked at these interrogatories -- and I don't have the

2   interrogatories in front of me.  I simply have Mr. Gross'

3   paraphrase of numbers one and four as, "Seeking the identity

4   of persons who participated in the concession, development

5   and reduction to practice, what each person contributed, and

6   when the work was done."  Those seem to be proper.

7           To have a Rule 33(d) response, it has to be as easy

8   for the -- the party seeking discovery to determine the

9   answers as it is for the party making discovery.  It's hard

10  for me to conceive -- and I haven't seen the documents --

11  that the Plaintiff -- I'm sorry -- that the Defendants --

12  that Aliph -- it's much easier for me to deal with Aliph and

13  Plantronics -- that Aliph will be able to figure out, you

14  know, who -- the information sought by their interrogatories

15  -- you know, who participated in the conception, you know,

16  the development, the reduction to practice, etcetera, from

17  looking at some documents.

18          Now, I don't know.  The document -- you may have a

19  document that says in there, "This document records the fact

20  that Smith and Jones participated in the conception, and you

21  know, the sigma team was involved in this and that."  I mean,

22  it's possible.

23          But what I am simply saying is I consider it

24  abusive to simply turn over a mass of undifferentiated

25  documents to the other side say, "You figure it out."  I

1    don't think that's what Rule 33(d) is about.

2         To me -- you know, to give a simple example, if

3    somebody says, "You know, tell us, you know, what the amount

4    of sales for this product was in June, July and August."  You

5    turn over a sales report that lists sales for the entire

6    year.  Somebody can take a look at that and say, "Ah, okay.

7    These were the sales for June, July and August."  Both sides

8    can do that equally easy.

9         Once you start requiring the party reviewing the

10   documents to begin exercising judgment, then at that point I

11   think a Rule 33(d) request quickly starts to become

12   questionable.

13        So I -- I guess what I'm saying is -- let me just

14   talk through the way I see this, and I'll give everybody a

15   chance to respond.  It strikes questionable that that would

16   be a proper Rule 33(d) response.

17        As far as interrogatory number seven, an

18   identification of the portions of the specification that

19   support the patent claims -- I don't have my patent rules.  I

20   -- I thought that you were required to do that as part of

21   your contention -- your contentions.  Don't you have to

22   specify that information?

23        **MR. GROSS:**  Your Honor, the patent local rule --

24   this is Gabe Gross for Aliph.  The patent local rule does

25   require identifying the support in the patent for claim terms

1  that are being disputed --

2          THE COURT:  Right.

3          MR. GROSS:  -- and -- and we have exchanged those

4  disclosures.  But beyond the terms that are disputed, there's

5  also issues as to whether the asserted claims that

6  Plantronics is accusing Aliph of infringing in other aspects

7  have adequate support in the specification --

8          THE COURT:  All right.

9          MR. GROSS:  -- which is what this interrogatory is

10 directed at and we've received --

11         THE COURT:  Generally speaking --

12         MR. GROSS:  -- no response whatsoever on those

13 points.

14         THE COURT:  Generally speaking, I think I would

15 consider that a proper contention interrogatory.  I haven't

16 seen the interrogatory.  I don't know how it's worded, but I

17 do think it's proper claim construction discovery to ask

18 something like this.

19         Now, with respect to the document production, I

20 guess I'm not sure exactly what the problem is.  I -- I'll

21 simply say this:

22         Fact discovery closes July 1st.  It is not proper

23 to produce documents on claims construction after claims

24 construction discovery has closed.  And the burden on -- I

25 mean, I don't know.  I'm being told that this involves a few

1  thousand documents.  The numbers I'm seeing here -- you know,

2  I'm looking at Mr. Fraser's letter.  They've been able --

3  they've produced 4800 pages of documents and 3,000 earlier,

4  and I'm thinking to myself that's a drop in the bucket.

