UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANTRONICS, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> ALIPH, INC., et al., <br><br> Defendant(s). | No. C09-1714 BZ <br><br> **CLAIM CONSTRUCTION ORDER** |

On September 21, 2011, the court held a hearing for the purpose of construing disputed terms in the claims of United States Patent No. 5,712,453 ("the '453 patent").[1]

Initially, the parties sought to have 13 terms construed. After reviewing the papers, the court issued a tentative claim construction order. At the September 21 hearing, the parties stated that they would accept some of the tentative constructions but wished to contest others. Terms not discussed in this order will be construed in accordance with the tentative claims construction order filed September 19,

---

[1] All parties have consented to my jurisdiction for all proceedings including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

1

2011.

1. Disputed Term One: "dimensioned to cover a portion of the receiver"

| CLAIM | TERM OR PHRASE | ALIPH'S PROPOSED CONSTRUCTION | PLANTRONICS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| 1, 10 | "dimensioned to cover a portion of the receiver" | fashioned to have a spatial extent that ensures coverage of part but not all of the receiver | plain meaning |
| 1 | "dimensioned to fit within an upper concha" | fashioned to have a spatial extent that ensures fit within an upper concha | plain meaning |
| 10 | "dimensioned to contact an upper concha between an antihelix and a crux of a helix" | fashioned to have a spatial extent that ensures touching an upper concha between an antihelix and a crux of a helix | plain meaning |

At the hearing Aliph amended its proposed construction with respect to claim 1 to read, "fashioned to ensure coverage of part but not all of the receiver" and with respect to claim 10 to read, "fashioned to ensure touching an upper concha between an antihelix and a crux of a helix."

Plantronics argues the words of the terms are plain and understandable on their face and that no construction is necessary. Aliph argues that the terms "dimensioned to" and "a portion" require construction, citing C&C Jewelry Mfg. v. Trent West, 2010 U.S. Dist. LEXIS 77062, 2010 WL 2681921 (N.D. Cal. July 6, 2010).

I continue to believe that these phrases should be construed in accordance with their plain meaning. Judge Fogel's ruling in C&C Jewelry is distinguishable. Since the patent in that case involved jewelry, a person skilled in that art would construe the terms "configured and dimensioned to receive a person's finger" to mean that the structure contemplated by the patent must be dimensioned in such a way to properly fit a finger, as opposed to simply being large enough to permit a finger to pass through. Here there is no suggestion that the term "dimensioned to" could be interpreted in a manner that would cause the claimed invention to be confused with entirely different product. Moreover, Aliph's proposed construction of "dimensioned to" as meaning "fashioned to" appears to be a distinction without a difference. In either case, the construction results in the notion that the component at issue is "sized" in a particular manner.

I disagree with Aliph that the term "a portion," should be construed to mean "part but not all." While the phrase "a portion" will have to be construed in the context of the different claims in which it appears, for the purposes of claims 1 and 10, to a person skilled in the art, the phrase would not necessarily mean "part but not all."[2] Said differently, a person skilled in the art would not necessarily

---

[2] The court agrees with Aliph that a "person of ordinary skill in the art" in this field would have either (1) an engineering or design degree that covered mechanical design and materials science, or (2) considerable work experience in the audio, telecommunications, or hearing industries that involved researching or developing devices designed to interact with the human ear.

conclude that the term "a portion," as used in these claims, means that the ear cushion could cover 99% of the receiver, but not 100% of the receiver. See <u>Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l</u>, 246 F.3d 1336, 1347 (Fed. Cir. 2001).

2. Disputed Term Two: "concha stabilizer pad"

| CLAIM | TERM OR PHRASE | ALIPH'S PROPOSED CONSTRUCTION | PLANTRONICS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| 1,11, 21,30 | "concha stabilizer pad" | a piece of soft thick material that protects the upper concha | soft structure that contacts the upper concha |

Both parties agree that the concha stabilizer pad is "soft." At the hearing, neither party seemed particularly troubled by a construction that would utilize "contacts" in lieu of "protects" or vice versa. The heart of the parties' dispute appears to be whether the concha stabilizer pad must be its own discrete structure, or whether it can be one and the same with the stabilizer support.

Aliph argues that claims 1 and 11 identify three discrete, separate elements: (1) an ear cushion, (2) a stabilizer support, and (3) a concha stabilizer pad. Aliph further contends that its proposed construction utilizes the same definition of "pad" that Plantronics gave the PTO during reexamination of the '453 patent, and that Plantronics' proposed construction should fail because it eliminates the distinction required by the claims as between the "stabilizer support" and the "concha stabilizer pad," rendering the latter "superfluous" in violation of <u>Innova/Pure Water, Inc. v.</u>

4

1  <u>Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1119 (Fed.
2  Circ. 2004).  Consistent with its argument, Aliph again
3  amended its proposed construction at the hearing, asserting
4  that the term should be construed as "a distinct/separate/
5  discrete soft structure that [protects or contacts] the upper
6  concha."

7   Plantronics argues that the '453 patent instructs that
8  the "stabilizer support" and the "concha stabilizer pad" do
9  not need to be distinct from one another, as evidenced by both
10 the description of the preferred embodiment (column 3:19-34),
11 as well as by claims 21 and 30, which state that the
12 "stabilizer support" and the "concha stabilizer pad" can be
13 formed from the same material and can comprise a single piece.

