1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   PLANTRONICS, INC.,            )
                                   )
12             Plaintiff(s),       )        No. C09-1714 BZ
                                   )
13        v.                       )
                                   )        **ORDER GRANTING**
14   ALIPH, INC. AND ALIPHCOM,     )        **SUMMARY JUDGMENT**
     INC.                          )
15                                 )
               Defendant(s).       )
16   _____)

17       In this patent infringement action involving concha-style

18   earbuds, Defendants Aliph, Inc. and Aliphcom, Inc.

19   (collectively "Aliph") move for summary judgment of non-

20   infringement and invalidity.  For the reasons stated below,

21   the motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

22                              **BACKGROUND**

23       Plaintiff Plantronics, Inc. ("Plantronics") filed suit on

24   January 15, 2009 alleging that Aliph infringes U.S. Patent No.

25   5,712,453 (filed Jan. 27, 1998) (the "'453 patent").  The '453

26   patent relates to wireless concha-style earbuds for use

27   _____

28       [1]   All parties have consented to my jurisdiction for all
     proceedings including entry of final judgment, pursuant to 28
     U.S.C. § 636(c).

                                   1

1   primarily with cell phone receivers and headsets. ('453 patent

2   col.1 9-15.)  On March 1, 2011, the U.S. Patent Office issued

3   a reexamination certificate that added dependent claims 16-56.

4   Plantronics accuses Aliph's "Ergo" and "Spout" earbuds, which

5   are used in connection with Aliph's "Jawbone" wireless

6   headset, of infringing the '453 patent.

7       Following a claim construction hearing, pursuant to

8   <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996),

9   I issued a Claim Construction Order, construing several of the

10   disputed claim terms in the '453 patent.  (Docket No. 142.)

11   Aliph now moves for summary judgment on non-infringement and

12   invalidity.

13                 **EVIDENTIARY OBJECTIONS**

14   **Plantronics' Objections**

15       Plantronics objects to the expert reports of Professor

16   Dennis Lieu and Stephen Ambrose because "[u]nsworn expert

17   reports prepared in compliance with Rule 26(a)(2) do not

18   qualify as affidavits or otherwise admissible evidence for

19   purpose of Rule 56, and may be disregarded by the court when

20   ruling on a motion for summary judgment."  (Pl.'s Opp. Br. p.

21   1) (citing, *inter alia*, <u>Smith v. City of Oakland</u>, Case No.

22   05-4045, 2007 U.S. Dist. LEXIS 59941, WL 2288328, at *9-10

23   (N.D. Cal. Aug. 9, 2007).)  Plantronics objects even though

24   its expert, Professor Barry Katz, also submitted a sworn

25   declaration to which he attached his unsworn report.  (<u>See</u>

26   Docket No. 199.)  This is a practice of which I disapprove,

27   and with which other courts have struggled.  <u>See, e.g.</u>, <u>Maytag</u>

28   <u>Corp. v. Electrolux Home Products, Inc.</u>, 448 F.Supp.2d 1034,

1  1064 (N.D. Iowa 2006).  No good reason exists, and none has

2  been given, why an expert cannot fully state his or her

3  opinions in a declaration made under penalty of perjury as

4  required by Rule 56(c)(4).[2]  In their sworn declarations,

5  Professor Lieu and Mr. Ambrose expressly reserve the right to

6  correct or amend their reports, undercutting their usefulness

7  on this motion.  The expert reports are quite lengthy and

8  touch on issues outside the scope of this motion.  There is no

9  good reason to require a court to both read through an

10 expert's declaration, and then pick through an expert's

11 lengthy report to locate those portions which may be relevant

12 to the motion.  In the exercise of my discretion (see

13 Acoustical Design, Inc. v. Control Elecs. Co., 932 F.2d 939,

14 942 (Fed. Cir. 1991) "[a]dmission of expert testimony is

15 within the discretion of the trial court"), I have relied only

16 on the sworn declarations and not on the unsworn attached

17 reports, and sustain objections accordingly.

18     **Aliph's Objections**

19     Aliph's motion to strike the report of Plantronic's

20 expert, Professor Katz**, is DENIED** without prejudice to being

21 renewed were this case to proceed to trial.[3]  As noted above,

22 ────────────────

23     [2]    In many of the cases which have accepted an unsworn
   report, the unsworn report was the only evidence submitted,
24 leaving the trial court with a Hobson's choice.  See e.g.,
   Mills v. County of Lapeer, Case No. 09-14026, 2011 U.S. Dist.
25 LEXIS 16030, 2011 WL 669389 (E.D. Mich. Feb. 17, 2011).

26     [3]    This disposes of Docket No. 190.  On this motion for
   summary judgment, there is no need to rule on those opinions of
27 Professor Katz that are not pertinent to the motion.  See
   Cornell Research Fund v. Hewlett-Packard Co., Case No. 01-1974,
28 2007 U.S. Dist. LEXIS 89637, WL 4349135, at *9 (N.D.N.Y. Jan.
   31, 2007); Maytaq Corp., 448 F.Supp.2d at 1063-65.

1   I will only consider Professor Katz's declaration in ruling on

2   this motion.  With respect to Aliph's argument that Professor

3   Katz is not qualified to render an opinion in this matter,

4   that motion is **DENIED** to the extent that he is rendering

5   opinions which are based on his knowledge of design rather

6   than his knowledge of mechanical engineering.

7                              **ANALYSIS**

8        **A.   Non-infringement**

9        Aliph seeks summary judgment that the accused products

10  do not infringe the patent-in-suit.  Neither party disputes

11  that the focus of the infringement analysis is on independent

12  claims 1 and 10, since the remaining claims at issue are all

13  dependent on these two.

14       Courts engage in a two-step process to evaluate

15  infringement.  First, the court determines the scope and

16  meaning of the claims via claim construction; then, the court

17  compares that construction of the patent against the accused

18  products.  See, e.g., Business Objects, S.A. v.

