David C. Bohrer (SBN 212397)
dbohrer@confluencelaw.com
Jessie J. Ho (SBN 260790)
jho@confluencelaw.com
CONFLUENCE LAW PARTNERS
60 South Market Street, Suite 1400
San Jose, California 95113-2396
Telephone:  (408) 938-3882; Facsimile:  (408) 971-4332

Bruce G. Chapman (SBN 164258)
bchapman@cblh.com
Elizabeth Yang (SBN 249713)
eyang@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
333 S. Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone:  (213) 787-2500; Facsimile:  (213) 687-0498

Attorneys for Plaintiff
PLANTRONICS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PLANTRONICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALIPH, INC., et al. <br><br> Defendants. | Case No. 3:09-cv-01714-BZ <br><br> **PLAINTIFF PLANTRONICS, INC.'S OBJECTIONS TO DEFENDANTS' BILL OF COSTS** |

## Table of Contents

I.  INTRODUCTION ............................................................................................................ 1

II.  SPECIFIC OBJECTIONS ............................................................................................... 1

    A.  Objections to Service of Subpoenas:  Claimed $328.25; Disallow $109; and
        Grant $219.25 ........................................................................................................ 1

    B.  Objections to Reporters' Transcripts Costs:  Claimed $744.37; Disallow
        $209.10; and Grant $535.27 .................................................................................. 2

    C.  Objections to Deposition Transcripts Costs:  Claimed $77,041.65; Disallow
        $11,076.22; and Grant $65,965.43 ....................................................................... 3

        1.  Aliph is not entitled to costs for Christopher Struck's deposition ............. 3

        2.  Aliph is not entitled to expedited costs ..................................................... 4

        3.  "Extras" are not taxable costs .................................................................. 5

            a.  E-cd Charges ................................................................................. 5

            b.  Video Charges ............................................................................... 6

            c.  "Full Day Per Diem" Charges ....................................................... 6

            d.  "Evening pages" Charge ................................................................ 6

    D.  Objections to Translation Costs and Certification Costs:  Claimed $11,462.50;
        Disallow $7,668.00; and Grant $3,794.50 ............................................................ 7

    E.  Objections to Reproduction of Exhibits and Visual Aid Costs: Claimed
        $7,257.30; Disallow $7,257.30; and Grant $0 ...................................................... 8

    F.  Objections to Costs Regarding Electronically Stored Information (ESI):
        Claimed $236,355.33; Disallow $222,153.53; and Grant $14,201.80 ................. 8

        1.  Objection to ESI services performed in-house at Quinn Emmanuel:
            Claimed $135,407.16; Disallow $121,205.36; and Grant $14,201.80 ....... 9

            a.  Objection to Quinn Emmanuel's charges for electronic imaging
                and processing of documents for production: Claimed
                $120,386.06; Disallow $106,474.26; and Grant $13,911.80 ....... 12

b.      Objection to Quinn Emmanuel's charges for reproduction of ESI for transmission to the plaintiff: Claimed $8,400.00; Disallow $8,110; and Grant $290 ................................................. 15

c.      Objection to Quinn Emmanuel's charges for printing copies of electronically produced documents for Aliph's preparation and defense or examination of deponents: Claimed $6,621.10; Disallow $6,621.10; and Grant $0 ............................................... 15

2.      Objection to third-party vendor Kivu's charges for e-discovery services: Claimed $100,948.17; Disallow $100,948.17; and Grant $0.... 16

III.      CONCLUSION ........................................................................................................ 16

1    Plaintiff Plantronics, Inc. ("Plantronics") objects to the Defendants' Bill of Costs [D.N. 227]

2    ("Bill of Costs") submitted by defendants Aliph, Inc. and Aliphcom, Inc. (collectively "Aliph").

3    **I.    INTRODUCTION**

4    Aliph seeks a wide range of costs under purported authority Federal Rule of Civil Procedure

5    54(d).  (Bill of Costs at 2.)  However, as made clear by the United States Supreme Court, the costs

6    recoverable under Rule 54(d) are limited to the costs explicitly enumerated in 28 U.S.C. § 1920.

7    *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 444 (1987); *see also Grove v. Wells Fargo*

8    *Fin. Cal., Inc.,* 606 F.3d 577, 579 (9th Cir. 2010).

9    As the party seeking costs, Aliph has "the burden . . . to establish the amount of compensable

10   costs and expenses to which it is entitled." *City of Alameda, Cal. v. Nuveen Mun. High Inc. Opp.*

11   *Fund,* 2012 WL 177566 at *1 (N.D. Cal. Jan. 23, 2012), *citing Allison v. Bank One–Denver,* 289 F.3d

12   1223, 1248–49 (10th Cir. 2002).[1]  As set forth in the following objections, Aliph has failed to

13   establish that each item claimed falls within an enumerated category of section 1920 and also failed

14   to substantiate the amount of each item claimed; the unsupported costs may not be taxed to

15   Plantronics.[2] 28 U.S.C. § 1920.

16   **II.    SPECIFIC OBJECTIONS**

17   A.    Objections to Service of Subpoenas:  Claimed $328.25; Disallow $109; and Grant
18        $219.25

19   Of the $328.25 sought by Aliph for private service of subpoenas, $109.00 was for engaging a

20   private process server to make an unsuccessful attempt to serve a duplicative subpoena for records on

21   Bungardt Design.  This service of subpoena was not reasonably required and therefore should not be

22   taxed.  *See* Civil L.R. 54-3(a)(2) (fees for service of process not allowed unless they are "reasonably

---

[1] According to Civil Local Rule 54–1(a), a bill of costs "must state separately and specifically each item of taxable costs claimed." Civil. L.R. 54–1(a).  Further, a party seeking costs must provide an affidavit stating that the costs were "necessarily incurred, and are allowable by law" and "[a]ppropriate documentation to support each item claimed." *Id.*

[2] Counsel for Plantronics and Aliph have met and conferred in an effort to resolve their disagreement over the taxable costs claimed by Aliph, and, as discussed in Plantronics' specific objections, Aliph has agreed in several instances to disallow costs as sought by Plantronics.  *See* Declaration of David C. Bohrer In Support of Plantronics, Inc.'s Objections to Defendants' Bill of Costs ("Bohrer Decl."), ¶1 and Ex. 1.

