1
2
3
4
5
6
7
8                    UNITED STATES  DISTRICT COURT
9                      Northern District of California
10                        San Francisco Division
11   PLANTRONICS, INC.,                        No. C 09-01714 WHA (LB)
12                        Plaintiff,           ORDER TAXING COSTS
13        v.
14   ALIPH, INC. et al,
15                        Defendants.
     _____/
16                          **I.  INTRODUCTION**

17        In this patent infringement case, Plaintiff Plantronics, Inc. alleged that Defendants Aliph, Inc.

18   and AliphCom, Inc. ("Aliph") infringed Plantronics' rights under U.S. Patent No. 5,712,453, which

19   is a patent that relates to wireless earbuds for use primarily with cell phone receivers and headsets.

20   *See* Compl., ECF No. 1; Order Granting Summary Judgment, ECF No. 220 at 1-2.[1]  Magistrate

21   Judge Bernard Zimmerman granted summary judgment in Aliph's favor on non-infringement and

22   invalidity and ordered that Aliph recover costs from Plantronics.  *See* Order Granting Summary

23   Judgment, ECF No. 220 at 8-9, 28, 31-32; Final Judgment, ECF No. 221.

24        Aliph sought costs of $333,189.40 for categories that included service of subpoenas, reporters'

25   transcripts, deposition copies, certification and translation of records, reproduction of exhibits and

26   visual aids to assist the court, reproduction of discovery documents, and collection and reproduction

27   _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

     ORDER (C 09-01714 WHA (LB))

of Aliph documents to outside counsel in response to Plantronics' discovery requests. Aliph's Bill of Costs, ECF No. 227 at 2. Plantronics objected, *see* ECF No. 229, and on May 1, 2012, the clerk of the court taxed costs of $36,577.25, allowing only a portion of costs for service of subpoenas and deposition copies, *see* ECF No. 233 at 2. On May 8, 2012, Aliph filed a timely motion for review of the clerk's taxation and now seeks $331,965.30 in costs. *See* Fed. R. Civ. P. 54(d) (seven days to file motion); Motion, ECF No. 235. Plantronics opposed it on the grounds that Aliph sought recovery of costs not permitted under 28 U.S.C. § 1920, failed to provide supporting documentation for the amounts it seeks to recover, and failed to establish that the costs were necessarily incurred for use in the case. Opposition, ECF No. 238.

Following Magistrate Judge Zimmerman's retirement, the case was reassigned to Judge Alsup. *See* ECF No. 251. The parties consented to this court's deciding the costs motion only (as opposed to the whole case) and agreed that the order here is appealable only to the court of appeals. *See* Stipulation and Order, ECF No. 256.

For the reasons in this order, the court taxes costs of $93,929.16, as set forth in this table:

| Category | Aliph's Request | Plantronics's Request | Amount Awarded |
|---|---|---|---|
| Service of subpoenas | $328.25 | $149.00 | $258.00 |
| Reporters' transcripts | $535.27 | $535.27 | $535.27 |
| Deposition copies | $76,321.65 | $60,016.83 | $62,802.98 |
| Certification and translation of records | $11,167.50 | $3,794.50 | $9,719.55 |
| Reproduction of exhibits and visual aids to assist the court | $7,257.30 | $0.00 | $0.00 |
| Reproduction of discovery documents | $135,407.16 | $14,201.80 | $20,613.36 |
| Collection and reproduction of Aliph documents to outside counsel in response to plaintiff's discovery request | $100,948.17 | $0.00 | $0.00 |
| Total | $331,965.30 | $78,697.40 | $93,929.16 |

UNITED STATES DISTRICT COURT
For the Northern District of California

## II. GENERAL LEGAL STANDARD

"Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This rule "creates a presumption in favor of awarding costs to a prevailing party." *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000). The losing party has the burden of overcoming the presumption by affirmatively showing that the prevailing party is not entitled to costs. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003).

A district court has discretion to deny costs, but it must specify its reasons for doing so. *Ass'n of Mexican-Am. Educators,* 231 F.3d at 591-92 (citation omitted). The requirement that a district court give reasons for denying costs flows logically from the presumption in favor of costs. *See id.* at 592-93. If a court wants to depart from that presumption, it must explain why the case is not the "ordinary" taxing of costs and instead is the "extraordinary" case where costs should not be awarded so that the appellate court can evaluate whether the district court abused its discretion. *See id.*

Examples of reasons that can justify denial of costs includes some impropriety on the part of the prevailing party (including misconduct or bad-faith practices), a nominal recovery, a losing party's indigence or limited financial resources, whether the issues in the case were close or difficult, a chilling effect on civil rights plaintiffs of modest means, or whether the case presented a landmark issue of national importance. *See id.*; *see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-89 (9th Cir. 2010); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999); *Competitive Techs. v. Fujitsu Ltd.*, No. C-02-1673 JCS, 2006 WL 6338914, at *3 (Aug. 23, 2006). Inflated costs sometimes result in "diminished award[s]" and sometimes result in in denying of taxable costs altogether. *See, e.g., Jansen v. Packaging Corp. of America*, 898 F. Supp. 625, 629 (N.D. Ill. 1995).

Unless otherwise authorized by statute or contract, 28 U.S.C. § 1920 limits the costs that a court may award under Rule 53(d) to the following:

    (1) Fees of the clerk and marshal;

    (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

    (3) Fees and disbursements for printing and witnesses;

    (4) Fees for exemplification and the costs of making copies of any materials where

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the copies are necessarily obtained for use in the case;

2        (5) Docket fees under section 1923 of this title; [and]

3        (6) Compensation of court appointed experts, compensation of interpreters, and
         salaries, fees, expenses, and costs of special interpretation services under section
4        1828 of this title.

5    Civil Local Rule 54-3 provides guidance regarding the taxable costs in each category.

6        A bill of costs "must state separately and specifically each item of taxable costs claimed. Civ.

7    L.R. 54-1(a). A party seeking costs must provide an affidavit saying that the costs were "necessarily

8    incurred, and are allowable by law" and "[a]ppropriate documentation to support each item

9    claimed." *Id.* "With regard to individual itemized costs, 'the burden is on the party seeking costs . .

10   . to establish the amount of compensable costs and expenses to which it is entitled.'" *City of*

11   *Alameda v. Nuveen Mun. High Income Opportunity Fund*, No. C 08-4575 SI, 2012 WL 177566, at

12   *1 (N.D. Cal. Jan. 23, 2012) (quoting *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th

13   Cir. 2002)).

14       The court reviews de novo the clerk's taxation of costs. *See Lopez v. San Francisco Unified*

15   *School Dist.*, 385 F. Supp. 2d. 981, 1001 (N.D. Cal. ).

16                                  **III.  DISCUSSION**

17       The parties do not dispute that Aliph is the prevailing party, that Aliph may recover costs listed

18   in 28 U.S.C. § 1920, or that Aliph must itemize its costs. They disagree about who bears the burden

19   of proof under 28 U.S.C. § 1920 after Aliph itemizes costs, and they disagree about the sufficiency

20   of the itemization. Aliph argues that once it itemizes costs (and attests that the costs are correctly

21   stated, were necessarily incurred, and are allowable by law), there is a presumption under Rule 54(d)

22   that it recovers the costs. Reply, ECF No. 240 at 4. Plantronics argues that Aliph has the burden to

23   show that each claimed cost falls within a permitted category under 28 U.S.C. § 1920. Opposition,

24   ECF No. 238 at 11. The court addresses the burden standard first and then analyzes the costs.

25   **A.  The Burden Under 28 U.S.C. § 1920**

26       The reason that the parties think that burden matters is that the ESI processing costs are high, the

27   parties dispute whether they are taxable costs under section 1920(4), and the result might vary

28   depending on who bears the burden of establishing whether or not the costs are taxable. Also, some

**UNITED STATES DISTRICT COURT**
For the Northern District of California

of the parties' arguments are about whether Aliph documented its costs sufficiently or established that its costs were incurred necessarily.