5          So unless the -- un -- unless Plantronics has

6  something to say, I think all the documents that are going to

7  be produced need to be produced by -- I'll say the 28th of

8  June.  That's next Tuesday.

9          If the notebooks don't exist, they don't exist.  I

10  mean, I understand Mr. Morrissey testified that 15 years or

11  so ago there were notebooks.  But if I get a rule -- a

12  response from the Rule 11 and Rule 26(g), I think it is, in

13  which somebody says, "We've conducted an appropriate search

14  and we can't find the notebooks," unless you have some

15  independent evidence that, you know, the notebooks are

16  someplace, you know where they are, or somebody knows where

17  they are, or whatever, I can't -- I'm not going to order them

18  to do something, which they tell me they can't do.  So that's

19  how I see the discovery issues that are contained in letters

20  102 and -- I guess it's 100 and 102.

21          So let me again start with -- maybe I need to hear

22  a little bit then from Mr. Fraser or Mr. Bohrer.  I've heard

23  some from Mr. Gross.  Do you want to start with your 33(d)

24  response?  Do you -- do you think your response was

25  appropriate, or do you want to have further response?  Do you

1   want to have a motion?  What would you like?

2            **MR. FRASER:**  Thank you, Your Honor.  Yeah.  This is

3   Keith Fraser, and I'll -- I'll respond for Plantronics.

4            So we have not in -- in our view, abused the -- the

5   rights under Rule 33(d).  The documents that we've produced

6   clearly identify and respond -- identify the -- the people

7   involved in the reduction -- conception and reduction to

8   practice.

9            I understand the interrogatory and the other

10  information that's sought but --

11           **THE COURT:**  Let me just stop you.

12           **MR. FRASER:**  Yes.

13           **THE COURT:**  Reread Rule 33.  That's not the test.

14           **MR. FRASER:**  I understand the test, Your Honor.

15           **THE COURT:**  The test is whether the burden of

16  deriving --

17           **MR. FRASER:**  And we believe -- and we -- and -- and

18  as I mentioned --

19           **THE COURT:**  -- or ascertaining the answer will be

20  substantially the same for either party.  The test isn't

21  whether the information is in the documents.

22           **MR. FRASER:**  I understand.

23           **THE COURT:**  Pro -- proceed at your risk.  Okay.

24           **MR. FRASER:**  Sure.  Never -- nevertheless, Your

25  Honor, since our response to the interrogatory and during the

1  meet and confer process on this issue, as has been mentioned,

2  there have been three depositions of three of the inventors.

3  And during those depositions, this very question has been

4  asked of each inventor --

5          **THE COURT:**  All right.

6          **MR. FRASER:**  -- and Aliph has gotten chapter and

7  verse on the conception and reduction to practice and the

8  person -- persons who conceived of each claim, and the

9  persons -- the involvement of each particular person.  And

10  I'm sure they'll get more testimony when the fourth inventor

11  -- fourth and final inventor is -- is -- is deposed.  I think

12  at this --

13          **THE COURT:**  So what you're saying is you don't have

14  to answer interrogatories.  You can force them to get the

15  information through deposition?

16          **MR. FRASER:**  No.  We're -- I'm not for -- not at

17  all, Your Honor.

18          **THE COURT:**  Well, then I don't understand your

19  positions.

20          **MR. FRASER:**  I -- I --

21          **THE COURT:**  Try it again.

22          **MR. FRASER:**  I am no -- all I'm saying is -- is it

23  -- the point is practically moot at this point.  We can

24  supplement the interrogatories, but we'll be in a sort of

25  33(d) territory, meaning our -- our response -- any

1   supplementation of our response to these interrogatories at

2   issue is going to be basically copying the deposition

3   transcript testimony.

4         **THE COURT:**  All right.  Well, look, let me turn

5   around back to Mr. Gross.  I don't want to make them do idle

6   acts.

7         Are you satisfied that having taken these

8   depositions you understand who conceived, who developed,

9   etcetera?