14  Whether the "concha stabilizer pad" and the "stabilizer
15 support" are two discrete structures is an argument more
16 appropriate for summary judgment.  Accordingly, I will
17 construe "concha stabilizer pad" to mean "a soft structure
18 that protects the upper concha."
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

3. Disputed Term Three: "the receiver having a tragus contact point, and an antitragus contact point disposed substantially opposite to the tragus contact point"

| CLAIM | TERM OR PHRASE | ALIPH'S PROPOSED CONSTRUCTION | PLANTRONICS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| 10 | "the receiver having a tragus contact point, and an antitragus contact point disposed substantially opposite to the tragus contact point" | the receiver having two points, substantially opposite to one another, that directly touch the tragus and the antitragus | the receiver having portions that can contact, directly or through the ear cushion, the tragus and antitragus |

The center of the parties' dispute as to this term is whether the patent instructs that "the receiver" must directly touch the tragus and the antitragus, or whether "the receiver" can indirectly touch the tragus and antitragus through the ear cushion. Plantronics argues that the patent claims permit "the receiver" to indirectly contact the tragus and antitragus, and that Aliph's proposed construction unduly limits the claimed invention. Plantronics asserts that the patent instructs that the ear cushion "fit[s] snugly" onto the receiver (*see* column 3:6–9), and that the receiver, which then goes into the ear, therefore "contacts" the tragus and the antitragus, albeit through indirect touching. Plantronics further asserts that the meaning of "contact" is broad enough to cover "being in immediate proximity to" and that the claim should not therefore be limited to "direct" touching.

6

1    Aliph argues that the claim "means what it says," citing
2 to Chef America, Inc v. Lamb-Weston, Inc., 358 F.3d 1371 (Fed.
3 Cir. 2004).  Aliph therefore contends that the claim language
4 specifically states that "the receiver" (not the "ear
5 cushion") must touch the tragus and the antitragus, and that
6 to the extent the patent intended for the "ear cushion" to
7 contact something, it so stated, as evidenced by column 3,
8 lines 9-11, which states that the "ear cushion ... contacts"
9 the tragus and the antitragus (as compared to the language in
10 claim 10, which states that "the receiver ... contacts" the
11 tragus and antitragus).  Aliph asserts that as per the claim
12 terms that pertain to the "ear cushion," the ear cushion could
13 be designed in such a way that it does not cover the entire
14 receiver, in which case the receiver itself could directly
15 contact the tragus or antitragus (for example, if the ear
16 cushion was designed in a cross shape).
17    The court concludes that a person of ordinary skill in
18 the art would not necessarily conclude that "the receiver"
19 must, as Aliph contends, directly touch the tragus and the
20 antitragus.  While Plantronics' construction is consistent
21 with the plain meaning of the term "contact," as well as with
22 the preferred embodiment, Aliph's proposed construction
23 introduces a new concept to the claim, namely, that the claim
24 uses the term "contact" and that "contact" requires "direct
25 touching." The term "contact" has a broader meaning than the
26 term "touch."  Webster's New World Dictionary, College
27 Edition, offers three definitions of "contact:"
28 1.  "the act of touching or meeting"

7

2. "the state of being in touch or association (with)" and
3. "connection"

A person skilled in the art, reading a patent about "an apparatus for stabilizing a headset" and a claim about how a receiver is positioned within the inner ear, would construe the term contact point in the broader sense as a point where the receiver is stabilized at specified contact points, and not in the narrower sense as requiring the receiver to touch the contact points directly and not through the ear cushion. Aliph does not claim that Plantronics' proposed definition would undermine the stability of the receiver.

Accordingly, Aliph's construction is not consistent with the plain meaning of the term "contact" and a person skilled in the art would not conclude that the receiver has to "directly touch" the tragus and antitragus in order to "contact" those parts of the ear. Aliph's arguments seem more appropriate for an infringement analysis, but for the purposes of claim construction, the court adopts the following construction: "the receiver having two points, substantially opposite to one another, that contact the tragus and the antitragus."

4.  Disputed Claim Four: "concha stabilizer"

| CLAIM | TERM OR PHRASE | ALIPH'S PROPOSED CONSTRUCTION | PLANTRONICS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| 10 | "concha stabilizer" | a column extending from the upper surface of an ear cushion that stabilizes a headset | structure, a portion of which contacts the upper concha |

8

In the court's tentative claim construction order, the court construed the term "stabilizer support," as "an elongated structure that extends from the ear cushion to the concha stabilizer pad and stabilizes the headset."  Aliph contends that the court should add the word "elongated" to its tentative construction of the term "concha stabilizer" as well, so that the construction reads "an elongated stabilizing structure, which extends between the ear cushion and the upper concha."  Both parties seem to agree that the patent describes a "stabilizer" in one embodiment as including a member that is "elongated and flexible."  (*See*, Pl.'s Opening Brief at pp. 8, 13.)  The court therefore construes "concha stabilizer" to mean "an elongated stabilizing structure, which extends between the ear cushion and the upper concha."

Dated: October 6, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\PLANTRONICS V. ALIPH\CLAIMS CONSTRUCTION ORDER V.2.bzwpd.wpd