19  Microstrategy, Inc., 393 F.3d 1366, 1371 (Fed. Cir. 2004)

20  (citations omitted); Pitney Bowes, Inc. v. Hewlett-Packard

21  Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999).  While claim

22  construction is a matter of law, infringement itself is a

23  question of fact.  See Frank's Casing Crew and Rental Tools,

24  Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1376 (Fed.

25  Cir. 2004) (citations omitted).  Therefore, a defendant is

26  only entitled to summary judgment on the question of

27  infringement "if the facts and inferences, when viewed in the

28  light most favorable to [plaintiff], would not persuade a

                                4

1    reasonable jury to return a verdict in favor of [plaintiff],

2    the non-moving party." Business Objects, 393 F.3d at 1371.

3    Put differently, "summary judgment of non-infringement can

4    only be granted if, after viewing the alleged facts in the

5    light most favorable to the non-movant, there is no genuine

6    issue whether the accused device is encompassed by the

7    claims." Pitney Bowes, 182 F.3d at 1304.

8        Infringement may be proven by literal infringement, or

9    under the doctrine of equivalents.  A claim is "literally

10   infringed" if each properly construed claim element directly

11   reads on the accused product or process.  See Jeneric/Pentron

12   Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed. Cir. 2000); see

13   also BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373,

14   1378-79 (Fed. Cir. 2007).

15       The parties dispute whether several claim elements are

16   literally infringed.  Aliph asserts five reasons why its

17   accused products cannot infringe: (1) its products lack the

18   "elongated" stabilizer of claims 1 and 10; (2) its products

19   lack stabilizers "dimensioned" in the manners specified in

20   claims 1 and 10; (3) its products lack a receiver "sized" in

21   the manner specified in claims 1 and 10; (4) its products do

22   not have "stabilizer pads" as required by claims 1 and 11;

23   and (5) its products do not have the "contact points"

24   specified in claim 10.  I will address each argument in turn.

25       1.   "Elongated" Stabilizers

26       In the claim construction order, I construed "stabilizer

27   support" as "an elongated structure that extends from the ear

28   cushion to the concha stabilizer pad and stabilizes the

                                5

headset" and "concha stabilizer" as "an elongated stabilizing
structure, which extends between the ear cushion and the
upper concha." (Docket No. 142.)  As Plantronics notes, both
terms require an "elongated" structure.  (Pl.'s Opp. Br. p.
4.)  Since the parties' dispute centers on the meaning of
"elongated," a term that I was not asked to (and did not)
construe during claim construction, I must first construe
that term.

Plantronics argues that "elongated" should be construed
to mean "to . . . extend" and cites a statement I made during
the claim construction hearing that "elongated" means
"extend[ing] upward."[4]  (Pl.'s Opp. Br. p. 3.)  Aliph, by
contrast, asserts that "elongated" should be construed to
mean a structure that is "longer than it is wide." (Def.'s
Br. p. 4.)  Because neither side argues that the asserted
patent adopts a specialized meaning for the term, I begin
with its ordinary meaning.  Miken Composites, L.L.C. v.
Wilson Sporting Goods Co., 515 F.3d 1331, 1337 (Fed. Cir.
2008).  The word "elongated" means "having a form notably
long in comparison to its width," "has more length than
width" or "made longer."  Oxford English Dictionary (1989);
American Heritage Dictionary (1993); Webster's Third New
International Dictionary (1981); Webster's New Collegiate
Dictionary (1979).  Even Plantronics' expert seems to
acknowledge that "elongated" can mean something is "longer

---

[4]    The context of this statement was to explain that I
believed that "a person of skill in the art looking at this
invention would conclude that this [stabilizer] was something
that extends upward and into . . . the upper concha."
(Declaration of Jessie J. Ho, Ex. 1 at 77:11-13.)

than it is wide." (Def.'s Br. p. 6 (citing Docket No. 186-6 at 103:20-104:1).) None of these definitions suggests that "elongated" means something that simply "extends upward." Indeed, if that was the case, any structure that extends upward could be "elongated" even if that structure is squat. Such a construction would not conform to the ordinary meaning of the word and is inconsistent with the notion I expressed during the hearing that the stabilizer extends upward into the upper concha.

Having read and evaluated the parties' competing positions, I am persuaded that Aliph's definition of the term "elongated" as a structure that is "longer than it is wide" is the better construction, and adopt it.[5]

Plantronics next argues that even applying Aliph's proposed construction of the term "elongated," Aliph's allegedly infringing earbuds have "two concha stabilizer supports" that are elongated, and that summary judgment on non-infringement is therefore inappropriate. (Pl.'s Opp. Br. p. 4.) In support of this argument, Plantronics contends that the U-shaped "stabilizer support member" of Aliph's earbud is comprised of two stabilizer support members – one on either side of the ear cushion – and that both of these

---

[5]   This definition is also consistent with other courts' construction of the term. See, e.g., Rembrandt Data Storage, LP v. Seagate Tech. LLC, Case No. 10-693, 2011 U.S. Dist. LEXIS 120018, 2011 WL 4950088, at *3 (W.D. Wis. Oct. 17, 2011); Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc., Case No. 07-2175, 2008 U.S. Dist. LEXIS 116648, 2008 WL 4831770 (W.D. Tenn. July 2, 2008); see also McHugh v. Hillerich & Bradsby Co., Case No. 07-03677, 2010 U.S. Dist. LEXIS 16164, 2010 WL 682339 (N.D. Cal. Feb. 24, 2010) (construing "elongated" as "long and thin").