1    required").

2           Gabrielle Bungardt is one of the named inventors of the patent asserted by Plantronics against

3    Aliph.  Ms. Bungardt ran a consulting business out of her home under the business name "Bungardt

4    Design" for which she was the sole employee.  Bohrer Decl., Ex. 6 at 53:23–55:15.  On behalf of Ms.

5    Bungardt, on or about May 6, 2011, counsel for Plantronics accepted on Ms. Bungardt's behalf a

6    subpoena seeking both her deposition and her documents. *Id.,*¶12.   Thereafter, David Bohrer and

7    Confluence Law Partners, acting as counsel for Ms. Bungardt, engaged in several telephone calls and

8    email communications with counsel for Aliph in which Mr. Bohrer agreed to schedule Ms.

9    Bungardt's deposition on June 28, 2011 (later continued by agreement to July 8, 2011) and further

10   agreed to produce before the deposition documents in Ms. Bungardt's possession that were

11   responsive to the subpoena. *Id.*, ¶16.  Ms. Bungardt did in fact produce responsive documents before

12   the deposition, including those of Bungardt Design.   *Id.*, ¶17.  Under the circumstances, it was not

13   reasonable for Aliph to serve a separate subpoena for records of Bungardt Design. *Id.* Ex. 6 at 55:6-

14   15 (Ms. Bungardt testified that the search for Bungardt Design documents would not have been any

15   different than a search for her own records because, as stated correctly by counsel, "you really are

16   Bungardt Design."  Even assuming there was some justification to engage in this duplicative

17   discovery, Aliph unreasonably placed the subpoena for service with a private process server on or

18   about June 16, 2011 without first asking Mr. Bohrer whether counsel would accept service of the

19   subpoena as counsel had previously agreed with respect to the subpoena for Ms. Bungardt's

20   deposition and records. *Id.*  Aliph also failed to give the process server Ms. Bungardt 's correct

21   address, such that Ms. Bungardt never received the subpoena for records directed to her home-based

22   business. *Id.,* Ex. 6 at 52:2-21.   While Aliph may have reasonably incurred costs for service of other

23   subpoenas, the $109.00 cost incurred in connection with the failed service of what essentially was a

24   second subpoena on Ms. Bungardt is not one of them and should be disallowed.

25      B.   Objections to Reporters' Transcripts Costs:  Claimed $744.37; Disallow $209.10; and
            Grant $535.27
26

27         Aliph claims $744.37 for transcripts of the *Markman* hearing and the summary judgment

28   hearing.  Plantronics objects to these costs as including charges in the amount of $209.10 for extra

1    copies ($134.40 for two extra copies of the *Markman* transcript and $74.70 for one extra copy of the

2    summary judgment transcript).  Upon meeting and conferring, Aliph has agreed to waive these costs

3    and accordingly the taxable cost should be reduced by $209.10.  *See* Bohrer Decl. ¶2 and Ex. 1.

4            C.   Objections to Deposition Transcripts Costs:  Claimed $77,041.65; Disallow $11,076.22;

5                 and Grant $65,965.43

6                 1.   Aliph is not entitled to costs for Christopher Struck's deposition

7            Aliph should not recover any costs related to the deposition of Christopher Struck, which, in

8    Judge Zimmerman's own words, arose out of Quinn Emmanuel's efforts to "evade the local patent

9    rules." Bohrer Decl., ¶¶10-11.  Long after the deadlines for disclosing expert testimony for use in

10   claim construction had passed, and long after the close of claim construction discovery, Aliph filed

11   the expert declaration of Christopher Struck in support of Aliph's proposed claim constructions [D.N.

12   111].  Aliph failed to timely identify Mr. Struck and disclose his opinions as required by Patent Local

13   Rule 4-2 and failed to timely disclose its intent to rely on Mr. Struck's expert testimony and to

14   summarize this testimony as required by Patent L.R. 4-3(b) and (e).  Accordingly, on July 28, 2011,

15   Plantronics moved to exclude Mr. Struck's testimony [D.N. 121].  Later that same day, on July 28,

16   2011 [D.N. 122], Judge Zimmerman scheduled the motion for telephonic hearing for the morning of

17   the following day, July 29, 2011.  Obviously concerned that Mr. Struck's testimony would be

18   excluded, Aliph's counsel, Quinn Emmanuel, in return for Plantronics agreeing to withdraw the

19   motion, stipulated to produce Mr. Struck for deposition and to allow Plantronics additional time to

20   brief the claim construction issues.  The stipulation [D.N. 125] was prepared and filed by Quinn

21   Emmanuel on the morning of July 29, 2011, shortly before the telephonic conference with Judge

22   Zimmerman.

23           Although he approved the stipulation, Judge Zimmerman made it very clear that in his eyes

24   the attempt by Quinn Emmanuel to justify the late disclosure of a claim construction expert was the

25   *second time*[3] that they had attempted to evade the patent local rules.  "What you need to understand is

26   _____

27   [3] Counsel for Quinn Emmanuel defended the disclosure of Mr. Struck and his opinions as timely
     based on their having made a general reservation of the right to submit expert testimony; however, as
28   pointed out by Judge Zimmerman, Quinn Emmanuel had previously made and lost this argument in

(Footnote Continued on Next Page.)

that I expect that the patent rules are to be followed and not evaded.  I found it very troubling that Quinn Emmanuel should spend as much time as it did trying to figure out how to evade the rules." *Id.*, ¶10.  "I'm simply going to advise my colleagues that this is now twice, and you know what they say about three strikes.  So Quinn Emmanuel can't afford to become a firm that is known as a patent rule evader." *Id.*  When counsel for Quinn Emmanuel expressed concern that "we have left your Honor with the impression of evading the rules," Judge Zimmerman responded "you have left me with that impression and I will advise, so advise my colleagues." *Id.,* ¶11.