Aliph cites *Stanley v. University of Southern California* in support of its argument that after it itemizes its costs and otherwise meets the requirements of section 1920 and the local rules, Plantronics must defeat the presumption. Reply, ECF No. 240 at 4. *Stanley* addressed a district court's discretion to deny costs if it considers appropriate reasons for doing so. *See* 178 F.3d at 1079-80. Reasons that the district court should have considered were the losing civil rights plaintiff's indigence if costs were imposed and the chilling effect of costs on civil rights plaintiffs of modest means. *Id.* at 180. The Ninth Circuit remanded for consideration of the factors. *Id.*

*Stanley* addresses only the factors that a district court should consider when applying section 54(d)'s presumption and determining in its discretion whether to tax costs. It does not otherwise address the prevailing party's responsibility under section 1920 to establish that costs are taxable or section 54(d)'s presumption that costs are allowed to a prevailing party unless the district court, exercising its discretion, "otherwise directs." Fed. R. Civ. P. 54(d). Nothing about *Stanley* or Rule 54(d)'s presumption excuses a prevailing party from itemizing its costs with enough detail to establish that each expense is taxable under section 1920. *See Oracle America, Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2012 WL 3822129, at *3 (N.D. Cal. Sept. 4, 2012); *City of Alameda*, 2012 WL 177566, at *1; *accord In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying Ninth Circuit law and denying disputed copying costs to a prevailing party that "did not meet its burden under section 1920 to establish the amount of costs to which it is entitled," and noting the inadequacy of "generic references such as 'transcripts,' 'publication,' and 'document production'") (quoting *Fabi Constr. Co. v. Sec'y of Labor*, 541 F.3d 407, 414 (D.C. Cir. 2008)); *Competitive Techs.*, 2006 WL 6338914, at *3 (same). Once a prevailing party establishes that the expense is taxable under section 1920, then the presumption applies.

The court addresses any application of the presumption in the context of the disputed costs.

UNITED STATES DISTRICT COURT
For the Northern District of California

**B. Specific Cost Items**

The court turns to the specific items.

**1. Service of Subpoenas**

Aliph seeks $328.25 for service of subpoenas on Luis Pedraza and Bungardt Design.  Bill of Costs, ECF No. 227 at 2-3.  The amount is the costs incurred less fees for expedited service.  *Id.* at 3; Declaration of Michelle G. Lee ("Lee Decl.") Ex. A, ECF No. 227-2 at 2-3.  The clerk taxed $237.75, and Plantronics argues that it should be $149.  ECF No. 233 at 2; Opposition, ECF No. 238 at 11.

Section 1920(1) allows the prevailing party to recover the "fees of the clerk and marshal."  28 U.S.C. § 1920(1).  "Fees for service of process by someone other than the marshal acting pursuant to Fed. R. Civ. P. 4(c), are allowable to the extent reasonably required and actually incurred."  Civil L. R. 54-3(a)(2).

*a. Plantronics Argues That the Bungardt Design Subpoena Was Unreasonable*

$109 of the $328.25 is attributable to the subpoena to Bungardt Design.  Motion, ECF No. 257 at 8 (citing Lee Decl., ECF No. 227-1 at ¶¶ 3-6).  Plantronics disputes the $109 because it was "unreasonable" under Civil Local Rule 54-3(a)(2) to serve "a duplicative subpoena" for records on Bungardt Design.  Opposition, ECF No. 238 at 11-12.  Plantronics already had accepted a subpoena for testimony and records of Gabrielle Bungardt, a named inventor of the '453 patent and the sole employee of Bungardt Design, a consulting business that she ran out of her home.  *Id.*(citing Bohrer Decl. Ex. 6, at 53:023-55:15).  Plantronics' counsel, acting as counsel for her, conferred with Aliph's counsel about deposition scheduling, agreed to produce responsive documents in Ms. Bungardt's possession, and produced responsive documents, including those of Bungardt Design. *Id.* at 12 (citing Bohrer Decl. ¶¶ 16-17).  Plantronics concludes that it was not "reasonable" for Aliph to use a private process server because it knew (or reasonably should have known) that Plantronics' counsel also represented Ms. Bungardt's home-based business, and it should have asked counsel to accept service.  *Id.*  The subpoena also went to the wrong address.  *Id.*

Aliph counters that Plantronics' counsel made no representation that it represented Bungardt Design, and it had no obligation to check with an opposing party's counsel before serving subpoenas

1    on a third party.  Motion, ECF No. 235 at 8.

2        The court agrees with Aliph.  The court does not conclude on this record that the attempted

3    service at Bungardt Design's former address was unreasonable.  The court taxes $109.

4            *b. Plantronics Disputes Part of Pedraza Subpoena Fee*

5        The remaining $219.25 is for the service of the subpoena to Luis Pedraza.  *Id.*  Plantronics

6    argues that the amount should be reduced by $70.25 ($50 in advance fees and a $20.25 document

7    preparation fee).  Opposition, ECF No. 238 at 12-13.  Aliph makes no argument here.  The invoice

8    reveals that Pedraza was served in West Roxbury, Massachusetts, and Aliph's counsel is located in

9    Redwood City, California.  *See* Lee Decl. Ex. A, ECF No. 227-2 at 2.  Probably the $20.25 charge

10   for "document receipt and preparation" has something to do with that.  But without any explanation

11   from Aliph, the court will not award the fee.

12           *c. Subpoena Total*

13       The total for Aliph then is $109 plus $149 equals $258.

14   **2.  Reporters' Transcripts of Hearings**

15       Aliph seeks, and Plantronics does not oppose, $535.27 in this category.  Motion, ECF No. 235 at

16   9; Opposition, ECF No. 238 at 13.  The court awards it.

17   **3.  Deposition Costs**

18       Aliph asks for $76,321.65 for deposition costs.  Motion, ECF No. 235 at 10-16 (chart at pages

19   10-13).  Plantronics objects to some expenses and suggests an award of $60,016.83.  Opposition,

20   ECF No. 238 at 13.

21        Civil Local Rule 54-3(c) allows the following costs for depositions:

22           **(1)** The cost of an original and one copy of any deposition (including videotaped depositions)
             taken for any purpose in connection with the case is allowable.
23

             **(2)** The expenses of counsel for attending depositions are not allowable.
24
             **(3)** The cost of reproducing exhibits to depositions is allowable if the cost of the deposition is
25           allowable.

26           . . .

27           **(5)** The attendance fee of a reporter when a witness fails to appear is allowable if the
             claimant made use of available process to compel the attendance of the witness.
28

1

*a. Deposition of Christopher Struck*

2   Plantronics argues that Aliph should not recover the $1,969.47 cost of this expert deposition for

3   the following reasons:

- After the deadlines for disclosing expert testimony on claim construction, Aliph filed Mr. Struck's declaration in support of its proposed claim constructions.

4

5   • Aliph failed to timely identify Mr. Struck and disclose his opinions under Patent Local Rule 4-2 and failed to timely disclose its intent to rely on his expert testimony and to summarize his testimony under Patent Local Rule 4-3(b) and (e).