10        **MR. GROSS:**  Oh, Your Honor, I wish that -- that

11   were the case, but I -- I'm afraid it's not, and this is --

12   this is exactly the problem.

13         Rather than having verified interrogatory responses

14   that the Plaintiff put together in this case that we could

15   then test with depositions, we're forced to reassemble all of

16   the presuit investigation that the Plaintiff should have done

17   over the course of our discovery.

18         And it won't surprise you that three of the four

19   inventors whom we've deposed, who I -- I, in fact, deposed --

20   Mr. Fraser was not present at the deposition -- they -- they

21   have faded memories of events that occurred 15 years ago.

22         I think it was entirely fair and within the scope

23   of the rule to propound interrogatories early in the case,

24   asking Plantronics for its position about who did what and

25   when that amounted to a patentable invention.  They haven't

1   done it.  They still haven't done it.

2           **MR. FRASER:**  Your -- Your Honor, this is Keith

3   Fraser again.  Aliph talks about what we should have done.

4   What -- and it -- and -- and frankly, this touches on what I

5   mentioned in my letter about how they have not been diligent

6   here.

7           **THE COURT:**  Well, no.  Hold on.

8           **MR. FRASER:**  They served (Inaudible - - due to

9   simultaneous colloquy.)

10          **THE COURT:**  Hold on.  Let's not get into some of

11  those issues.  I don't have any complaint from you that they

12  haven't made discovery, so let's stick to the issues

13  contained in these letters.  Okay.

14          **MR. FRASER:**  This is an issue that's contained in

15  this letter, and it's -- and it's a critical issue here, I

16  believe.

17          **THE COURT:**  Is that right?

18          **MR. FRASER:**  What happened in this case -- they

19  served their discovery in March.  We responded in April.  We

20  produced documents and information in May.  How -- here we

21  are in June, and we've already -- and we've met and conferred

22  diligently, and we have promised additional searches for

23  these documents that they're concerned about.  Now --

24          **THE COURT:**  (Inaudible - - due to simultaneous

25  colloquy.)

1    **MR. FRASER:**  You're right, we're up against a

2    deadline.

3         **THE COURT:**  Right.  (Inaudible - - due to

4    simultaneous colloquy.)

5         **MR. FRASER:**  But that has nothing to do -- the --

6    the fact that we are up against this deadline has more to do

7    with Aliph's conduct in this case than it has Plantronics'

8    conduct.

9         **THE COURT:**  All right.

10        **MR. FRASER:**  For example, we served our discovery

11   in 2009 in this case --

12        **THE COURT:**  All right.

13        **MR. FRASER:**  -- and received responses in 2009.

14   Aliph could have done the same thing, but they didn't.  What

15   they did do instead was they decided to go down the reexam --

16   reexamination route and disrupted this case in a major way,

17   burdened Plantronics in a major way.

18        And I will add that Plantronics emerged from that

19   reexamination utterly unscathed, totally vindicated -- the

20   patents totally vindicated.

21        And then at that point Aliph goes, "Oh, well, maybe

22   we should start serving discovery in this case."  Meanwhile -

23   - and of course, which we diligently respond to.

24        Meanwhile, they looked for, you know, other ways to

25   derail Plantronics, put the brakes on us.  And they come --

1   and the slender reed they attach to is this deposition

2   testimony of Morrissey where they mentioned that sometime

3   back in 1995 he may have had a lab notebook, and that's the

4   basis (Inaudible - - due to simultaneous colloquy.)

5           **THE COURT:**  That's not the slender reed.  Mr. --

6   Mr. Fraser, did you not hear me say that if your position

7   under Rule 11 and Rule 26 is that the notebook doesn't exist,

8   I'm not going to make you produce it?  That's not what we're

9   talking about.  What I understand is --

10          **MR. FRASER:**  The genesis of --

11          **THE COURT:**  -- that in response --

12          **MR. FRASER:**  -- (Inaudible - - due to simultaneous

13  colloquy.) there is really no discovery dispute at all

14  because we have agreed to produce the documents.  We did

15  produce documents.