7

1   stabilizer support members are "elongated" because they are
2   longer than they are wide.  (Id.)  This argument is
3   unpersuasive.  For Plantronics to prevail, the concha
4   stabilizer support in Aliph's earbuds must be divided into
5   three parts even though it is undisputed that the stabilizer
6   is a single piece.  (See JSUF No. 11.)  Even Plantronics'
7   expert admits that the division of this solitary U-shaped
8   piece into three regions is "difficult to impossible to
9   specify in a precise and quantitative fashion."  (Declaration
10  of Dane Reinstedt ("Reinstedt Decl."), Ex. 6 at 181.)[6]  It
11  would certainly be possible for Aliph's U-shaped stabilizer
12  support member to be "elongated" if the U-shaped piece was
13  greater in length than width, but here, the undisputed
14  evidence submitted by Aliph is that the stabilizer support
15  members of Aliph's earbuds are wider than they are long (see
16  JSUF Nos. 5-10; Declaration of Dennis Lieu ("Lieu Decl.") at
17  ¶¶ 6-7), and are therefore not "elongated."

18      Consequently, I find that Aliph's earbuds lack an
19  elongated stabilizer.  Given that literal infringement
20  requires the patentee to prove the accused device contains
21  each and every limitation of the asserted claim (see Bayer
22  AG, 212 F.3d at 1247), Aliph is entitled to summary judgment
23  on non-infringement of claims 1 and 10, and its motion on

24  _____

25      [6]  I also agree with Aliph that Plantronics' "two-
    stabilizer theory" is "irreconcilable" with its position on the
    claims in the '453 patent that require the concha stabilizer of
26  claim 10 to be "ring shaped" or "torus shaped" with an
    "opening" or "vacant center."  (See Deposition of Barry Katz,
27  Docket No. 186-6 at 181:18-23.)  This inconsistency in
    Plantronics' expert's opinion fails to create a genuine factual
28  dispute.  See Mshift, Inc. v. Digital Insight Corp., 747
    F.Supp.2d 1147, 1170 (N.D. Cal. 2010).

1    non-infringement is therefore **GRANTED**.  I will nonetheless

2    address Aliph's additional four arguments regarding non-

3    infringement.

4         *2.   Stabilizer "Dimensioned" To Fit*

5         Aliph next argues that it is entitled to summary

6    judgment on non-infringement because its accused products

7    lack stabilizers "dimensioned to fit within an upper concha"

8    as required by claim 1 or "dimensioned to contact an upper

9    concha" as required by claim 10.  (Def.'s Br. at p. 7.)

10   Specifically, Aliph argues that its products are not

11   "dimensioned" in the manners required by the '453 patent

12   because the U-shaped stabilizers of its products are not

13   designed with the purpose or intent of engaging or contacting

14   the upper concha.  Rather, Aliph argues, it is undisputed

15   that its products are dimensioned to fit within or contact

16   the "lower, rear part of the concha."  (<u>Id.</u>)

17        Given the evidence presented by the parties, I am not

18   persuaded that Aliph is entitled to summary judgment on this

19   issue.  Aliph relies heavily on Professor Lieu, a mechanical

20   engineer, who looked at a drawing of the upper concha and

21   concluded that "it would appear to be a spot of only several

22   millimeters in width," and that in effect, Aliph's products

23   cannot fit within that space. (Lieu Decl. at ¶ 9.)

24   Plantronics, however, relies on expert testimony that the

25   accused products do in fact fit within or contact the upper

26   concha because, as Plantronics argues, the upper concha "is

27   much larger than Prof. Lieu thinks" and actually comprises

28   the entire depression in the human ear that "lies above the

9

crux of the helix and below the antihelix," as described in
the '453 patent.  (Pl.'s Opp. Br. at p. 7.)  Accordingly,
Plantronics contends that the accused products, which
undisputedly contact this portion of the human ear, may
infringe and that summary judgment is not appropriate.  Based
on the competing declarations of the parties' experts, there
appears to be a material factual dispute regarding the
location and scope of the "upper concha."[7]

Moreover, I am not persuaded by Aliph's argument that
the "dimensioned to" language in claims 1 and 10 includes an
"intent" requirement.  Aliph made this same argument during
the claim construction hearing, arguing that the claim
language suggests an intentional purpose, *i.e.*, that a
product must be intentionally designed to contact or fit
within the upper concha.  I disagreed with Aliph then and
refused to read an "intent" requirement into the claims,
finding that the claims' plain meaning simply requires that
the stabilizer be "sized" in a particular manner.  As there
is a disputed issue of fact with respect to whether Aliph's
accused products are "dimensioned to" contact or fit within
the upper concha, Aliph's motion is **DENIED**.

   3.   *Receiver "Sized" to Fit Between The Tragus and
        Anti-Tragus*

Aliph also contends that it is entitled to summary
judgment on non-infringement because its accused products do
not literally include a "receiver sized to fit between a

---

[7]    Aliph's objection to the Declaration of Gabriele
Bungardt is **OVERRULED**.  The court treated her declaration as
providing factual testimony, not expert opinions.

1    tragus and an anti-tragus of an ear" or a "receiver disposed

2    between the tragus and anti-tragus" as required by claims 1

3    and 10.  (Def.'s Br. at p. 9.)  Aliph argues that the parties

4    agreed to the definition of the terms "tragus" and "anti-

5    tragus" and "receiver" and that its accused products have a

6    receiver that sits behind (not between) the tragus and anti-

7    tragus, and that it is the "stem" of the receiver (not the

8    receiver itself) that sits between the tragus and anti-

9    tragus.  (Id. at 10.)

10        Plantronics contends that the '453 patent does not

11   identify a "stem" and that to the extent that there is a

12   structure that can be identified as a "stem," that structure

13   is "part of the same structure from which sound is

14   transmitted, and therefore part of the receiver."  (Pl.'s

15   Opp. Br. p. 10.)

16        The parties agree that a "receiver" is "the structure on

17   the headset from which sound is transmitted." (Def.'s Br. at

18   p.9 (citing Docket No. 99 at p. 2).)  But the parties agree

19   on little else.  Given the evidence before me, I cannot rule

20   as a matter of law that the "stem" identified by Aliph in

21   Figure 1B of the '453 patent is not part of the receiver.

22   Neither party submitted evidence on this specific point.[8]

23   Having therefore failed to carry its burden, Aliph's motion

24   on this point is **DENIED**.