The deposition of Christopher Struck was intended to reduce the prejudice to Plantronics of Aliph and its counsel having attempted to evade the patent local rules.  Moreover, Aliph subsequently chose not to submit a report from Mr. Struck on infringement, invalidity or any other issue to be tried, and Aliph did not rely on Mr. Struck's testimony in support of Aliph's motion for summary judgment.  Under the circumstances, costs of $1,999.47 relating to Mr. Struck's deposition should not be taxed.

2.  Aliph is not entitled to expedited costs

Aliph has requested $77,041.65 in costs for deposition transcripts, including the cost of $7,052.15[4] for expediting the delivery of the Goodrich, Pedraza, Bungardt, Struck, Ambrose, Katz, Lieu, Leonard,[5] and Lynde transcripts[6].  However, expedited delivery costs for deposition transcripts are not recoverable.  *See Affymetrix Inc., v. Multilyte Ltd.*, 2005 WL 2072113 at *2 (N.D.

---

(Footnote Continued from Previous Page.)

*Friskit, Inc. v. Realnetworks, Inc.*, 2005 WL 6249309 at *1 (N.D. Cal. Mar. 22, 2005) (excluded expert declaration as not timely filed and disclosed under the local patent rules, notwithstanding Quinn Emmanuel's reservation of the right to submit an expert declaration in support of its claim construction).

[4] The depositions of Vollmer, Hume, and Prouty were billed to Aliph on one invoice by TSG Reporting and included charges of $1182.75 for expedited delivery.  In subsequent meet and confers, Aliph has confirmed that it is not claiming this charge, and acknowledged that it failed to itemize this cost in their waived costs.  No revision to Aliph's requested taxable amount for the Vollmer, Hume, Prouty invoice is necessary as the requested taxable amount includes this waiver.

[5] Although Aliph requested expedited costs for Leonard, it appears to have waived the $889.92 expedited cost in its Bill of Costs.  Accordingly, Plantronics does not seek disallowance of this amount and would object if Aliph attempts to add this cost to their amount claimed.

[6] Aliph also seeks expedited costs for the Kreiner transcript, but Aliph was not invoiced for expedited delivery of this transcript, [*see* D.N. 227-5:26-27], so there is no expedited cost to be taxed in this regard.

1    Cal. Aug. 26, 2005) ("Expedited delivery or messenger fees, however, are not recoverable.").

2    Furthermore, the turnaround for deposition transcripts that are not expedited is 10 business days.

3    *See* Bohrer Decl., ¶18, Ex. 10.  Except for Lieu's transcript, all of the depositions for which Aliph

4    seeks expedited costs were available on normal turnaround well before any of the deadlines

5    identified by Aliph.  *See* Bohrer Decl., ¶19, Ex. 11.  Expediting Lieu's transcript, however, was not

6    reasonably necessary as Aliph chose to rely on his written report [D.N. 187-1] and his written

7    declaration [D.N. 187] in their motion for summary judgment.

8            *Francisco v. Verizon South, Inc.*, 272 F.R.D. 436 (E.D. Va. 2011) is a Virginia district court

9    opinion that has not been cited by either the Ninth Circuit or the Northern District of California.

10   *Francisco* is distinguished as allowing the expedited charge because "Defendants need[ed] to

11   thoroughly prepare for, and timely respond to" a motion for sanctions.  *Id.* at 444.  In contrast, in

12   the present case, there was no need for delivery of any of the transcripts earlier than the normal 10

13   business day turnaround.

14           3.   "Extras" are not taxable costs

15           Although this Court has found that Local Rule 54-3(c)(1) covers the cost of videotaping and

16   transcribing a deposition, one copy of the videotape, and one copy of the written transcript, *see*

17   *MEMC Electronic Materials v. Mitsubishi Materials*, 2004 WL 5361246 at *3 (N.D. Cal. Oct 22,

18   2004), the Rule does not allow the recovery of costs for "extras" such as real-time hookups,

19   ASCII/Mini/E-tript, E-transmissions or E-Transcripts, or additional written transcripts or videotapes.

20   *Affymetrix*, 2005 WL 2072113 at *3 (*citing Ishida Co., Ltd. V. Taylor*, 2004 WL 2713067 at *1 (N.D.

21   Cal. Nov. 29, 2004)).

22           a.   E-cd Charges

23           Aliph is seeking costs for "E-cds[7]", which are described in U.S. Legal Support's rate sheet as

24   _____

25   [7] E-cd charges of $30 appear for Babiak [D.N. 227-4:3], Morrisey [D.N. 227-4:5], Pedraza [D.N.
     227-4:8], Goodrich [D.N. 227-4:11], Bungardt [D.N. 227-4:12], Struck [D.N. 227-4:15], Asseily

26   [D.N. 227-4:16], Vollmer [D.N. 227-4:19], Simmons [D.N. 227-4:24], Bernardi [D.N. 227-4:26],
     Ducote [D.N. 227-4:30], Hume [D.N. 227-4:33], Bastiaanse-Hamren [D.N. 227-4:37], Behar [D.N.