6

7   • Plantronics then moved to exclude the testimony, Judge Zimmerman scheduled a hearing, and Aliph – in return for Plantronics' withdrawing the Motion, ECF No. 121 – agreed to stipulate to produce Mr. Struck for deposition and allow Plantronics an extension to brief the claim construction issues.

8

9

10   Opposition, ECF No. 238 at 13; *see id.* App. 2, ECF No. 238-2 at 1.  Plantronics points out that

11   while Judge Zimmerman approved the stipulation, he characterized Aliph's actions as an attempt to

12   avoid the patent local rules.  *Id.* (quoting Hr'g Tr., ECF No. 237 at 3, May 10, 2012).

13   On this record, this is not a basis to deny costs.  The parties' stipulated remedy was a remedy

14   that Judge Zimmerman "probably" would have ordered anyway.  *See* Hr'g Tr. at 2.

15   Plantronics also argues that because the deposition was to reduce prejudice to Plantronics from

16   an attempted end-run around the patent local rules, it was not "necessarily obtained for use in the

17   case" as required by 28 U.S.C. § 1920(2).  Opposition, ECF No. 238 at 14.  Plantronics also argues

18   that Aliph did not use a report from Mr. Struck on any issue and did not rely on his testimony in

19   support of its summary judgment motion, and thus the deposition was "merely useful for discovery"

20   and not taxable.  *Id.* (quoting *In re Ricoh*, 661 F.3d at 1369).  But Aliph points out – and Plantronics

21   does not dispute – that both parties made use of the deposition testimony in the claim construction

22   proceedings.  Motion, ECF No. 235 at 13.  The court awards Aliph the cost of the deposition.

23

*b. Expedited Costs*

24   Plantronics challenges expedited delivery costs of $7,570.07 for the Goodrich, Pedraza,

25   Bungardt, Struck, Ambrose, Katz, Lieu, and Lynde depositions.  Opposition, ECF No. 238 at 14-15.

26   Aliph counters that it did not seek expedited delivery costs for all depositions, just those

27   reasonably required to prepare for claim construction briefing (opened 7/11/11) and hearing (set for

28   9/7/11 and continued on 8/23/11 to 9/21/11) and the summary judgment briefing (opened 2/15/12).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Motion, ECF No. 235 at 13-14 (citing ECF Nos. 91, 129). Thus, it argues that the costs are

2   recoverable costs. *Id.* (citing *Francisco v. Verizon South, Inc.*, 272 F.R.D. 436, 444 (E.D. Va.

3   2011)). For the claim construction briefing, the expedited costs were for the depositions for the

4   three named inventors (Goodrich, Pedraza and Bungardt) taken in mid June 2011 and on July 8,

5   2011. *Id.* at 14. For the claim construction hearing, the expedited costs were for expert Strunk's

6   deposition on 8/5/11. *Id.* For the summary judgment briefing, the expedited costs were depositions

7   of experts of both parties on issues of noninfringement and invalidity (Ambrose, Katz, and Lieu)

8   taken in late January and early February 2012 and Plantronics' damages expert Lynde (who

9   submitted a report and testified about secondary indicia of non-obviousness) on 1/19/12. *Id.* Aliph

10  says that it could not have prepared for summary judgment without these depositions on this

11  timeline. *Id.*

12      Plantronics responds with authority from this district holding that costs for expedited deposition

13  transcripts are not taxable costs. Opposition, ECF No. 238 at 14-15 (collecting cases). It observes –

14  and Aliph did not dispute – that the normal delivery time for deposition transcripts is 10 business

15  days, and most depositions were producible in this time period. *Id.* (only Lieu's deposition fell

16  outside the period; the court's review suggests Bungardt's deposition did too). It also argues that

17  Aliph used only Lieu's report and his declaration, and thus his deposition was not reasonably

18  necessary under the statute. *Id.*

19      This court finds persuasive this district's decisions holding that the costs of expedited delivery

20  are not recoverable generally. *See, e.g.*, *City of Alameda*, 2012 WL 177566, at *3 (also collecting

21  cases about courier and overnight delivery charges for transcripts). This is a general holding, and

22  there may be situations where expedited transcripts might be necessary (an issue that the court does

23  not reach). The court does not see that situation on this record. The parties set their discovery,

24  briefing, and hearing deadlines by stipulated order in May 2011, which was plenty of time to

25  problem solve deadlines with an eye to costs. *See* ECF No. 91 at 3. The court does not dispute

26  Aliph's belief that it needed depositions to do a good job. But nothing in the record shows that

27  depositions could not have been scheduled earlier or that there is something special about timing that

28  should allow expedited delivery costs to be included as "costs" under 28 U.S.C. § 1920(d).

1    Regardless of whether the burden belongs to Aliph or Plantronics, the court exercises its discretion

2    and declines to award expedited costs here.

3            *c. Multiple Transcript Charges*

4        Plantronics objects to costs for multiple copies of transcripts of $5,948.60 as follows: Pedraza

5    ($540.00), Goodrich ($592.50), Bungardt ($523.50), Vollmer ($508.50), Bernardi ($514.50), Ducote

6    ($561.00), Hume ($289.50), Elabidi ($264.00), Kreiner ($404.60), Hamren ($186.00), DeVilliers

7    ($274.50), Neimi ($532.50), Morrissey ($384.00), and Vollmer/Hume/Prouty ($373.50).

8    Opposition, ECF No. 238 at 15-16.  Only one copy of a transcript is taxable.  *See* Civil L.R. 54-3(c).

9    Plantronics calculates these numbers by referencing the transcript charges of either $4.75 or $5.75

10   per page instead of the normal $3.25 per page for a single transcript and concludes that the higher

11   rate demonstrates that Aliph ordered additional transcripts.  *Id.* at n.8.  Aliph did not respond to the

12   argument.  Accordingly, the court reduces taxable costs by $5,948.60.

13           *d. Video Charges*

14       Plantronics challenges $1,077.00 in "video charges" that appear in the invoices.  Opposition,

15   ECF No. 238 at 16.  The invoice for Pedraza charged $1,225.00 for videotape services on the

16   videotape services part of the invoice (undisputed by Plantronics) and a $66.85 "video charge" on

17   the written transcript part of the invoice (disputed).  *Id.*  The video tape services invoice covers the

18   cost of recording, "DVD Stock," and "Video Handle and Processing."  *See, e.g.,* ECF No. 227-4 at

19   7.  The video charge maybe is the copy of the video tape (although it is not entirely clear in the

20   context of "DVD Stock").  Also, the  "video charge" is billed by the page for precisely the same

21   number of pages as the other invoice, *see id.* at 8, 11-12, 19, 26, 30, 33, 37, and ECF No. 227-5 at 7,

22   10, 13, 26, and 29, and the other invoice has separate charges for "Videotape Copies," *see,* ECF No.

23   227-4 at 4, 17, 23, 41, 44, and ECF No. 227-5 at 2, 6, 17, 23.  Still, it looks like a regular bill, and

24   the requirement for back-up of costs with invoices is met here.  The $1,077.00 goes to Aliph.