16          Once we came on board here, we realized that there

17  was some meet and confers and -- and that Aliph was not happy

18  with all of the documents that had been produced thus far,

19  etcetera.  And we understood our obligation, and we

20  understand the rules regarding discovery, and we have

21  complied with them.

22          And as part of that compliance, we have said to

23  them, "Listen, we're going to go back.  We're going to do an

24  exhaustive search.  I don't know what we're going to find.

25  We likely will find additional responsive documents."

1          We -- we made a special search for the lab

2    notebook, and we are still making a special search for

3    Morrissey's lab notebook.  We have not found it yet, and I

4    doubt that we will.

5          And in fact, there has been testimony from the

6    other two inventors since the date of these two letters that

7    you have in front of you, which suggest that the lab

8    notebooks are in the possession of third parties.  And Aliph

9    has even sent third party subpoenas to -- out looking for

10   those lab notebooks.

11         There -- Plantronics' conduct here, I believe, has

12   beyond reproach with respect to these -- these discovery

13   requests.

14         Now, you had mentioned, you know, that you would

15   see yourself clear to ordering document production by June

16   28th.  I believe that we can have a significant document

17   production before then, or on or before then.

18         And -- and whether or not there's anything in there

19   that requires additional discovery, testimony or whatever,

20   regarding the claims construction, we can deal with that at

21   that time.  At this point now we have no idea what is out

22   there and --

23         **THE COURT:**  And that's a big surprise to me.

24         **MR. FRASER:**  -- whether or not --

25         **THE COURT:**  Mr. Fraser, you know, Plantronics

1  stipulated to the schedule.  If Plantronics did not think

2  that it could complete the claims construction discovery by

3  July 1st because Aliph should have done everything back in

4  2009, the time to have raised that issue was at the case

5  management conference when we talked about what the timeline

6  should be, and at the conclusion of which I said, "All right.

7  Now, you folks work out a stipulation consistent with what

8  I've told you."  This all --

9       **MR. FRASER**:  And I'm sure -- and I'm sure -- and

10  I'm sure --

11       **THE COURT**:  (Inaudible - - due to simultaneous

12  colloquy.)

13       **MR. FRASER**:  -- that we did consider that, Your

14  Honor, definitely, and -- and we -- and we have done

15  everything.  We haven't asked for extensions of time to

16  respond to discovery.  We haven't dragged our discovery.

17  Take a look at the record.  They served their documents

18  requests and interrogatories in March.  We respond, bang,

19  April.  We produced document, bang, May.

20       Now, the -- we -- you know, there's a -- there's an

21  added wrinkle, of course, to this case.  We're new counsel in

22  this case, and we've been (inaudible) new counsel -- we've

23  been -- we've been counsel for Plantronics for one month now.

24  And I can tell you, Your Honor, in that one month we have

25  gone back to the drawing board with respect to discovery,

1  because I wanted to make sure that -- that what was going on

2  in discovery was the way that, you know, we want to handle

3  discovery in this case.

4       So it required going back to bedrock to -- for --

5  to a certain extent, but what we have discovered in this last

6  month is that, yes, we have produced a large amount of the

7  responsive documents, including, and most particularly, the

8  documents that are responsive to the document requests

9  regarding claim constructions, the ones that Aliph is most

10  concerned about.  Yes, there --

11       **MR. BOHRER**:  Keith, if -- Keith, if I can add

12  something here because I met with Mr. Gross at his office for

13  the meet and confer on this discovery.  Maybe this will -- at

14  least with the interrogatories, Judge Zimmerman, we have

15  agreed to supplement interrogatories one and four.  We have

16  said that we'd like to tie that to our search for any

17  additional documents.