25   _____

26        [8]     Plantronics' objection to the Second Declaration of
     Dane Reinstedt ("Second Reinstedt Declaration") is **OVERRULED**.
     (Docket No. 211.) I find that the evidence attached to the
27   Second Reinstedt Declaration is proper reply evidence, and, in
     any event, did not find that evidence particularly useful.
28   Accordingly, Plantronics' request for leave to respond is
     **DENIED**.

1            *4.   Stabilizer Pads*

2            Aliph also argues that it is entitled to summary

3    judgment for non-infringement of claims 1 and 11 because

4    those claims require both a "stabilizer support" as well as a

5    "concha stabilizer pad."  More specifically, Aliph contends

6    that claims 1 and 11 identify the "stabilizer support" and

7    the "concha stabilizer pad" as two separate components, and

8    that Aliph's accused products only have "a single, unitary

9    piece of material with no distinguishing physical feature to

10   indicate a 'pad.'" (Def.'s Br. p. 11.)  Plantronics contends

11   that the '453 patent is a utility patent, unconcerned by

12   aesthetics, and that claim 11 demonstrates that the pad can

13   be part of the stabilizer, citing <u>Applied Med. Resources</u>

14   <u>Corp. v. U.S. Surgical Corp.</u>, 448 F.3d 1324, 1333 n.3 (Fed.

15   Cir. 2006) (emphasis in original), for the proposition that

16   "the use of two terms in a claim requires that they connote

17   different *meanings*, not that they necessarily refer to two

18   different *structures*."

19           Here, the claim language itself undercuts Plantronics'

20   argument that the "stabilizer support member" and the

21   "stabilizer pad" can be comprised of the same component.

22   Claim 11 states in no uncertain terms that the "concha

23   stabilizer" described in claim 10 is "comprised" of (1) a

24   "stabilizer support coupled to the ear cushion" and (2) "a

25   concha stabilizer pad coupled to the stabilizer support."

26   ('453 patent col.6 9.19-24.)  It may be, as Plantronics

27   contends, that the "stabilizer support member" and the

28   "stabilizer pad" need not be separately molded pieces.  <u>See</u>

Retractable Techs., Inc. v. Becton, Dickinson & Co., 653 F.3d
1296, 1303 (Fed. Cir. 2011).  This is particularly true given
that neither party provided evidence regarding what the term
"coupled to" in claims 1, 10 and 11 means.  Cf. Id. at 1304
("The specifications further disclose a method to couple the
two structures by 'expos[ing] them to a temperature of about
120°C for twenty minutes or so to allow some diffusion or
incipient melting to occur where they touch.' This passage
suggests that the needle holder, retainer member, and
bridging portion could be formed as an integral structure in
the first instance. Thus, the specifications and the claims
indicate that the 'retainer member' and the 'needle holder'
need not be two separate pieces.").  Nevertheless, Aliph has
presented evidence that Plantronics' position is untenable
because, under its interpretation, the "stabilizer pad"
changes depending on how the earbud is positioned in an ear
(see Reinstedt Decl., Ex. 6 at 155:4-156:9), such that when
the accused product is removed from an ear it is impossible
to determine where the pad is located (id. at 156:3-17).
According to Aliph, this interpretation of the claims must
fail because it would "never provide the public with adequate
notice of what does or does not infringe the patent" given
that the "stabilizer pad" is an ever-changing component.  I
agree.  The '453 patent teaches that the "stabilizer support
member" and the "stabilizer pad," while they may be molded
from the same piece, are nevertheless separate structures.
In other words, the "pad" must be separately identifiable
from the "support member."  If it were otherwise, Aliph is

13

1   correct that there would be no distinction between the
2   "stabilizer support member" and the "pad," and the latter
3   would therefore be "superfluous" in violation of <u>Innova/Pure</u>
4   <u>Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F. 3d
5   1111, 1119 (Fed. Cir. 2004).

6        Plantronics does not provide any evidence that the
7   accused products have a "stabilizer support member" that is
8   separate and distinct from a "stabilizer pad."  Instead**,**
9   Plantronics claims that separate structures are merely
10  aesthetic and so long as Aliph's stabilizer support member
11  performs both functions**,** Aliph's products infringe.
12  Plantronics provides no authority for this proposition.
13  Accordingly, Aliph's motion on this issue is **GRANTED**.

14       *4.   Contact Points*

15       Aliph next moves for non-infringement as to claim 10 on
16  the grounds that the "receiver" on its accused products does
17  not "contact" the tragus and anti-tragus portions of the ear
18  since the receiver is always covered by an ear cushion.
19  Thus, it is Aliph's position that the ear cushion of its
20  accused products "contact" the tragus and anti-tragus, but
21  not the receiver itself.

22       Plantronics asserts that Aliph made this same argument
23  during claim construction, and that I rejected this argument,
24  finding that "direct touching" of the receiver is not
25  required by claim 10.  (Docket No. 142 at pp. 7-8.)  I
26  maintain the belief that Aliph's construction of the term
27  "contact" is too narrow, and that a person skilled in the art
28  would not necessarily conclude that the receiver has to

"directly touch" the tragus and anti-tragus of the ear in order to be in "contact" with them.  I also agree with Plantronics that the embodiments illustrated in Figures 1A and 1B of the '453 patent, which show an ear cushion that surrounds the receiver completely, demonstrate that there is at the very least a disputed issue of fact regarding whether Aliph's accused products infringe claim 10 of the '453 patent.  Aliph's motion is therefore **DENIED**.

    *5.  "Torus shaped" Stabilizer*

Aliph moves for non-infringement as to claims 29, 35, 36, 47 and 53.  Plantronics no longer asserts infringement of these claims.  (Pl.'s Opp. Br. p. 13.)  Accordingly, Aliph's motion for summary judgment as to claims  29, 35, 36, 47 and 53 is **GRANTED**.

    **C.   Invalidity**

Aliph next moves for summary judgment of invalidity of the '453 patent on a theory of anticipation and obviousness.  (Def.'s Br. p. 13.)  Each argument is addressed in turn.