27   227-4:40], Drysdale [D.N. 227-4:43], Tamaru [D.N. 227-4:46], Rahman [D.N. 227-5:4], de Villiers
     [D.N. 227-5:7], Niemi [D.N. 227-5:10], Elabidi [D.N. 227-5:13], Ambrose [D.N. 227-5:16], Leonard

28   [D.N. 227-5:22], Kreiner [D.N. 227-5:26], Lieu [D.N. 227-5:28].

"ascii, e-trans, pdf, scanned exhibits." The E-cds costs of $720 fall under the category of "extras" and therefore are not taxable. *Id*. Aliph has agreed to waive the costs relating to E-cds, thereby reducing the taxable costs by $720. *See* Bohrer Decl., ¶2 and Ex. 1.

### b. Video Charges

U.S. Legal Support's invoices are broken up into two distinct portions: one invoice for charges relating to the written deposition, and one invoice for charges relating to the videotaping of the deposition. Plantronics objects to costs for "video charges" that appear in various written deposition invoices.[8] For instance, the invoice for Pedraza charges $1,225.00 for "videotape services" on the videotape services portion of the invoice, as well as a $66.85 "video charge" on the written transcript portion of the invoice. Plantronics does not dispute that charges for videotape services appearing on the videotape services portion of the invoices may be taxable costs, but objects to the additional "video charge" appearing on written transcript portion of the invoices. These charges fall outside the allowed charges (cost of videotaping, attendance of a court reporter, one copy of the videotape, and one copy of the written transcript) mentioned in *MEMC*, and therefore are not taxable costs. The $1,213.50 for video charges should be disallowed.

### c. "Full Day Per Diem" Charges

Aliph claims that "full day per diem" charges are "necessary cost[s] incurred in taking a deposition," and thus are taxable. *See* Bohrer Decl., Ex. 1. However, only the invoices for Pedraza and Goodrich carry this charge of $150.00 [D.N. 227-4:8, D.N. 227-4:11], making it a unique and inconsistent charge, thus contradicting Aliph's claim that this is a "necessary cost incurred in taking a deposition." If it indeed is a necessary cost, this charge would appear on all invoices, but it does not. This extra charge totaling $300.00 should be disallowed.

### d. "Evening pages" Charge

Likewise, a $96.00 charge for "evening pages" only appears on the deposition invoice for

---

[8] Video charges of $66.85 appear for Pedraza [D.N. 227-4:8]; $73.15 for Goodrich [D.N. 227-4:11]; $156.00 for Bungardt [D.N. 227-4:12]; $148.50 for Vollmer [D.N. 227-4:19]; $150.50 for Bernardi [D.N. 227-4:26]; $165.00 for Ducote [D.N. 227-4:30]; $85.00 for Hume [D.N. 227-4:33]; $54.50 for Bastiaanse-Hamren [D.N. 227-4:37]; $81.00 for de Villiers [D.N. 227-5:7]; $155.00 for Niemi [D.N. 227-5:10]; and $78.00 for Elabidi [D.N.227-5:13].

Katz [D.N. 227-5:25] and does not appear to be a charge consistently or necessarily incurred in taking a deposition.  This "extra" charge of $96.00 should be disallowed.

    D.  <u>Objections to Translation Costs and Certification Costs:  Claimed $11,462.50; Disallow $7,668.00; and Grant $3,794.50</u>

Aliph has requested $11,462.50 in costs relating to translation of foreign prior art and certification of foreign prior art and USPTO records.  Of the $11,462.50, Aliph requests $7,610 for translation costs.  First, Plantronics has been unable to identify or locate an alleged translated document DE856620C.pdf[9] [D.N. 227-6:3] in either Aliph's produced documents or in Aliph's invalidity contentions filed pursuant to Local Pat. R. 3-3.  *See* Bohrer Decl., Ex. 1.  Second, Plantronics objects to the cost of translating foreign prior art that was not used by Aliph in its Claim Construction Brief [D.N. 109],  Motion for Summary Judgment [D.N. 183] or any of Aliph's experts' reports.  Of the 16 foreign patents that Aliph translated, only one, Japanese patent JP 1985-040187U (Komodo), was cited by Aliph in its Motion for Summary Judgment and its expert report on invalidity.  The cost to translate Komodo was $195, per Aliph's Exhibit D to its Bill of Costs [D.N. 227-6:3].  Aliph's requested translation costs should therefore be reduced from $7,610 to $195.

Aliph has requested $253 in costs for "Article or Publication related to order number 134136" and accompanying "Library/Publication fees."  *See* Lee Decl., Ex. D [D.N. 227-6].  After meeting and conferring, Aliph stated that invoices were for retrieval and authentication of four non-patent literature prior art references.  Bohrer Decl., Ex. 1.  The invoices, however, are not itemized to reflect the amount due for retrieving and authenticating each of the four documents.  Rather, there are lump sums of $178 and $75 [D.N. 227-5:4-5].  Aliph has failed to meet its burden in properly documenting and itemizing these costs as required by this Court.  *See* Civil L.R. 54-1(a) (a bill of costs "must state separately and specifically each item of taxable costs claimed").  These improperly itemized costs should not be allowed, reducing Aliph's taxable certification costs from $3,852.50 to $3,599.50.

---

[9] After meeting and conferring, Aliph has agreed to waive $295.00 for the translation of this document as they themselves have been unable to locate this document.  Bohrer Decl., Ex. 1.

E.   Objections to Reproduction of Exhibits and Visual Aid Costs: Claimed $7,257.30;
     Disallow $7,257.30; and Grant $0

Aliph has requested $7,257.30 in costs for video technician fees and equipment rental.