25           *e. "Full Day Per Diem" Charge*

26       Two invoices for depositions (Pedraza and Goodrich) carry a charge of $150.00 each (for a total

27   of $300.00) for a "Full Day Per Diem."  Plantronics says that it is a unique charge and therefore not

28   "a necessary cost incurred in taking a deposition."  Opposition, ECF No. 238 at 16-17.  Also, the

UNITED STATES DISTRICT COURT
For the Northern District of California

witnesses appeared. *See* Lee Decl. Ex. C-1, ECF No. 227-4 at 8, 11. Plantronics argues that the civil local rules allow a fee only when a witness does not appear. Opposition, ECF No. 238 at 16-17; *see* Civ. L.R. 54-3(c)(5) ("The attendance fee of a reporter when a witness fails to appear is allowable if the claimant made use of available process to compel the attendance of the witness"). Aliph counters with a decision where the court permitted recovery of costs for the deposition attendance fee when the witness appeared, and it reasons that it would be illogical to permit an attendance fee when the witness failed to appear but forbid the fee when the witness showed up. *See* Motion, ECF No. 235 at 15 (citing *Ishida Co., Ltd. v. Taylor*, No. C-02-1617-JF (PVT), 2004 WL 2713067, at *1 (N.D. Cal. Nov. 29, 2004)).

Usually an attendance fee for a no-show witness is a way to compensate the court reporter (as opposed to the normal way of a fee per page transcribed and ancillary services). Still, the record shows costs attributable to the depositions. The court awards the $300 to Aliph (and any "who has the burden" argument would not change this outcome).

### f. *"Evening Pages" Charge*

Plantronics challenges a $96 charge for "evening pages" for the Katz deposition, arguing that it is an unusual charge not necessarily incurred for a deposition. Opposition, ECF No. 238 at 17. This appears to be a charge for pages transcribed during the evening. The court awards it to Aliph.

### g. *Total*

Aliph sought a total of $76,321.65, and the court subtracts $7,570.07 for expedited depositions and $5,948.60 for multiple copies, leaving taxable costs of $62,802.98.

### 4. Certification and Translation of Records

Plantronics challenges the $11,167.50 that Aliph seeks for certifying, translating, and exemplifying government records and says that Aliph ought to get only $3,794.50. Opposition, ECF No. 238 at 17. Generally, these costs are taxable. *See* 28 U.S.C. §§ 1920(4) (copies necessarily obtained for use in the case) and (6) (compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services); Civ. L. R. 54-3(d)(1) ("The cost of reproducing and certifying or exemplifying government records used for any purpose in the case is allowable."); *Competitive Techs.*, 2006 WL 6338914, at *11.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    The problems here, Plantronics says, are as follows:

2    •   The supporting exhibit is five separate invoices that say things such as "translation" or
         "certified" or "library publication fees."   *See* Lee Decl., Ex. D, ECF No. 227-6.

3    •   Ms. Lee's declaration inaccurately describes two invoices as "certified translations of prior

4        foreign art and certification of public records" but counsel's discussions reveal that Invoices
         802457 and 802913 (ECF No. 227-6 at 4-5) were for gathering English language non-patent

5        technical articles that did not require a certification of translation.   *See* Bohrer Decl. Ex. 1
         (Reinstedt email dated 4/9/12 making this point); Lee Decl. Ex. D, ECF No. 227-6 at 4-5

6        (these disputed amounts are $178 + $75 = $258).

7    •   Aliph fails to demonstrate that all of the claimed certification and translation costs "fall
         within the scope of section 1920 or the interpretive local rules" or that they were "necessarily

8        incurred;" the invoices for 181430 ($1,976.15) and 182973 ($2,813.30) (*see* ECF No. 227-6
         at 6-7) (total is $4,789.45) ought to be paid at least in the "negotiated amounts" of $1,939.50

9        and $1,660.00 (total is $3,599.50) (difference between two figures is $1,189.95).

10   Opposition, ECF No. 238 at 17-18; *see* Letter from Plantronics' Counsel, ECF No. 260 (negotiated

11   amounts are what Aliph is seeking) (citations to Aliph's motion omitted).

12   Aliph did not respond to Plantronics' allegations about bullet point 2.  Thus, the court disallows

13   the costs of $258.00 reflected in the bullet point.  As to the rest, Ms. Lee declared under penalty of

14   perjury that the invoices were for what she said they were for.  *See* Lee Decl., ECF No. 227-1, ¶ 17.

15   Plantronics' remaining argument generally is about two things: (a) the local rules do not address

16   certification or translation costs, and (b) Ms. Lee did not justify that the expenses were necessarily

17   incurred, so the court should tax only the negotiated amount in bullet point 3 and not the $7,315.00

18   for the translation of the 16 translated patents reflected in the Nelles Translation invoices at ECF No.

19   227-6 at 2-3 at all.  Opposition, ECF No. 238 at 17-18.

20   The court rejects the first argument, finding that the invoices here reflect taxable costs.

21   As to the second argument, two categories are at issue: the $7,315.00 for the Nelles Translation

22   invoices and the invoices in bullet point 3 (reflecting a negotiated amount of a total of $3,599.50).

23   As to the $7,315.00, Ms. Lee declares that Aliph's invalidity expert Stephen Ambrose cited the

24   translations in his invalidity expert report and filed a certified translation of the foreign prior art in

25   his invalidity expert report.  Lee Decl., ECF No. 227-1, ¶ 19.  Aliph also filed a certified translation

26   of foreign prior art with its summary judgment motion.  *Id.*  Aliph actually incurred the costs (and

27   was reasonably required to).  *Id.* ¶ 18.  Aliph seeks only one copy of each record and excluded extra

28   costs.  *Id.* ¶ 19.  Plantronics responds that of the 16 patents, only one (Japanese patent JP 1985-

UNITED STATES DISTRICT COURT
For the Northern District of California

040187U) was cited in the summary judgment motion, and it cost only $195.  Opposition, ECF No. 238 at 19.  But in the end, Ms. Lee says the records were "used . . . in the case" (in the expert reports) which is what the local rule and section 1920(6) require.  *See* Lee Decl., ECF No. 227-1, ¶¶ 18-20.  Thus, the court awards $7,315.00 to Aliph.

As to the invoices in bullet point 3, these invoices are about copying for documents (according to Ms. Lee) that were used in the case.  Under the circumstances, the court accepts the compromise and awards $3,999.50.

The total costs taxed are $11,167.50 minus $258.00 minus $1,189.95 equals $9,719.55.

**5.  Reproduction of Exhibits and Visual Aids**

Aliph asks for $7,257.30 in technical support costs for visual aids used at the *Markman* hearing. Motion, ECF No. 235 at 18-19 (equipment rental and technical support).  Under Civil Local Rule 54-3(d)(5), "[t]he cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial."  But these costs are equipment rental and technical support. Aliph cites *Computer Cache Coherency Corp. v. Intel Corp.* to support its argument that it ought to get technical support, but the court there allowed only the costs attributable to the physical preparation of the demonstrative exhibits.  *See* No. C-05-01766 RMW, 2009 WL 5114002, at *1-*2 (N.D. Cal. Dec. 18, 2009) (rejecting costs attributable to intellectual effort of creating the exhibits). That decision does not support Aliph's position.  Other decisions have held that technician costs are not recoverable costs.  *See Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235, at *24 (N.D. Cal. Jan. 29, 2011) (L.R. 54-3(d) excludes cost of equipment rental to present visual aids)*; American Color Graphics, Inc. v. Travelers Property Cas. Ins. Co.*, No. C 04-3518 SBA, 2007 WL 832935, at *3 (N.D. Cal. Mar. 19, 2007) (fees for video technician not taxable).

The court in its discretion does not award these costs.