18       So I'm not sure that the issue is perfected right

19  now with respect to the interrogatories, and I don't know

20  that that's been represented to you.  Interrogatories one --

21       **THE COURT**:  Well, my problem is very simple.  It's

22  June 24th.  Discovery ends the first.  Briefing is supposed

23  to begin on the 11th.  And here I have Mr. Fraser telling me

24  that he's done substantial and he's done this and he's done

25  that, and I'm saying finish it, complete it, let's move on.

1    Look, I understand --

2            **MR. BOHRER:** And Judge, we agreed --

3            **THE COURT:** -- that you folks have been --

4            **MR. BOHRER:** -- we agreed to (Inaudible - - due to

5    simultaneous colloquy.)

6            **THE COURT:** -- counsel for one month. I suppose

7    what you're saying I should not have approved the

8    substitution of counsel? You come into --

9            **MR. BOHRER:** (Inaudible - - due to simultaneous

10   colloquy.)

11           **THE COURT:** -- a case and you know what the

12   deadlines are. When somebody comes in and says to me, "We're

13   going to be substituting in," and do not ask for a

14   continuance -- I'm not sure I would have granted it, but I

15   would have at least considered it -- I assume that they are

16   prepared to meet the existing schedule.

17           So the time to tell me that you cannot meet the

18   existing schedule is not on June 24th when the opening claim

19   construction brief is about two and a half weeks away. The

20   time to have told me that was when you came in. I don't know

21   what more I can add to that.

22           I'm going to go ahead -- I'm just -- let me think

23   my way through. I will go ahead and issue an order. I -- I

24   don't -- with respect to the first issue, I will give

25   Plantronics leave to file a motion for a protective order

1  with respect to the issue of whether Mr. Morrissey was

2  obliged to make the markings on the -- the deposition

3  exhibit.

4        I'll come -- I'll come back to scheduling.  I don't

5  think I need anything further with respect to the

6  interrogatories.  I will give the -- I'm not sure what this

7  is going to do to the schedule.  It's going to depend an

8  awful lot on how material this information is.

9        I will give Aliph leave to file a motion -- well,

10 let me just ask Aliph one question.  Mr. Gross, somebody just

11 came in -- I don't remember whether it was Mr. Fraser or Mr.

12 Bohrer -- and said that actually they have supplemented their

13 interrogatory answers.  Is that --

14       **MR. FRASER:**  No, Judge.

15       **THE COURT:**  Yes?

16       **MR. BOHRER:**  I -- I -- I said that we agreed to

17 supplement interrogatory answers one and four.

18       **THE COURT:**  When is that supposed to happen?

19       **MR. BOHRER:**  We -- we were proposing to get that

20 done within three to four weeks of the meet and confer, which

21 I think was on June 8th.

22       **MR. GROSS:**  In other words, their proposal is for

23 after the discovery cutoff.

24       **THE COURT:**  Right.  Now, that seems to be pretty

25 clear that that's where they're headed.

1              So let me make sure I understand this.  You've made

2     a 33(d) response, so the Plaintiffs can figure it out.

3     You've had a lot of witnesses who've testified as to who

4     reduced, who conceived, etcetera, but you're still -- you

5     still need a couple of more weeks to answer the

6     interrogatories.  This is one --

7              **MR. BOHRER:**  No, Judge.

8              **THE COURT:**  All right.  You're going to -- I'm --

9     I'm going to require that these supplemental inter --

10             **MR. BOHRER:**  (Inaudible - - due to simultaneous

11    colloquy.) I'm sorry for interrupting, but there's -- the

12    point -- well --

13             **THE COURT:**  Go ahead.  Go ahead.

14             **MR. BOHRER:**  As someone who is the -- the new

15    counsel on the block and very much is committed to

16    maintaining the schedule -- Mr. Gross raised the issue of

17    whether there was any new information or supplementation

18    required of interrogatories one and four, and I agreed to

19    look into that.  At the time I -- I tied the analysis to

20    well, we're also going back, at your request, and seeing

21    whether there are any additional documents.