    *1.   Anticipation*

Title 35 U.S.C. § 102 establishes the various grounds for invalidation of patents anticipated by prior art.  Under section 102(a), a patent may be anticipated if the claimed invention was described in a printed publication "before the invention thereof by the applicant for patent."  35 U.S.C. § 102(a).  In other words, a claimed invention cannot be validly patented if it was known, in use, patented, or described in a printed publication anywhere in the world, before the patentee's date of invention.  Id.  To invalidate

a patent under section 102(b), an invention must have been "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for the patent in the United States." 35 U.S.C. § 102(b).  The "reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it."  In re Spada, 911 F.2d 705, 708 (Fed. Cir. 1990); Scripps Clinic & Res. Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991) (to anticipate, "[t]here must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention").  "Because the hallmark of anticipation is prior invention, the prior art reference — in order to anticipate under 35 U.S.C. § 102 — must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'"  Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008) (citing Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548 (Fed. Cir. 1983)); see also Therasense, Inc. v. Becton, Dickinson and Co., 593 F.3d 1325, 1333 (Fed. Cir. 2010).  In order to anticipate, the prior art reference also must enable one of ordinary skill in the art to make the invention without undue experimentation.  Impax Labs., Inc. v. Aventis Pharms. Inc., 545 F.3d 1312, 1314 (Fed. Cir. 2008); see also In re Omeprazole Patent Litig., 483 F.3d 1364, 1379 (Fed. Cir. 2007).  The accused infringer

16

1    bears the burden of proving invalidity of the asserted patent

2    by clear and convincing evidence.  <u>Central Admixture Pharmacy</u>

3    <u>Services, Inc. v. Advanced Cardiac Solutions, P.C.</u>, 482 F.3d

4    1347, 1357-58 (Fed. Cir. 2007).  "[A]nticipation is a

5    question of fact, including whether or not an element is

6    inherent in the prior art."  <u>Eli Lilly and Co. v. Zenith</u>

7    <u>Goldline Pharmaceuticals, Inc.</u>, 471 F.3d 1369, 1375 (Fed.

8    Cir. 2006).

9        In this case, the prior art alleged to anticipate is

10   U.S. Patent No. 1,893,474 (the "Lieber patent").  (<u>See</u>

11   Reinstedt Decl., Ex. 3.)  Aliph asserts that the Lieber

12   patent anticipates claims 1, 7, 10, 11, 18, 20, 21, 26, 28,

13   30 and 43 of the '453 patent.  Plantronics asserts that the

14   Lieber patent does not disclose:  (1) a receiver sized to fit

15   between a tragus and an antitragus of an ear, as required by

16   claims 1 and 10 of the '453 patent; (2) an ear cushion

17   dimensioned to cover a portion of the receiver, as required

18   by claims 1 and 10 of the '453 patent; or (3) a concha

19   stabilizer pad and stabilizer support member, required by

20   claims 1, 10 and 11 of the '453 patent.

21       I agree with Plantronics that Aliph is not entitled to

22   summary judgment on anticipation because there is a material

23   factual dispute over whether the Lieber patent discloses all

24   elements of the '453 patent.  For example, Plantronics'

25   expert, Professor Jesa H. Kreiner, declares that the Lieber

26   patent does not disclose a receiver sized to fit between the

27   tragus and the anti-tragus because the Lieber receiver is too

28   large to so fit.  (Declaration of Jesa H. Kreiner ("Kreiner

17

1   Dec.") at ¶¶ 8-11.)  Aliph's expert, Mr. Ambrose, does not

2   categorically state that the Lieber patent discloses such a

3   receiver, but merely that it discloses a "small receiver,"

4   which when placed in the user's ear will "seat on the anti-

5   tragus."  (Declaration of Stephen Ambrose ("Ambrose Decl.")

6   at ¶ 3.)  "Seating" on the anti-tragus is not the same as

7   being "sized to fit between" the tragus and anti-tragus, as

8   the '453 patent requires.  Aliph has failed to establish by

9   clear and convincing evidence that the Lieber patent

10  discloses all elements of the '453 patent and Aliph's motion

11  on the grounds of anticipation is therefore **DENIED**.

12      *2.   Obviousness*

13      If the requirements for an anticipation defense are not

14  satisfied, obviousness provides another basis for

15  invalidating a patent.  35 U.S.C. § 103(a).  To avoid being

16  obvious, a patent must be "more than the predictable use of

17  prior art elements according to their established functions."

18  KSR In't Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007).  To

19  determine obviousness, "the invention must be considered as a

20  whole and the claims must be considered in their entirety."

21  Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir.

22  1998).

23      Whether the claimed subject matter would have been

24  obvious to an ordinarily skilled artisan at the time of the

25  invention "is a question of law based on underlying questions

26  of fact."  Green Edge Enters., LLC v. Rubber Mulch Etc., 620

27  F.3d 1287, 1298 (Fed. Cir. 2010).  The underlying factual

28  inquiries include: (1) "the scope and content of the prior

art"; (2) "differences between the prior art and the claims
at issue"; (3) "the level of ordinary skill in the pertinent
art"; and (4) relevant secondary considerations, including
"commercial success, long felt but unsolved needs, [and]
failure of others." KSR, 550 U.S. at 406 (quoting Graham v.
John Deere Co. of Kan. City, 383 U.S. 1, 17-18 (1966)).
Obviousness must be proved by clear and convincing evidence.
Procter & Gamble Company v. Teva Pharmaceuticals USA, Inc.,
566 F.3d 989, 994 (Fed. Cir. 2009).   Thus, the inquiry on
summary judgment is whether a jury applying the clear and
convincing evidence standard could reasonably find, based on
the evidence produced by the accused infringer, that the
claimed invention was obvious.   See TriMed, Inc. v. Stryker
Corp., 608 F.3d 1333, 1339-1340 (Fed. Cir. 2010).   Summary
judgment of obviousness is appropriate if "the content of the
prior art, the scope of the patent claim, and the level of
ordinary skill in the art are not in dispute, and the
obviousness of the claim is apparent in light of these
factors." KSR, 550 U.S. at 427.   Conversely, a factual
dispute as to any one of these elements will defeat a motion
for summary judgment.   See Helifix Ltd. v. Blok-Lok, Ltd.,
208 F.3d 1339, 1346 (Fed. Cir. 2000).