However, fees for a video technician do not fit into any enumerated category of section 1920 and

therefore are not taxable as costs.  *See American Color Graphics, Inc. v. Travelers Property Cas. Ins.

Co.*, 2007 WL 832935 at *3 (N.D. Cal. Mar. 19, 2007); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877,

891 (5th Cir. 1993) (finding that video technician fees are not included in section 1920 and thus are

not recoverable).  Furthermore, Local Rule 54-3(d)(5) does not include the cost of renting equipment

to present the visual aids.  *Minor v. Christie's, Inc.*, 2011 WL 902235 at *24 (N.D. Cal. Jan. 29,

2011); *Morrison v. Reichhold Chem., Inc.*, 97 F.3d 460, 465 (11th Cir. 1996) (equipment rental fees

are not included in section 1920); *Technical Resource Services, Inc. v. Dornier Medical Systems,

Inc.*, 134 F.3d 1458, 1468 (11th Cir. 1998)(equipment rental fees are not taxable).  The costs for

video technician Eric Ang and equipment rental are outside the taxable costs allowed under section

1920 and Local Rule 54-3 and therefore should not be allowed.

F.   Objections to Costs Regarding Electronically Stored Information (ESI):  Claimed
     $236,355.33; Disallow $222,153.53; and Grant $14,201.80

In paragraph 6 of its Bill of Costs, Aliph seeks $236,355.33 for numerous alleged services

regarding the handling of electronically stored information (ESI) under section 1920(4).[10] (Bill of

Costs at 9:10 – 12.10.)  Aliph breaks these costs into two categories: 1) $135,407.16 for ESI services

allegedly performed in-house at Quinn Emmanuel, including internal processing, imaging, data

extraction, optical character recognition (OCR), TIFF conversion, DVD, CD and HDD creation and

duplication, blowbacks and electronic data discovery (EDD) services, *see* Bill of Costs at 2:17 and

9:10-11:14, and Lee Decl., Ex. F; and 2) third-party vendor Kivu's charges in the amount of

$100,948.17 for external collection, extraction, filtering, merging, de-duping, indexing, searching,

normalizing and processing ESI, *see* Bill of Costs at 2:18 and 11:15-12:10, and Lee Decl., Ex. H.

---

[10] Section 1920(4) states in pertinent part that the judge or clerk may tax as costs "[f]ees for
exemplification and the costs of making copies of any materials where the copies are necessarily
obtained for use in the case."

1   The clerk should disallow $121,205.36 claimed in the first category and $100,948.17 (all) claimed in

2   the second category as falling outside of the scope of taxable costs under section 1920(4) and as

3   lacking substantiation.

4       The parties' agreement regarding the exchange of discoverable ESI does not establish that

5   these costs are taxable. *Race Tires America, Inc.,* 2012 WL 887593 at *11 (3rd Cir. March 16, 2012)

6   ("[I]t is not significant . . . that the parties agreed to 'exchange responsive and discoverable ESI'").

7   Furthermore, the parties' agreement *does not require cost-shifting* of e-discovery expense to the

8   prevailing party, *see* Lee Decl., Ex. G; there is no contractual obligation on the part of Plantronics to

9   cover all or any part of the expenses incurred by Aliph in complying with discovery requests.

10      Likewise, it is not significant that the Federal Rules of Civil Procedure provide for the

11  discovery of ESI. *Race Tires America, Inc.,* 2012 WL 887593 at *11.  Aliph has not rebutted the

12  "presumption . . . that the responding party must bear the expense of complying with discovery

13  requests." *Id., citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).  Not only is

14  there no private contractual agreement to shift costs to Plantronics, at no time did Aliph seek let alone

15  obtain a protective order under Federal Rule of Civil Procedure 26(c) conditioning discovery on

16  payment of its costs.  The judge and clerk in this case are consequently limited to shifting only those

17  costs enumerated in §1920.  *See id.*

18      As discussed in the following sections, the costs claimed by Aliph are not taxable because

19  they do not constitute either "fees for exemplification" or "making copies" under §1920(4), the costs

20  were not incurred in preparation of copies "necessarily obtained for use in the case" under section

21  1920(4) and they lack the required substantiation.

1.  Objection to ESI services performed in-house at Quinn Emmanuel: Claimed
    $135,407.16; Disallow $121,205.36; and Grant $14,201.80

24      Aliph breaks Quinn Emmanuel's internal charges for ESI services into three subcategories:

25  a) "electronic imaging and processing of documents for production in response to plaintiff's

26  discovery demands" in the amount of $120,386.06; b) "reproduction of the same for transmission to

27  the plaintiff" in the amount of $8,400.00; and c) "printing copies of electronically produced

28  documents for Aliph's preparation and defense or examination of deponents" in the amount of

$6,621.10.[11] As discussed in sections 1a, 1b and 1c below, Aliph should recover only $13,911.80 under the first subcategory, only $290 under the second subcategory, and nothing under the third subcategory.

Before reaching the following specific objections, Plantronics raises an objection that bars recovery of all three subcategories of costs – Aliph's sole support for all of these costs is a report specially generated by Quinn Emmanuel for the Bill of Costs ("the Quinn Report"), *see* Lee Decl., Ex. F [D.N. 227-8], which falls far short of meeting Aliph's burden to provide "[a]ppropriate documentation to support each item claimed."  *City of Alameda, Cal.,* 2012 WL 177566 at *1, *citing* Civil L.R. 54–1(a).   The Quinn report uses only cursory, high level and unexplained terms and acronyms to describe the services provided, *e.g.*, "EDD+TIFF" [D.N. 227-8 at 12], "OCR" [*id.* at 7], "Encase Extraction" [*id.* at 25] and "HDD creation" [*id.* at 23], with no explanation in the report of the purpose of the activity or suggestion as to how the stated "amounts" could be parsed for what is or is not taxable.