**6.  Electronic Document Processing**

Aliph seeks $135,407.16 for its in-house document processing of electronic discovery and $100,948.17 for processing by its vendor, Kivu Consulting, LLC ("Kivu").  Motion, ECF No. 235 at 19-24.  Plantronics objects to all but $14,201.80 for the in-house processing and all of the third-party

UNITED STATES DISTRICT COURT
For the Northern District of California

1    vendor costs.  Opposition,  ECF No. 238 at 19-30.

2        Under section 1920(4), the court may tax "fees for exemplification and the costs of making

3    copies of any materials where the copies are necessarily obtained for use in the case."[2]  The local

4    rule interprets the statute to provide "[t]he cost of reproducing disclosure or formal discovery

5    documents when used for any purpose in the case."  Civ. L.R. 54-3(d)(2).  Case law confirms that

6    discovery costs are taxable under section 1920(4).  *See Parrish v. Manatt, Phelps & Phillips LLP*,

7    No. C 10-03200 WHA, 2011 WL 1362112, at *2 (N.D. Cal. Apr. 11, 2011)*; United States ex rel.*

8    *Meyer v. Horizon Health Corp.*, No C 00-1303 SBA, 2007 WL 518607, at *4 (N.D. Cal. Feb. 13,

9    2007).

10       In the discovery context, taxable costs of copying client documents include the costs of

11   collecting documents, reviewing those documents, and determining which are relevant.  *Parrish*,

12   2011 WL 1362112, at *2 (the process often is costly but the costs nonetheless are taxable).  Not all

13   costs attributable to producing discovery are recoverable.  For example, copies made solely for

14   counsel's convenience or the litigant's own use are not recoverable because they are not

15   "necessarily" obtained for use in the case.  *Haroco, Inc. v. American Nat'l Bank & Trust Co. of*

16   *Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994); *Computer Cache Coherency Corp.*, 2009 WL

17   5114002, at *4.  Also, "intellectual effort" involved in the production of discovery – including "the

18   research, analysis, and distillation of data incurred in the preparation of documents (as oppose[d] to

19   the cost of physically preparing the documents)" – are not taxable costs.  *Oracle America*, 2012 WL

20   3822129, at *3 (citations omitted).

21       The issue with electronically-stored information ("ESI") is what kinds of costs attributable to

22   producing information are analogous to "exemplification and the costs of making copies" (and not

23   for the parties' convenience or attributable to "intellectual effort" involved in document production)

24   such that they are taxable under section 1920(4).  The court first examines the e-discovery categories

25   in the in-house and vendor productions and then analyzes whether those costs are taxable.

26

27   ───────────────────

28       [2]  Congress amended section 1920 in 2008 to substitute "the costs of making copies of any
     materials" for "the costs of copies of papers."

*a. The E-discovery Costs Here (In-House and Third-Party Vendor) and Objections*

i. In-house production of e-discovery: $135,407.16

The in-house discovery costs resulted from Aliph's use of discovery tools to "scan, convert, and reproduce discovery documents" to comply with its discovery obligations. Lee Decl., ¶ 25. Aliph collected "[d]iscovery documents . . . from over 40 directories and/or databases and 25 custodians in response to Plantronics' discovery requests." *Id.* It adds that the "costs of reproduction, scanning and conversion of client documents were necessary for the review and production of documents" under Rule 26, Plantronics' requests, and the parties' agreement regarding form of production. *Id.* It produced 23.6 gigabytes of data and over 347,795 pages. *Id.* ¶ 26.

The e-discovery costs include the following:

| Cost Type | Item | Total Cost |
|---|---|---|
| Electronic scanning | Convert to PDF | $398.00 |
| | Data copy and extraction to EnCase (a program that creates forensic images in electronic document collections so that the images can be extracted and the file processed) | $600.00 |
| | Electronic data discovery with conversion to TIFF (processing of native formats to extract metadata and converting to an image format called tagged image file format) | $113,374.50 |
| | Image endorsement (stamping the TIFF images with a Bates label) | $20.97 |
| | OCR (optical character recognition rendering a PDF or TIFF file searchable) | $5,992.59 |
| Electronic reproduction to media | CD creation | $390.00 |
| | CD duplication | $540.00 |
| | DVD creation | $450.00 |
| | DVD duplication | $320.00 |
| | HDD (hard drive disk) creation | $6,400.00 |
| | HDD duplication | $300.00 |
| Printing copies for deposition and hearing preparation | Blowbacks (i.e. print-outs) (black & white) | $4,517.10 |
| | Blowbacks (color) | $1,897.00 |
| | Slipsheets (sheets inserted b/t documents to identify document breaks) | $24.12 |

UNITED STATES DISTRICT COURT
For the Northern District of California

| | Native file printing (printing a document from the computer, e.g., from Word or Excel) | $182.88 |
|---|---|---|
| | **Total:** | $135,407.16 |

Motion, ECF No. 235 at 20-21; Bohrer Decl., Ex. 1, ECF No. 230-1 at 17 (Aliph's explanations of line-item entries).

The biggest item is $113,374.50 for "electronic data discovery ("EDD") with conversion to .TIFF format." Motion, ECF No. 235 at 21; *see* Lee Decl. Ex. F, ECF No. 227-8 at 12-14 (referring to this as EDD+TIFF).[3] The invoices show costs for EDD+TIFF by gigabyte of $1,150.00. *See, e.g.,* Lee Decl. Ex. F, ECF No. 227-8 at 12-14. Aliph also described the term "EDD+TIFF" in its meet-and-confer with Plantronics: "EDD stands for Electronic Data Discovery and it involves standard processing of electronic documents such as Word and Excel files to extract the metadata (e.g., date created, author, etc.). In addition, the documents are converted to TIFF images so that they can be reviewed and redacted in the database by the receiving or producing party." Reply, ECF No. 240 at 6 (quoting ECF No. 230-1 at 9).

Plantronics objects to all of the $135,407.16 for in-house processing except that it agrees it should pay $14,201.80: TIFF costs of $13,911.80 ($.04 per page times the 347,795 pages produced), and $290.00 for CD/DVD duplication and creation. Opposition, ECF No. 238 at 19-29.

Plantronics first argues that it should not be taxed the costs for the EDD extraction to obtain the metadata (basically, the pre-processing of the ESI before the TIFF conversion) because "only those e-discovery costs that fall within the scope of the physical preparation and duplication of ESI for production to Plantronics are taxable as 'making copies' under section 1920(4)." *Id.* at 23-24 (citing *Computer Cache*, 2009 WL 5114002, at *4). Also, Plantronics challenges Aliph's assertion that the EDD processing was necessary for the TIFF conversion and observes that those costs related to processing over 102 gigabytes of data, almost five times more than the 23.6 gigabytes that Aliph

---

[3] For a discussion of ESI forms of production such as TIFF, see *Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases*, Department of Justice (DOJ) and Administrative Office of the U.S. Courts (AO) Joint Working Group on Electronic Technology in the Criminal Justice System (JETWG), Feb. 2012 (available at http://pdfserver.amlaw.com/legaltechnology/USDOJ_Intro_Recommendations_ESI_Discovery.pdf).

UNITED STATES DISTRICT COURT
For the Northern District of California

actually produced.  *Id.* at 28; Bohrer Suppl. Decl., ECF No. 239, ¶ 4; Lee Decl., ECF No. 227-1, ¶ 26.  Plantronics also compares Aliph's rate of $1,150.00 per gigabyte of ESI to the prices of Plantronics' vendor, which charged $250.00 per gigabyte and separately priced TIFF conversion at .04 per page.  Opposition, ECF No. 238 at 28; Bohrer Decl. Ex. 3, ECF No. 230-3 at 2.