22             So I -- I don't believe, in terms of the briefing,

23    that in this Aliph's brief is due until mid to late July.  We

24    -- we're trying to identify and get any additional

25    information out as soon as we can.  We have an aggressive

1  effort where we've gone back to the company in a number of
2  instances.
3          We're talking about a period of time sometime ago
4  where it may be hard copy, as opposed to electronic, but
5  right now we don't know that there's additional information.
6  If it is and -- and I -- I -- I'm not sure that -- that --
7  well, even the three to four weeks, if we get the information
8  out -- I'm not saying we won't work with Aliph to -- if
9  there's a deposition or some follow-up that they need, but I
10 don't think even within the timeframe we're talking about
11 that should change the briefing schedule or require a change
12 in the Markman Hearing.  We're very much committed to going
13 forward in that regard.  And by no means are we saying that
14 no, you're not entitled to any -- any additional documents if
15 we've got it.
16         We -- we think we've been timely so far.  We're
17 trying to be diligent in following up on what they've asked
18 about.  We don't have anything additional to give, as I -- as
19 I sit here right now, but we do have people looking for it at
20 the company, and so we don't want to misrepresent things.
21 And if we find something, we're trying to be reasonable in
22 terms of when we could -- we can get it out.
23         So I -- I think that's where we're at.  I -- I -- I
24 think that -- you know, it's Friday and to say that by -- by
25 Tuesday any and all additional documents would -- would be

1    produced may be unrealistic in terms of just what -- what I

2    know in terms of what we're doing behind the scenes and --

3    and -- and making a good faith effort, since I've come on the

4    scene, to interview particular custodians or identify

5    particular electronic databases.

6             And so I -- I -- I just -- I -- I think Tuesday is

7    -- is awfully tight in terms of our ability to represent we

8    can get any and all additional information out the door --

9             **THE COURT:**  All right.

10            **MR. BOHRER:**  -- by -- by the end of the week.

11            **THE COURT:**  I'll keep that in mind.

12            **MR. BOHRER:**  So --

13            **THE COURT:**  Mr. -- Mr. Gross, is there anything you

14   wish to add?

15            **MR. GROSS:**  Your Honor, there -- there is.  Aliph

16   is really stuck here because it's -- we just learn heard

17   today in the conference from Mr. Fraser to expect a

18   significant document production.  We understand from Mr.

19   Bohrer at some point supplemental interrogatory responses,

20   hopefully in narrative form, are coming.

21            We're going to get a bunch of new material, and

22   we've already deposed three and maybe by that point all four

23   of the inventors who we will have lost the opportunity to

24   question and cross-examine about these documents.  And of

25   course, we're faced with the schedule that Plantronics said

1   they would comply with.

2          I -- and I understand they're delighted to keep

3   this schedule on the calendar, just finish their discovery

4   afterwards.  And it really -- it really does prejudice our

5   ability to give the Court a complete and accurate record

6   that's going to inform the claims construction proceeding.

7          **THE COURT:**  Well, I'll deal with that issue when I

8   have to deal with that issue.  I'm going to take things one

9   step at a time.  I will issue an order -- I'm going to go

10  back and rethink some of these things in view of what Mr.

11  Bohrer and Mr. Fraser were telling me.

12         All I can tell you folk is this:  Going forward,

13  one, you've got to obey the rules.  Two, you cannot withhold

14  -- these are just general guidelines for making discovery in

15  this case -- you cannot withhold some discovery on the

16  grounds that there may be other discovery that may or may not

17  be discoverable.  You have to produce whatever it is that has

18  -- that you agree has to be produced.  You can only withhold

19  what you're fighting about.

20         You used -- the word supplement has been used very

21  casually here.  You're going to have to use it correctly.

22  Supplementing refers to -- is different from correcting or

23  amending or completing.  All right.