     "The combination of familiar elements according to known
methods is likely to be obvious when it does no more than
yield predictable results." KSR, 550 U.S. at 416.   If an
ordinarily skilled artisan can implement a predictable
variation of a work available in the same field of endeavor,
section 103 likely bars its patentability.   Id. at 417.

However, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." Id. at 418. Determining whether a patent claiming a combination of known elements would have been obvious usually entails considering the "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." Trimed, 608 F.3d at 1341 (quoting KSR, 550 U.S. at 418). Identifying a motivation to combine can be important because "inventions in most, if not all, instances rely upon building blocks since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." KSR, 550 U.S. at 418-19. "[A]ny need known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." Id. at 420.

Additionally, a patent's subject matter can be proved obvious "by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." Id. at 419-20; see also Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1329 (Fed. Cir. 2010) (holding that obviousness analysis "may include recourse to logic, judgment, and common

1   sense available to a person of ordinary skill that do not

2   necessarily require explication in any reference or expert

3   opinion"). "When there is a design need or market pressure

4   to solve a problem and there are a finite number of

5   identified, predictable solutions, a person of ordinary skill

6   has good reason to pursue the known options within her

7   technical grasp. If this leads to the anticipated success, it

8   is likely the product not of innovation but of ordinary skill

9   and common sense." KSR, 550 U.S. at 420.

10      Aliph asserts that it is entitled to summary judgment

11  that claims 1, 7, 10, 11, 18, 20, 21, 26, 28, 30, 43 and 44

12  of the '453 Patent are obvious (1) in light of the Lieber

13  patent and knowledge of a person skilled in the art; or (2)

14  in light of the combination of the Lieber patent with

15  Japanese Utility Patent Application No. 60-40187(U) ("Komoda

16  patent") and knowledge of a person skilled in the art.

17  (Def.'s Br. pp. 18-21.)

18          a.   Undisputed Graham Factors: Scope/content of

19               prior art & Differences between prior art and

20               asserted claims

21      There are two relevant factors that the Federal Circuit

22  has identified to determine whether prior art is analogous:

23  "(1) whether the art is from the same field of endeavor,

24  regardless of the problem addressed, and (2) if the reference

25  is not within the field of the inventor's endeavor, whether

26  the reference still is reasonably pertinent to the particular

27  problem with which the inventor is involved." Comaper Corp.

28  v. Antec, Inc., 596 F.3d 1343, 1351 (Fed. Cir. 2010) (quoting

1    In re Clay, 966 F.2d 656, 658-59 (Fed. Cir. 1992)).  Whether

2    a reference in the prior art is "analogous" is a fact

3    question.   In re Clay, 966 F.2d at 658.

4         Here, there is no material issue of disputed fact that

5    the prior art is analogous.  The parties agree that the scope

6    of the prior art in the field of in-the-ear devices was broad

7    by the 1990s and that the telecommunications, hearing, and

8    audio industries all used receivers, ear cushions, and

9    stabilizing features for engaging the upper concha. (JSUF

10   Nos. 20-24.)  It is also undisputed that between the 1930s

11   and the 1990s receivers became smaller and that this was "a

12   trend" known to those skilled in the art.  (JSUF No. 24.)

13   There is thus no material issue of disputed fact regarding

14   whether the prior art identified by Aliph is "from the same

15   field of endeavor."  The prior art was clearly directed

16   toward the same problem the inventor was trying to solve in

17   the '453 patent, namely, providing a comfortable, stable

18   device that would conform and adapt to the shape of any ear,

19   with an emphasis on reducing the number of mechanical parts.

20   Thus, as a matter of law, the Lieber patent and the Komoda

21   patent were pertinent prior art.

22        There is also no disputed issue of fact regarding

23   differences between the prior art and the asserted claims.

24   Not only does Plantronics not argue that there are

25   appreciable differences between the prior art devices and the

26   device disclosed in the '453 patent, Plantronics admits that

27   Lieber discloses features that "can be called a receiver, ear

28   cushion, stabilizer support and pad."  (Pl.'s Opp. Br. p.

16.)  Thus, even though Plantronics disputes whether these features meet the requirements of the claims in the '453 patent, it nonetheless is undisputed the each of the technical components are disclosed in the Lieber and Komoda prior art.  For example, the Lieber and Komoda patents both disclose in-the-ear receivers (see JSUF Nos. 28, 31) that fit within the concha.  In fact, it is undisputed that Komoda discloses a receiver sized to fit between the tragus and the anti-tragus on an ear (see JSUF No. 32), consistent with claims 1 and 10 of the '453 patent.  The Lieber prior art patent and, in particular, the Komoda prior art patent also disclose an ear cushion that covers a portion of the receiver (see Lieber patent, col.2:60-71; JSUF No. 34), as well as stabilizer support members that utilize the external anatomy of the human ear, particularly the upper concha of an ear. (See JSUF No. 35; see also Deposition of Jesa A. Kreiner ("Kreiner Depo."), Docket No. 186, Ex. 10 at 71:24-73:10, 86:14-87:6.)  There is therefore no material issue of disputed fact as to either of the first two Graham factors.

        **b.   The level of ordinary skill in the art**

     There is also no material issue of disputed fact as to the level of skill in the art.  I previously ruled, consistent with the positions taken by both parties, that with respect to the '453 patent, a person of ordinary skill in the art would have either (1) an engineering or design degree that covered mechanical design and materials science, or (2) considerable work experience in the audio, telecommunications, or hearing industries that involved

researching or developing devices designed to interact with the human ear." (Docket No. 142 at 3 n.2.)