As discussed below, *all* e-discovery services are *not* taxable under section 1920(4).  The Quinn Report fails to show which of the amounts relate to actual physical preparation of ESI for production to Plantronics (taxable) as opposed to general document collection, preservation, processing, review and culling activities leading up to the actual production (not taxable).

Furthermore, taxable copies are limited to "copies . . . necessarily obtained for use in the case." 28 U.S.C. § 1920(4).  The Northern District of California has interpreted this statutory requirement as allowing costs for "copied documents . . . prepared for use in presenting evidence to the court or prepared or tendered for the opposing party."  *City of Alameda, Cal.,* 2012 WL 177566 at

---

[11] Aliph confuses matters by submitting a chart (*see* Bill of Costs at 11:3-14) that purports to show each of the three subcategories of Quinn Emmanuel internal charges for ESI services using inconsistent and misleading titles.  For example, the first subcategory is described in the text of Bill of Costs as "electronic imaging and processing of documents in response to plaintiff's discovery demands" but is erroneously labeled "electronic scanning" in the chart.  (Bill of Costs at 11:3-4.) Similarly, the third subcategory is described in the text of the Bill of Costs as "printing copies of electronically produced documents as necessary for Aliph's preparation and defense or examination of deponents" while the chart labels these costs "printing copies for deposition *and hearing preparation*."  (*Id.* at 11:12-13 (emphasis added).)

1   *5 (held that invoices for copies of disclosure documents provided to fact witnesses and experts are

2   not recoverable as costs because they did not relate to presenting evidence to the court and they did

3   not relate to preparing documents for production to opposing counsel) (emphasis added).  The Quinn

4   Report fails to show which of the amounts were prepared for presenting evidence to the court or for

5   production to Plantronics and therefore fails to meet Aliph's burden of showing that any of the copies

6   were "necessarily obtained for use in the case."

7           Conversely, courts have held that extra copies of filed papers, correspondence, and copies of

8   cases are not "necessarily obtained for use in the case" but rather, are for the convenience of

9   attorneys and thus are not allowable.  *Fressell v. AT & T Techs., Inc.,* 103 F.R.D. 111, 116 (N.D. Ga.

10  1984) (holding that the prevailing party would be permitted to recover charges "attributable to

11  discovery" but would not be allowed costs for "extra copies of filed papers, correspondence, and

12  copies of cases since these are prepared for the convenience of the attorneys"); *see also Haroco, Inc.*

13  *v. Am. Nat'l Bank & Trust Co.,* 38 F.3d 1429, 1441 (7th Cir. 1994) (expenses for copies made for the

14  convenience of counsel or the litigant's own use are not recoverable); *Fogelman v. ARAMCO,* 920

15  F.2d 278, 286 (5th Cir. 1991) (holding that the losing party "should not be held responsible for

16  multiple copies of documents, attorney correspondence, or any of the other multitude of papers that

17  may pass through a law firm's xerox machines" and remanding to district court for determination of

18  whether reproductions were necessarily obtained for use in the case).  The Quinn Report neither

19  establishes that the copy costs claimed were not merely for the convenience of counsel nor provides

20  any means of parsing the claimed amounts to exclude such costs.

21          The declaration of Ms. Lee [D.N. 227-1] does not rehabilitate the Quinn Report.  It contains

22  little more than the talismanic recitation of the stock phrases that the costs in the Quinn Report were

23  for "necessary," "customary" and "reasonable" discovery documents.  *Id.*, ¶¶ 24-27.  Moreover, her

24  self-serving description of the costs in the Quinn Report as limited to "Aliph['s] use[] of discovery

25  tools to scan, convert, and reproduce discovery documents," *id.,* ¶25, is contradicted by hundreds of

26  thousands of dollars of costs in the Quinn Report for such nontaxable e-discovery services as

27  "standard processing of electronic documents . . . to extract metadata." Bohrer Decl., ¶4 and Ex. 1.

28          Despite meeting and conferring at length with Aliph regarding the flaws in the Quinn Report,

counsel for Plantronics was unable to elicit anything approaching a satisfactory explanation of the above shortcomings. *See id.*, Ex. 1. Quinn Emmanuel produced the underlying invoices referenced in the Quinn Report (in response to Plantronics' requests for confirmation of if, when and how the amounts in the Quinn Report were billed to Aliph), but the descriptions in these invoices provide *less explanation* of the charges than does the Quinn Report.[12] Furthermore, the invoices do not use the same or consistent descriptions[13] and in other instances the invoices appear to omit the charges in the Quinn Report altogether[14]. *Id.*, ¶5. Aliph's counsel also purported to provide a written explanation of the services in the Quinn Report, but stopped well short of explaining the purpose of these services or otherwise showing how they fell within the bounds of section 1920 (or demonstrating they were not for the convenience of counsel). *Id.*, Ex. 1.

The Quinn Report does not satisfy Aliph's burden of providing documentation adequate to support any of the claimed costs and therefore, except as discussed by Plantronics below, none of these costs may be taxed.

   a.   Objection to Quinn Emmanuel's charges for electronic imaging and processing of documents for production: Claimed $120,386.06; Disallow $106,474.26; and Grant $13,911.80

These costs span numerous different ESI services allegedly performed in-house at Quinn Emmanuel, including internal processing, imaging, image endorsement, data extraction, optical character recognition (OCR), conversion to PDF, and electronic data discovery (EDD) services plus TIFF conversion, *see* Bill of Costs at 2:17 and 9:10-11:14, and Lee Decl., Ex. F.