Plantronics challenges the rest of the ESI costs as follows:

| Cost | Challenge |
|---|---|
| Data copy and extraction (EnCase Extraction) ($600.00) | Standard processing to extract metadata is not a taxable cost. |
| OCR ($5,992.59) | Not electronic scanning and not compensable. |
| CD and DVD creation and duplication ($1,700.00 claimed, $290.00 taxable) | Aliph did not show that they were related to the physical activity of producing ESI.<br><br>Aliph did not show that they were used to present evidence to the court or produce discovery to Plantronics.  Aliph produced 6 CDs (at Aliph's duplication rate of $15 per CD) and 10 DVDs (at $20 per DVD) for a total taxable cost of $290. |
| 17 hard disk drives ("HDD") creation and duplication ($6,700.00) | No drives were produced to Plantronics. |
| Blowbacks, slipsheets, and native file printing ($6,621.00) | These are for the convenience of trial counsel.<br>There is no evidence Plantronics requested or received them.<br>The costs duplicate the already-taxed copying of deposition exhibits. |

Opposition, ECF No. 238 at 24 n.13, 28-29.  Although Plantronics did not include these costs in the $14,201.80 it agrees it should pay as costs, it did not dispute converting to PDF ($398.00) or image endorsement/bates labeling ($20.97).

ii.  Third-party vendor production costs: $100,948.17

Kivu charged Aliph to search, gather, and electronically produce Aliph documents "in response to plaintiff's discovery demands."  Lee Decl., ECF No. 227-1, ¶ 29.  Kivu "extracted and processed data from the electronic media of numerous . . . Aliph employees and from shared databases, including archived and backup storage."  *Id.* ¶ 30 (also saying that the documents were necessarily collected and reproduced to trial counsel for further review and potential production in response to Plantronics' discovery demands).  The vendor's primary responsibility was collecting data (e.g., by imaging hard drives) and de-duplication of electronically-stored information so that it could be

UNITED STATES DISTRICT COURT
For the Northern District of California

1    reviewed in-house by Aliph and produced in discovery.  Bohrer Decl. Ex. 1, ECF No. 230-1 at 9.

2    Tasks on the bills include the following: pick-up and imaging of computer; local email extraction;

3    network email merge and de-dupe (eliminating duplicates); normalize, prep, index, and search email;

4    extract, de-archive, hash, filter, de-dupe, normalize, index, and search user files; and computer

5    media.  Lee Decl. Ex. H, ECF No. 227-10.

6        Plantronics asserts that these processes are about identifying, collecting, processing, and review,

7    and thus, these are costs that are not taxable.  Opposition, ECF No. 238 at 30.

8        The court next analyzes whether e-discovery costs are taxable under section 1920(4).

9        *b. Whether Costs for E-Discovery Are Taxable Under Section 1920(4)*

10       The 2008 substitution in section 1920(4) of  "costs of making copies of any materials" for "costs

11   of copies of papers" eliminated the limiting of costs to paper copies.  Even before the amendment,

12   courts recognized that "exemplification" included electronic copying.  *See El Dorado Irrigation*

13   *Dist. v. Traylor Bros., Inc.*, No. CIV. S-03-949 LKK/GGH, 2007 WL 512428, at *10 (E.D. Cal. Feb.

14   12, 2007).  More recently, courts have found scanning to be the equivalent of copying.  *See, e.g.,*

15   *Parrish*, 2011 WL 1362112, at *2; *Brown v. McGraw-Hill Cos., Inc.*, 526 F. Supp. 2d 950, 959

16   (N.D. Iowa 2007).  Plantronics does not really dispute that converting electronically-stored files in

17   native format to a TIFF format also is the equivalent of making a copy, and courts agree.  *See Jardin*

18   *v. DATAllegro*, No. 08-CV-1462, 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011) (awarding $64,295.96

19   for processing and converting to TIFF format).  In a paper world or an ESI world, discovery is

20   produced routinely with Bates numbers, and electronically stamping them should be a taxable cost.

21   Printing copies (or blowbacks), printing native files from the computer to PDF, and putting

22   information on media (whether a CD, thumb drive, or hard drive) are the equivalent of

23   photocopying.  Certain ancillary tasks are common to electronic or paper discovery, including Bates

24   stamping and putting slipsheets (or some marker) between documents to show document breaks.  *Cf.*

25   *Rundus v. City of Dallas*, No 3-06-CV-1823-BD, 2009 WL 3614519, at *2 (N.D. Tex. Nov. 2, 2009)

26   (bindings, folders, labels, CDs, and DVDs not recoverable).  All of these categories in the chart on

27   page 15 are potential taxable costs of discovery under section 1920(4).

28       The inquiry is trickier for other electronic formats of information because it is less obvious

ORDER (C 09-01714 WHA (LB))

UNITED STATES DISTRICT COURT
For the Northern District of California

whether (i) the format is for the convenience of the parties or (ii) the electronic capture and processing for that format is a non-taxable cost akin to "intellectual effort" involved in the production of documents or the research, analysis, and distillation of data. *See, e.g. Computer Cache Coherency Corp.*, 2009 WL 5114002, at *4; *Oracle America*, 2012 WL 3822129, at *3.

As to point (i), at some point, courts conclude that an electronic format is not "necessarily" obtained for use in the case and instead is for the convenience of the parties. *See, e.g., Computer Cache Coherency Corp.*, 2009 WL 5114002, at *4. To give context to this, in an ESI world, there are different kinds of copies (or formats) for a document: the native-format Word or Excel file, a printed-and-scanned copy of it, an electronic document that is a computer-generated image of it (e.g, a TIFF image or a PDF generated from a native file), or information about the electronic document in the form of metadata (such as author, date created, or date last accessed). *See ESI Recommendations*, *supra* note 3, at 7-8. The line between utility and the parties' convenience is not bright, particularly given evolving technology. Printers used to be dot matrix. People used carbon paper to make copies. Scanning was unusual. *See Roehrs v. Conesys, Inc.*, No. 3:05-CV-829-M (BH), 2008 WL 755187, at *3 (N.D. Tex. Mar. 21, 2008) (scanning is for the convenience of counsel). Now, the usefulness of scanned discovery (or worse, paper discovery) in voluminous discovery cases is greatly diminished compared to production in a more preferred format (such as native electronic format that is accessible or image files with extracted meta data) that can be loaded into a litigation support system, indexed relatively easily with certain objective coding criteria, and searched. *See ESI Recommendations*, *supra* note 3, at 8.[4] Similarly, documents might not be useful at all unless the production includes information captured by metadata, such as the author, the date created or updated, or the time an email is opened.