24         If new additional -- if -- if -- if new information

25  comes out, if new events occur, and so on, you have a duty to

1  supplement.  But you can't not make discovery initially on

2  the grounds of, "Well, we'll get around to supplementing it

3  at some point."  When you file your responses, when you make

4  your production, you look at Rule 26 -- I think it's G -- and

5  look at Rule 11 and see what it is you're saying.

6         I do not like these -- this notion, which seems

7  very prevalent -- especially in the valley -- these so-called

8  rolling productions where, you know, things drib, drib, drib,

9  and then suddenly there's this big ballooning at the end on

10 the theory of, you know, "Well, we're kind of supplementing

11 our production."  I'm just warning you folks right up front.

12        So I will go ahead -- I will issue an order.  I

13 have to think through exactly how I want to handle it.  About

14 all I can say is I'm very disappointed that this case has

15 come to this juncture.

16        I was really hoping -- at least a number of you

17 have told me at prior hearings -- maybe this was prior

18 counsel -- that this would be a fairly straightforward patent

19 dispute.  The issues were focused, etcetera.  It's

20 disappointing that you're now engaged in these kinds of

21 disputes.

22        All right, folks, unless anybody has anything they

23 wish to add, I will adjourn.

24        And all I can say to Plantronics is if you have

25 complaints about the way Alpha [sic] has been providing --

1    Aliph has been providing discovery, your remedy is not to not

2    provide discovery.  I don't go for the tit for tat.

3            Your -- you provide discovery, and then you come to

4    court and ask for court intervention with respect to whatever

5    it is you claim that Aliph is not doing.  Don't condone a lot

6    of self-help.

7            All right.  Good days, folks.

8            **MR. GROSS**:  Your -- Your Honor, this is -- this is

9    Gabe Gross.  I just had one final thing, please, and it will

10   be brief.

11           **THE COURT**:  All right.

12           **MR. GROSS**:  As -- as part of your order -- I just

13   want it to be clear that Aliph is requesting the permission

14   of the Court to bring back the deventors [sic] -- the

15   inventors for additional depositions on the subject of any

16   documents or interrogatory responses that we did not have in

17   hand when they were first deposed.

18           **THE COURT**:  Well, I'll deal with that issue when I

19   have to deal with that issue, and it's likely to turn on what

20   the response is, and when you need to take the discovery, and

21   so on and so forth.

22           The one thing that I would suggest is with respect

23   to the first issue, in which I have given Plantronics leave

24   to move for its protective order precluding -- I guess the

25   way it would read at this juncture is, "Precluding Mr.

1   Morrissey from being recalled so he can mark up the

2   deposition."  You all might want to talk and decide whether

3   there really isn't a simpler way of dealing or addressing

4   that issue.

5           In terms of whether I'm going to permit

6   redepositions of witnesses, you know, it's going to have --

7   it will -- that will turn principally on what is going to be

8   produced in the near future, what it has to do with, you

9   know, does it really inject new issues, and so on and so

10   forth.

11          It is not at all uncommon in litigation for there

12   to be supplemental productions, people find something that

13   they didn't think existed, etcetera.  That doesn't mean that

14   you automatically get to redepose everybody so --

15          **MR. GROSS:**  Understood, Your Honor.

16          **THE COURT:**  -- I will cross that bridge when

17   somebody comes back to me and says, "Look, here are these

18   five documents that should have been produced three months

19   ago, were just produced now.  It's vital that we depose the

20   in -- redepose the inventor because we need to understand

21   what the inventor meant when he wrote these documents," or

22   something to that effect.

23          All right.  Good day, folks.

24          **MR. BOHRER:**  Thank you, Your Honor.

25          **MR. FRASER:**  Thank you.

1          **MR. GROSS:**  Thank you.

2              (Proceedings adjourned at 9:52 a.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____   7/18/11

Signature of Transcriber      Date