Plantronics' main argument on the issue of obviousness is that a person of ordinary skill in the art would not have been motivated to combine the Lieber patent and the Komoda patent. It is to this issue that I now turn.

The presence or absence of a motivation to combine is a question of fact. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The motivation to combine references serves to prevent hindsight bias. See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("To prevent hindsight invalidation of patent claims, the law requires some 'teaching, suggestion or reason' to combine cited references.") (quoting Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573 (Fed. Cir. 1997)); see also Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1125 (Fed. Cir. 2000) (stating that evidence of a motivation to combine prior art references "may flow from the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved.").

Having reviewed the prior art and the evidence submitted by the parties, I find that the prior art clearly and convincingly discloses "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the" '453 patent does. KSR, 550 U.S. at 418. The Lieber and Komodo in-the-ear device patents teach that a small in-the-ear receiver that utilizes a stabilizer

support member to secure the receiver may serve to reduce the
number of mechanical components necessary to stabilize the
receiver, and provide increased comfort to a variety of users
irrespective of the uniqueness of the user's ear.
Specifically, the Lieber patent teaches that the in-the-ear
receiver should be covered with a soft ear cushion for
increased user comfort and so that the earpiece can "adapt
itself within reasonable limits to ears of different sizes
and shapes." (Lieber patent, col. 1:19-23.)  The Komoda
patent teaches that the in-the-ear receiver should be "small,
compact and extremely easy to carry around" (Reinstedt Decl.,
Ex. 4 at p. 9).  Both the Lieber and Komoda prior art patents
teach that in order to stabilize the receiver and prevent it
from falling out of the ear, a stabilizer support member is
necessary. (Lieber patent, col. 2:63-72, 75-81; Reinstedt
Decl., Ex. 4 at p. 9.)  Both of the prior art patents also
teach that this stabilizer support member should be
"flexible" (<u>see</u> Liber patent, col. 3 1.42-50; Reinstedt
Decl., Ex. 4 at p. 10), and engage the external anatomy of
the ear at the crux of the helix.  (<u>Id.</u>)  As a matter of
common sense, a person of ordinary skill in the art would be
expected to combine the Komoda and Lieber in-the-ear devices,
and apply technology widely available in 1994 to (1) address
the known difficulty of ensuring stability of the device via
a stabilizing structure (other than an ear hook or a headset)
that engages the external ear anatomy; and (2) ensure comfort
to the user by miniaturizing the receiver and surrounding it
with a soft, adaptable ear cushion.  See <u>KSR</u>, 550 U.S. at

421. ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.")  That person would be expected to produce a device substantially similar to that described in the '453 patent, much like Aliph did.  This is particularly true here where it is undisputed that there are a limited number of anatomical features of the external ear that an in-the-ear device can engage to ensure stability without the use of additional mechanical parts (JSUF No. 25), and where it is also undisputed that there was a trend between the 1930s and the 1990s known to those skilled in the art towards the miniaturization of in-the-ear devices. (JSUF No. 24.) Indeed, the Lieber patent even teaches that the stabilizing support member should somehow utilize the upper portion of the external anatomy of an ear in order to "be held against outward and downward turning movement," a force that assists in "holding the earpiece in position."  (Lieber patent, col. 2:76-81.)[9]  Professor Kreiner's declaration and

---

[9]     Plantronics' argument that a person of ordinary skill in the art would not combine the Lieber and Komoda prior art patents because the "Lieber design relies on filling the concha, and the Komoda design relies on a hook in the crux (crus) of the helix" is also not persuasive.  (Pl.'s Opp. Br. at p. 17.)  In fact, the opposite is true.  The Lieber patent does not simply rely on the receiver to "fill the entire concha" for the purposes of providing stability.  The Lieber patent plainly discloses "two projecting parts," one of which is "adapted to extend behind the crus of the helix of the ear

deposition testimony, upon which Plantronics relies in an
attempt to create a triable issue of fact, do not in fact
create any triable issue; his testimony is largely
conclusory, and focuses rigidly on whether parts of Lieber
and Komoda can be combined in a strict sense to create a
workable device, and not on whether a person of ordinary
skill would improve on Lieber and Komoda in a predictable
fashion.  <u>See KSR</u>, 550 U.S. at 417.[10]

   "The question is not whether the combination was obvious
to the patentee but whether the combination was obvious to a
person with ordinary skill in the art."  <u>KSR</u>, 550 U.S. at
420.  Here, it is undisputed that all of the technical
elements of the invention identified in the '453 patent are
present in the prior art, and that the invention of in-the-
ear devices that were comfortable and provided a stabilizing
member that worked with the anatomy of an ear was a problem
known in the field of the endeavor at the time of the
invention.  It would have been obvious to one of ordinary
skill in the art to modify the Lieber device to reduce the
size of the in-the-ear receiver while pairing the receiver
with a comfortable, adaptable ear cushion that stabilized the

_to aid in holding the earpiece in position in the ear_."
(Lieber patent, col. 1:67, 70-73) (emphasis added.)  This
stabilizing member is disclosed in Figure 2 of the Lieber
patent, and identified in preferred embodiment as structure
number four.

        [10]    Moreover, <u>KSR</u> and cases decided in its aftermath have
established that "the legal determination of obviousness may
include recourse to logic, judgment, and common sense, in lieu
of expert testimony."  <u>Wyers v. Master Lock Co.</u>, 616 F.3d 1231,
1239 (Fed. Cir. 2010).

1    device with a flexible support member that invoked the ear

2    anatomy to avoid the use of headsets and earhooks.

3                    **d.   Relevant secondary considerations**

4         Plantronics further argues that secondary indicia of

5    nonobviousness, including copying and commercial success,

6    support a finding of nonobviousness.[11]  (Pl.'s Opp. Br. at 18-

7    19.)  Even accepting as true Plantronics' assertions on these

8    secondary considerations[12], they do not save Plantronics from

9    summary judgment here since such secondary considerations

10   "simply cannot overcome a strong prima facie case of

11   obviousness."  Wyers v. Master Lock Co., 616 F.3d 1231, 1246

12   (Fed. Cir. 2010) (citing, inter alia, Leapfrog Enters., Inc.