The wide ranging e-discovery costs sought by Aliph do not qualify as "exemplification" or "costs of making copies" under section 1920(4). Aliph cites *Parrish v. Manatt, Phelps & Phillips, LLP,* 2011 WL 1362112 (N.D. Cal. Apr. 11, 2011) for the proposition that costs incurred for e-

---

[12] For example, compare the expense summary in Quinn invoices dated Aug. 15, 2011 and Jan. 19, 2012 (*id.,* Ex. 2) with descriptions of charges in the Quinn Report (Lee Decl., Ex. F).

[13] The invoices (Bohrer Decl., Ex. 2) refer to "EDD" but not to "EDD+TIFF"

[14] While the Quinn Report contains thousands of dollars of charges for "HDD creation" (Lee Decl., Ex. F) this cost appears nowhere in the description of discovery services billed to Aliph (Bohrer Decl., Ex. 2).

1    discovery services may be taxable.  Even assuming *Parrish* supports this proposition, it conflicts with

2    *the more recent* Northern District of California decision *City of Alameda, Cal. v. Nuveen Mun. High*

3    *Income Opp. Fund,* 2012 WL 177566 at *5 (N.D. Cal. Jan. 23, 2012), in which the district court

4    refused to tax all e-discovery services, *see id.* ("[t]he Court agrees with plaintiffs that OCR and

5    metadata extraction are not recoverable [under section 1920]," *citing Computer Cache Coherency*

6    *Corp. v. Intel Corp.,* 2009 WL 5114002, at *4 (N.D. Cal. Dec.18, 2009)), and instead limited taxable

7    charges to the costs for electronic scanning of documents to produce to plaintiff, *see City of Alameda,*

8    *Cal.,* 2012 WL 177566 at *5.

9          The holding in *City of Alameda, Cal.,* reflects the Ninth Circuit's narrow construction of

10   section 1920(4) in *Romero v. City of Pomona,* 883 F.2d 1418, 1428 (9th Cir. 1989), *overruled in part*

11   *on other grounds by Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir. 1991) (en

12   banc) ("[s]ection 1920(4) speaks narrowly of '[f]ees for exemplification and copies of papers,'

13   suggesting that fees are permitted only for the physical preparation and duplication of documents, not

14   the intellectual effort involved in their production.").

15         Most recently, the Ninth Circuit's interpretation of section 1920(4) in *Romero* was expressly

16   cited by the Third Circuit as support for its finding that the great majority of e-discovery costs,

17   including such functions as the identification, collection, preservation, searching, culling, indexing

18   and processing of ESI, do not qualify as "making copies" under section 1920(4) and therefore are not

19   taxable as costs under the statute.  *Race Tires Am., Inc*, 2012 WL 887593 at *12.  The Third Circuit

20   vacated the district court's award of $365,000 e-discovery expenses as taxable costs, finding that less

21   than 10% of those costs, approximately $30,000, were equivalent to "making copies" under section

22   1920(4).  *Id.* ("We conclude that of the numerous services the [e-discovery] vendors performed, only

23   the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS

24   tapes to DVD involved 'copying,' and that the costs attributable to only those activities are

25   recoverable under section 1920(4)'s allowance for the 'costs of making copies of any materials.'")[15]

26   _____

27   [15]  In reaching its decision, the court of appeals in *Race Tires* expressly considered and rejected

28   virtually every one of the cases cited by Aliph in support of its claim for the costs of e-discovery

(Footnote Continued on Next Page.)

1    Under *Race Tires,* as well as prior decisions of the Ninth Circuit in *Romano* and the Northern

2    District of California in *City of Alameda, Cal.* and *Computer Cache,* e-discovery expenses

3    recoverable as "making copies" are limited to the actual physical preparation of ESI for production to

4    the other side and exclude the numerous functions leading up to the actual production.  Aliph seeks

5    costs for e-discovery services that extend far beyond the actual physical preparation of ESI for

6    production to Aliph and therefore these costs do not qualify as taxable costs for "making copies"

7    under section 1920(4).

8    The reference to "EDD+TIFF" in the Quinn Report, *see, e.g.,* Lee Decl., Ex. F [D.N. 227-8 at

9    page 12 of 25], suggest that some portion of the costs may include taxable TIFF conversion of ESI

10   for production to Plantronics.  However, Aliph has failed to meet its burden of providing

11   documentation sufficient to distinguish costs associated with the TIFF conversion from other, non-

12   taxable e-discovery costs.  Bohrer Decl., ¶4.

13   Even assuming that Aliph could properly document TIFF conversion as a separate e-

14   discovery cost item that falls within the scope of "making copies," which it has not done, such costs

15   are not taxable unless Aliph further establishes that they relate to materials "necessarily obtained for

16   use in the case" within the meaning of section 1920(4).  Aliph has not established that TIFF

17   conversion costs or for that matter any of the claimed e-discovery costs were prepared for use in

18   presenting evidence to the court or prepared for Plantronics, therefore creating an additional reason

19   why the clerk should disallow these costs.  *City of Alameda, Cal.,* 2012 WL 177566 at *5.

20   Plantronics also objects to Quinn Emmanuel's apparent pricing of the claimed e-discovery

21   services as exorbitant.  Quinn's internal report states (it is unknown whether this was the rate actually

22   charged to Aliph) a rate of $1,150 per Gigabyte of ESI; in comparison, Plantronics' vendor,

23   Blackstone, charged a much lower rate of $250 per Gigabyte and separately priced TIFF conversion

24   at $0.04 per page.  Bohrer Decl., Ex. 3.

25   _____

(Footnote Continued from Previous Page.)

26

27   services – among them *Parrish, Tibble* and *CBT Flint Partners* – stating that decisions such as these
     "are untethered from the statutory mooring[in section 1920]."  *Race Tires America, Inc.,* 2012 WL
     887593 at *9.