Courts differ about where to draw the line between "necessarily for use in the case" and the parties' convenience. For example, *Computer Cache* treated scanning and Bates numbering as work that was recoverable as reproduction costs but viewed OCR and metadata extraction as not recoverable because it was for the convenience of the lawyers. 2009 WL 5114002 at *4. Other

---

[4] Assuming a person can read 60 pages an hour, then the 347,795 pages here would take roughly 5,797 hours (or 725 days) (or two years) to read (with no days off).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   courts similarly employ a conservative approach to extraction or preparation of data that precedes a

2   TIFF conversion.  In *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, the court allowed costs

3   for scanning, converting to TIFF format, and transferring from VHS to DVD, but it disallowed

4   $243,453.02 in fees charged by the vendor for collecting and processing ESI, holding that they were

5   costs related to steps leading up to the production of copies.  674 F.3d 158, 166-169 (2012).  The

6   court recognized that extensive processing of ESI might be essential to make a comprehensive and

7   intelligible production: hard drives need to be imaged, formats need to be converted, and files may

8   need to be transferred to different media.  *Id.* at 169 (also pointing to need to screen for privileged

9   and protected information).  But it held that necessary processing leading up to the production is not

10  like "making copies" and is not taxable.  *Id.* (Section 1920(4) speaks narrowly of fees for

11  exemplification and copying).  The court acknowledged the presumption that the producing party

12  bears the cost of production and the ability to seek a cost-shifting order.  *Id.* at 170-71.

13       As to point (ii), it is easy to conclude that search terms and strategies geared to production of ESI

14  are not taxable costs under 1920(4).  It is a harder inquiry as to whether e-gathering and processing

15  efforts – if done by machine and technicians as opposed to lawyers and paralegals – are akin to

16  "intellectual effort" involved in the production of documents or the "research, analysis, and

17  distillation of data incurred in the preparation of documents (as opposed to the cost of physically

18  preparing the documents)" such that they are not taxable.  *See Oracle America*, 2012 WL 3822129,

19  at *3 (citing *Romero v. City of Pomona*, 883 F.2d 1418, 1427 (9th Cir. 1989)).  *Romero* involved a

20  challenge to the city of Pomona's districting plan, and the district court granted the defendants'

21  motion for involuntary dismissal.  *See* 883 F.2d at 1429.  The parties stipulated to costs for copies of

22  papers (based on the cost of the physical preparation of the exhibits), and the defendants sought an

23  additional $146,926.94 in costs for the experts who "assembled, analyzed and distilled the data

24  incorporated into their trial exhibits" because this work was integral to the costs of exemplification.

25  *Id.* at 1427.  The Ninth Circuit held that only the cost of physically producing the exhibits was

26  covered.  *Id.* at 1427-28.

27       In *Oracle America*, the district court relied on *Romero* and disallowed almost $3M in e-

28  discovery costs, holding that the cost for the analysis to prepare documents (not taxable) is different

1  from the cost of physically preparing them (taxable).  *See* 2012 WL 3822129, at *3.  The court held

2  that many of Google's "item-line descriptions seemingly bill for 'intellectual effort' such as

3  organizing, searching, and analyzing the discovery documents." *Id.* (internal citations omitted).  The

4  court also was concerned with egregious billings for conferencing and communication with clients

5  and vendors.  *See id.* ("costs for 'conferencing,' 'prepare for and participate in kickoff calls,' and

6  communications with co-workers, other vendors, and clients").

7       Other courts view e-discovery costs as the 21st century equivalent of copying, recognizing that

8  the only way to copy and use electronic data is to do what Aliph did: capture, extract, and process a

9  user's email and other files (by using a third party vendor) and then finish the job in house.  For

10  example, in *CBT Flint Partners, LLC v. Return Path, Inc.*, the prevailing party hired a computer

11  consultant to collect, search, identify, and help produce electronic documents from network and hard

12  drives.  676 F. Supp. 2d 1376, 1380-81 (N.D. Ga. 2009).  The court analyzed whether this was more

13  like collection of information done by attorneys and paralegals before copying (and thus not taxable)

14  or whether it was the modern day equivalent of copying (and taxable).  *Id.*  The court held that the

15  services were not like the services provided by attorneys and paralegals and instead were highly

16  technical and "the 21st Century equivalent of making copies." *Id.*; *accord Petroliam Nasional*

17  *Berhad v. GoDaddy.com, Inc.*, No. C 09-5939 PJH, 2012 WL 1610979 (N.D. Cal. May 8, 2012)

18  (allowing $6,365.04 for work by technicians to convert computer data into a readable format).

19       So the two issues are fact-specific and non-obvious:  what does useful mean, and is collection an

20  "intellectual effort."  A third tension about imposing costs under Rule 54(d) is that e-discovery is

21  expensive.  It provides an opportunity for lawyers, consultants, and vendors to inflate the need or the

22  cost of e-discovery.  (The court is not saying that the situation exists here.)  A party can unilaterally

23  produce information in an expensive format or engage in an unnecessary (and expensive) data dump.

24  *Cf. City of Alameda*, 2012 WL 177566, at * 4.  For example, in *City of Alameda*, the non-producing

25  party requested documents in paper form, but the producing party insisted on an electronic format

26  because it had incurred the costs already in a previously-filed case.  *Id.*  The costs included expenses

27  for OCR, metadata extraction, and document scanning.  *Id.*  The court held that the OCR and

28  metadata extraction were not recoverable.  *Id.* at *5.  The result makes sense in the context of that

UNITED STATES DISTRICT COURT
For the Northern District of California

case: a party should not have to pay for something it did not ask for.  And the situation can happen in a paper world, too, with a production of high-resolution color copies as opposed to black and white.

Every case is fact specific.  *See Petroliam Nasional Berhad*, 2012 WL 1610979, at * 4 (in taxing costs of $6,365.04, considered and declined to follow *Race Tires* and held that work performed by technicians to "convert computer data into a readable format" was an "essential component of the cost of reproducing disclosure or formal discovery documents" under Civil Local Rule 54-3(d)(2); broad construction of section 1920 with respect to e-discovery costs was appropriate "under the facts of this case").  A factor in a case that weighs against cost-sharing is unilaterally producing in an expensive format that the receiving party did not ask for.  *See City of Alameda*, 2012 WL 177566, at * 4.  By contrast, the parties' agreement to forms of production might militate in favor of imposing costs on the non-prevailing party.  An ESI world permits many different formats, and what the parties ask for and agree to regarding the form of production affects not only the utility of the production but also the costs attributable to it (and hence the taxable costs under section 1920(4)).

The parties here reached an agreement about the form of production.  The chart on page 15 describes the production costs:  convert to PDF, data copy and extraction, conversion to TIFF format, CD and DVD creation and duplication, blowbacks, slipsheets, and native file printing.  The parties' ESI agreement confirms that this is what the parties agreed to:  TIFF production with document breaks suitable for loading into an image base and certain native-file exceptions to that production (such as spreadsheet applications such as Excel and Access, extracts from databases in either a spreadsheet file or a comma-delineated text file, PowerPoint files, CAD files and similar design and engineering files, and Website and similar HTML-based documents).  *See* Lee Decl., ECF No. 227-1, ¶ 28; *id.* Ex. G, ECF No. 227-9 at 2-3 (the agreement).  The agreement also provided for things such as placeholders in the TIFF productions for displaced native files, producing emails with the standard metadata (author, recipient, ccs, subject, and date and time stamps, and metadata for the attachments including modification date).  *Id.* at 3.  Hard-copy productions "should be accompanied by OCR to the extent the producing party is in possession of such OCR."  *Id.*  Documents that exist as ESI were to be produced with "the extracted text of each document, whether produced as a TIF image or in native form."  *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

1     One approach might be that under the facts of this case and these parties' agreements about the

2     production of ESI, Plantronics got a "copy" of discovery in the format it asked for.  Arguably, what

3     the parties agreed to about the in-house production of discovery – even when the agreement includes

4     standard extraction of metadata – is akin to copying for purposes of section 1920(4) and Civil Local

5     Rule 54-3(d)(2).  *See Race Tires*, 674 F.3d at 171 n.11 ("costs of conversion to an agreed-upon

6     production format are taxable as the functional equivalent of 'making copies'"); *Neutrino*

7     *Development Corp. v. Sonosite, Inc.*, No. H-01-2484, 2007 WL 998636, at *4 (S.D. Tex. Mar. 30,

8     2007) (where electronic data was produced by agreement in lieu of costly production of paper, the

9     costs of production were taxable under section 1920(4)).