13   v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007)).

14        Accordingly, I find that the asserted claims of the '453

15   Patent are invalid pursuant to 35 U.S.C. section 103, and

16   **GRANT** Aliph's motion for invalidity of claims 1, 7, 10, 11,

17   18, 20, 21, 26, 28, 30, 43 and 44.

18        Finally, Aliph moves for partial summary judgment as to

19   invalidity of the new dependent claims 25, 29, 31-42 and 45-

20   56, which it argues are made obvious by the combination of

21   the Lieber patent, the Komoda patent and U.S. Patent No.

22

23   ────────────

24        [11]   In support of these secondary considerations,
     Plantronics relies, in part, upon the supplemental report of
     its expert, Barry Katz.  Consistent with the evidentiary
25   rulings above, I did not rely on this supplemental, unsworn
     expert report.

26

27        [12]   I did not find Plantronics' evidence of secondary
     considerations, to the extent it was not in expert reports I
     did not consider, particularly persuasive.  For example, I
28   found nothing helpful in the Drysdale testimony which
     Plantronics cites on page 19, line 1 of its Opposition.

5,048,090 (the "Geers patent").  Dependent claims 25, 29, 31-42, and 45-56 relate to concha stabilizers that are "ring shaped," "torus shaped," or have an "opening" or "vacant center."  Aliph argues that the Geers patent discloses a "hoop" as a stabilizing structure, which is substantially torus shaped, or, at a minimum, ring-shaped.  Accordingly, Aliph argues that it would have been obvious to one skilled in the art to employ a toroidal or ring-shaped stabilizer in light of Geers, and to combine the toroidal or ring-shaped stabilizer to the in-the-ear device disclosed in Lieber with the small-sized receiver disclosed in Komoda.  Plantronics contends that summary judgment should be denied because there are disputes of fact regarding the motivation to combine the references.  (Pl.'s Opp. Br. p. 20.)

     I find that there is sufficient undisputed evidence of a motivation to combine the prior art Lieber and Komoda patents with the prior art Geers patent to derive a ring-shaped or toroidal stabilizing structure.  As a threshold matter, I note that much of the parties' evidence on this issue has been excluded due to my evidentiary rulings.  (See supra at pp. 2-3.)  The consequence of my excluding the report of Mr. Ambrose is that there is no expert testimony supporting a holding of obviousness; however, I conclude that no such testimony is required because there are no underlying factual issues in dispute as to obviousness.  See Sundance, Inc. v. Demonte Fabricating Ltd., 550 F.3d 1356, 1365 (Fed. Cir. 2008).  The technology in this case is simple and "neither party claims that expert testimony is required to support

such a holding." Id. (citing Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1573 (Fed. Cir. 1984) ("[T]he references and appellant's invention are easily understandable without the need for expert explanatory testimony."); Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369-70 (Fed. Cir. 2004); Iron Grip Barbell Co., v. USA Sports, Inc., 392 F.3d 1317, 1323 n.3 (Fed. Cir. 2004)). "The ultimate judgment of obviousness is a legal determination." KSR, 550 U.S. at 425.  Where, as here, "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." Id.  There is no genuine dispute that Geers discloses a hoop-shaped or ring-shaped stabilizing structure for an in-the-ear device.  And, as noted above, there is also no genuine dispute that (1) achieving a comfortable fit for devices that engage the human ear was a goal for decades before 1994 (JSUF No. 21); (2) circular ear cushions were known in the art prior to 1994 (JSUF No. 23); and (3) there are only a limited number of anatomical features that any in-the-ear device can engage (JSUF No. 25).  These undisputed facts, in conjunction with the prior art patents, which teach that a stabilizing structure should (1) be flexible and adaptable to fit a wide range of ears; (2) engage the ear anatomy for stability and security without the use of multiple mechanical parts; (3) be soft and comfortable to the user without impairing technical operation of the in-the-ear device; and (4) as Greer teaches,

provide "good ventilation" to the ear (see Greer patent, col.
1:25), demonstrate that a person skilled in the art would
have been motivated to combine the ring-shaped stabilizer of
Geers to the ear cushion and receiver of Lieber and Komoda,
in order to create an in-the-ear device that is small,
comfortable and adaptable to a wide-variety of ears.  The use
of a ring-shaped or hoop-like structure that engages the
upper concha for stability is obvious in light of the prior
art patents and the market pressures in this field of
endeavor.  "[I]n many cases a person of ordinary skill will
be able to fit the teachings of multiple patents together
like pieces of a puzzle."  KSR, 550 U.S. at 420.  Such a
combination is more likely to be obvious where it "'simply
arranges old elements with each performing the same function
it had been known to perform' and yields no more than one
would expect from such an arrangement."  Id. at 417 (quoting
Sakraida v. AG Pro, Inc., 425 U.S. 273, 282 (1976)).  The
"ring shaped" and "vacant center" stabilizers of claims 25,
29, 31-42 and 45-56 of the '453 patent are the
result of precisely such an obvious combination, and Aliph's
motion on this point is therefore **GRANTED**.[13]
///
///
///

---

[13]     In light of the above rulings, I need not reach
Aliph's final request for partial summary judgment of no
liability for the new claims added during reexamination prior
to the issuance of the reexamination certificate on March 1,
2011.

1    A judgment in Aliph's favor on the issues of both non-

2    infringement and invalidity will be entered accordingly.

3    **IT IS SO ORDERED.**

4    Dated: March 23, 2012

5

6                           Bernard Zimmerman
                     United States Magistrate Judge

7

8    G:\BZALL\-BZCASES\PLANTRONICS V. ALIPH\ORDER ON ALIPHS MOT FOR SUMMARY JUDGMENT.BZ
     VERSION2.FINAL RULING.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28