28

1   Applying the rate of $0.04 per page for TIFF conversion of the 347,795 pages that Aliph has

2   produced in this case, establishes a reasonable cost of $13,911.80 for TIFF conversion of ESI

3   produced to Plantronics.  The clerk should disallow $106,474.26 of Aliph's claimed e-discovery costs

4   of $120,386.06, reducing the costs granted to $13,911.80.

5           b.   Objection to Quinn Emmanuel's charges for reproduction of ESI for transmission
               to the plaintiff: Claimed $8,400.00; Disallow $8,110; and Grant $290
6

7   The cost items in this subcategory of costs relate to the alleged duplication and creation of

8   CDs, HDs and Hard Disk Drives.  Aliph has failed to meet its burden of showing that these costs

9   relate to the actual physical activity of producing ESI to Plantronics and therefore these costs are not

10  taxable as "making copies" under section 1920(4).  Aliph also has failed to meet its burden of

11  showing that these costs relate to copies that were prepared for use in presenting evidence to the court

12  or for production to Plantronics and therefore they are not taxable as costs for copies "necessarily

13  obtained for use in the case" under section 1920(4).

14  Aliph produced approximately 6 CDs and 10 DVDs to Plantronics containing responsive ESI,

15  *see* Bohrer Decl., ¶¶7-8 and Ex. 4, which, using Aliph's duplication rates of $15 per CD and $20 per

16  DVD, establish a reasonable cost for the physical preparation of the CDs and DVDs of responsive

17  ESI produced to Plantronics of $290.  Aliph never produced a hard disk drive to Plantronics so there

18  are no taxable costs associated with that activity.  Bohrer Decl., ¶9. The clerk should disallow $8,110

19  of Aliph's claimed ESI reproduction costs of $8,400, reducing the costs granted to $290.

20          c.   Objection to Quinn Emmanuel's charges for printing copies of electronically
               produced documents for Aliph's preparation and defense or examination of
21             deponents: Claimed $6,621.10; Disallow $6,621.10; and Grant $0

22  The cost items in this subcategory of costs relate to the alleged blowback, or printing, of hard

23  copy documents from ESI that Aliph says that it used for "preparation and defense or examination of

24  deponents."  By Aliph's own description, they were made at the convenience of Aliph's trial counsel;

25  there is no evidence that these hard copies were requested by, let alone produced to, Plantronics.

26  Accordingly, the costs of these hard copy documents do not qualify as either "fees for

27  exemplification" or "making copies" under section 1920(4), nor were they prepared in connection

28  with presenting evidence to the court or producing documents to Plantronics within the meaning of

1    section 1920(4)'s requirement "necessarily obtained for use in the case."  The clerk should disallow

2    the entire amount of these costs.

3          2.    Objection to third-party vendor Kivu's charges for e-discovery services: Claimed
             $100,948.17; Disallow $100,948.17; and Grant $0
4

5          This second category of ESI-related costs is based on the e-discovery services of third-party

6    vendor Kivu and its invoices.  Based on Kivu's invoices, Aliph is improperly asking the clerk to tax

7    as costs e-discovery services spanning a wide range of ESI identification, collection, processing and

8    review (*see, e.g.*, Lee Decl., Ex. H [D.N. 227-10] describing "local email extraction," "inclusion file

9    filtering," "CAD file extension analysis," "network email merge and de-dupe," "extraction and

10   normalize . . . email," "analysis of collections for availability and quantity of custodial ESI," "local

11   email merge and extraction," "prep, index and search email," "extract, de-archive, hash, filter, de-

12   dupe, normalize, index and search user files . . . netshare files," "pick-up and imaging of computer,"

13   and "mapping . . . original email deliverables," among other activities).  Having the benefit of the

14   activity descriptions in the Kivu invoices, it is clear that Aliph is seeking to tax costs for numerous

15   "electronic consultant charges [that] . . . are untethered from the statutory mooring" in section

16   1920(4).  *Race Tires America, Inc.,* 2012 WL 887593 at *9.  Electronic consultant charges for

17   collection, preservation and review services that lead up to, but are not part of, the actual production

18   to the other party fall outside the scope of "exemplification" or "making copies" under section

19   1920(4) and therefore may not be taxed.   *Id*. at *9-10*; City of Alameda, Cal.,* 2012 WL 177566 at *5.

20         Furthermore, even assuming that some or all of the Kivu charges qualify as "exemplification"

21   or "making copies", there has been no showing that these charges were for copies "necessarily

22   obtained for use in the case" under section 1920(4) and therefore may not be taxed.

23   **III.   CONCLUSION**

24         For the foregoing reasons, the clerk should disallow $248,473.15 of the claimed costs, and tax

25   only $84,716.25 as demonstrated in the attached schedule (Appendix 1) and draft proposed

26   (Amended) Bill of Costs (Appendix 2).

27

28

Dated:  April 20, 2012                              CONFLUENCE LAW PARTNERS
                                                    David C. Bohrer
                                                    Jessie Ho


                                                    By:  /s/David C. Bohrer
                                                         David C. Bohrer

                                                    CONNOLLY BOVE LODGE & HUTZ LLP
                                                    Bruce G. Chapman
                                                    Elizabeth Yang


                                                    Attorneys for plaintiff PLANTRONICS, INC.

PLANTRONICS, INC.'S OBJECTIONS TO ALIPH'S BILL OF COSTS
CASE # 3:09-01714 BZ

1

CERTIFICATE OF SERVICE

2        I hereby certify that on April 20, 2012, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses on file with the Clerk of Court.

5                                  By: _____ */s/ Jessie J. Ho* _____

6                                      Jessie J. Ho

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLANTRONICS, INC.'S OBJECTIONS TO ALIPH'S BILL OF COSTS
CASE # 3:09-01714 BZ