10    The court is not willing to go that far and tax over $200,000 in costs for extraction and

11    processing.  Decisions in the Northern District – *City of Alameda*, *Computer Cache*, and *Oracle*

12    *America* (relying on *Romero*) – disapprove similar processing costs and tax more modest costs

13    associated more directly with the processing of TIFF and PDF files.[5]  It is one thing to impose Rule

14    54(d) costs for ESI processing when the parties recognize the issue explicitly in their ESI agreement,

15    but it is different when they do not.  (Perhaps a changing legal or technological landscape will alter

16    that assessment.)  Imposing costs also might discourage parties from acting cooperatively under

17    Rule 26 and reaching agreements geared toward the orderly and cost-efficient production of usable

18    ESI.

19    Also, although it does not address e-discovery issues, a recent Supreme Court decision echoes

20    the *Race Tires* court's reluctance to read section 1920 broadly.  In *Taniguchi v. Kan Pacific Saipan*,

21    the court reversed the Ninth Circuit's determination that costs for a translator of written documents

22    constituted costs of an "interpreter" under section 1920(6).  *See* 132 S. Ct. 1997 (2012).  Instead, it

23    limited the term to its ordinary meaning of a "person who translates orally from one language to

24    another."  *Id.* at 2004.  The Ninth Circuit reasoned that a broader meaning of "interpreter" was

25    compatible with Rule 54(d)'s presumption for the award of costs to a prevailing party, but the

26    Supreme Court disagreed.  "This Court has never held that Rule 54(d) creates a presumption in favor

27

28        [5]  Given the $6,365.04 at issue in the *GoDaddy* decision, the court suspects the processing
          costs also were more closely associated with a conversion of data (as opposed to the costs here).

1    of the broadest possible reading of the costs enumerated in § 1920." *Id.* at 2005-06.

2         The court is sympathetic to Aliph's argument that the processing was necessary to produce the

3    discovery and that the only way to "copy" and produce usable electronic data is to hire a vendor,

4    capture users' emails and files, and process, review, and produce them. But given ESI processing

5    costs that exceed $200,000, the case law, the recent Supreme Court decision, and the lack of a

6    discussion about the costs in the ESI agreement, the court declines to award the processing costs.

7         As a separate ground for its decision, the court exercises its discretion and holds that Aliph did

8    not itemize the e-discovery processing costs with enough detail to establish that the court should

9    award it any of the ESI processing costs. *See* Civ. L. R. 51(a) (affidavit and appropriate

10   documentation must support each item claimed on the bill of costs). More specifically, the court's

11   view is that the capture, processing, and segregation of data in the in-house processing is separate

12   from the TIFF conversion and appears to be the e-gathering and processing efforts that *Oracle*

13   *America* disapproved. If any part of that process is closer to the TIFF conversion process,

14   conceivably some greater portion of the $113,374.50 could be compensable. The court cannot tell

15   whether this is so from the record and thus concludes that Aliph did not establish sufficiently any

16   ESI processing costs that it might recover.[6]

17        In sum, the court does not tax the third-party vendor production costs ($100,948.17), the data

18

19        [6] Plantronics criticizes the use in the Quinn report of "cursory, high level and unexplained

20   terms and acronyms to describe the services provided, *e.g.,* "EDD+TIFF," "Encase Extraction," and
     "HDD creation." Opposition, ECF No. 238 at 22 (rejecting Aliph's definition of the terms at a meet-

21   and-confer as falling short of establishing that the claimed costs qualify as "making copies"). The
     court disagrees that these terms are too vague or high-level. First, Aliph explained them. Second,

22   these are standard processes familiar to anyone who has engaged in any ESI discovery. The court

23   appreciates that it is technical jargon to the uninitiated, but it is not to individuals with sufficient
     technical knowledge. *See* Principle 2, *Introduction to ESI Recommendations*, *supra* note 3 ("In the

24   process of planning, producing, and resolving disputes about ESI discovery, the parties should
     include individuals with sufficient technical knowledge and experience regarding ESI").

25

26        Plantronics also objects to the Quinn Report on the ground that it is not a business record.
     Opposition, ECF No. 238 at 22. The court is sure that it could be authenticated as one, and

27   Plantronics generally provides that authentication in the Land declaration filed in support of
     Plantronics' reply memorandum. *See* ECF No. 240-1. In any event, Civil Local Rule 54 requires

28   only "appropriate documentation," not admissible evidence.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    copy and extraction to EnCase ($600.00), or the EDD discovery (except the actual TIFF conversion

2    costs).  As to the last category, the record has only Plantronics' suggested TIFF conversion costs of

3    $.04 per page, which – applied to the page total in the record of 347,795 – results in taxable costs of

4    $13,911.80 (and excluded costs of $99,462.70).

5        The rest of the categories in the chart on page 15 are taxable.  One category is the OCR costs of

6    $5,992.59.  Because OCR takes place after conversion to a PDF or TIFF, and because Plantronics

7    asked for that production in its ESI agreement, the court awards it.  This process is essential for any

8    meaningful review of the PDF documents, the cost is modest, it makes sense that Plantronics asked

9    for it in that format, and it would have OCRed its documents anyway.  This is why the court treats

10   the specific request for OCR in the ESI agreement differently than imposing ESI processing costs.

11       Plantronics has three remaining objections to the otherwise taxable discovery.  *See* Chart, p. 17.

12       First, as to the CD and DVD creation and duplication, the costs ordinarily would be taxable.

13   Plantronics said that Aliph produced only 6 CDs and 10 DVDs.  Opposition,  ECF No. 238 at 29

14   (citing Bohrer Decl., ¶¶ 7-8 and Ex. 4).  Applying the duplication rates from the Quinn Report,

15   Plantronics argues that the court should disallow $1,410.00 of the $1,700.00 Aliph seeks.  Aliph

16   does not respond to Plantronics' argument, and the court could not find an explanation in the record.

17   The court thus deducts $1,410.00.

18       Second, as to the 17 hard drives ($6,700), discovery produced on hard drives would be taxable

19   (including the costs of the hard drives).  Plantronics says that it never received any.  These may have

20   been drives used to capture data that Aliph processed.  Either way, the court does not tax the costs.

21       Third, as to the $6,621.10 in costs described in the Quinn Report as discovery documents for

22   deposition preparation in the form of blowbacks, slipsheets, and native file printing, Plantronics says

23   that there is no evidence that it requested or received them, and it argues that the costs duplicate the

24   already-taxed copying of the deposition exhibits.  Aliph did not respond to this argument.

25   Accordingly, the court subtracts $6,621.10 in taxable costs.

26       In sum, the excluded costs for the third-party vendor are $100,948.17, and the excluded costs for

27   the in-house production are $600.00 plus $99,462.70 plus $1,410.00 plus $6,700.00 plus $6,621.10

28   equals $114,793.80 (leaving taxable costs for the in-house production of $20,613.36).

ORDER (C 09-01714 WHA (LB))

**V.  CONCLUSION**

The court taxes total costs of $93,929.16.

**IT IS SO ORDERED.**

Dated: October 23, 2012

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California