IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANTRONICS, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>ALIPH, INC., et al.,<br><br>  Defendants. | No. C 09-01714 WHA<br><br>**ORDER REGARDING DEFENDANTS' MOTION *IN LIMINE* NO. 3 REGARDING PRIVILEGE** |

Plaintiff will not be allowed to reference the alleged "veto provision" because they stonewalled in discovery. Mr. Napper can, however, reference and refer to plaintiff's offer to Primax Electronics Ltd. for $0.25 per set of ear buds and the lack of geographical restriction to the offer. The paragraph with the heading "*Restrictions as to Primax's customers and products covered*" on pages 21 and 22 of Mr. Napper's report is hereby stricken. On the other hand, this order does not preclude plaintiff from arguing or introducing admissible evidence supporting a reasonable royalty exceeding $0.25 per unit. Such relief requested is grossly disproportionate to the scope of privilege asserted even though plaintiff's counsel abused the privilege during deposition and never should have claimed privilege for many of the questions asked.

This motion boils down to an alleged "veto provision" in an offer plaintiff made third-party Primax in 2010, after this action was underway. Defendants argue discovery shenanigans occurred. In brief, in March 2011, defendants requested "All DOCUMENTS REGARDING any consideration, recommendation, offer, or proposal to license, sell, or purchase any right, title, or interest in the '453 PATENT or RELATED PATENT(S)/ APPLICATION(S)" (Parker Decl. Exh. D at 11). In November 2011, plaintiff's FRCP 30(b)(6) witness testified:

> Q. Plantronics doesn't have any licenses to the '453 patent, does it?

> A. No.
>
> Q. And you're not aware of anyone in Plantronics' industry approaching Plantronics and asking for such a license, are you?
>
> A. That's correct.

(Bernardi Dep. 144:8–15). Nine days later, on the eve of the close of fact discovery in 2011, plaintiff produced the emails containing the offer made in 2010. On the last day of fact discovery, the deposition of Francois DeVilliers, plaintiff's in-house counsel and the author of the email offer, occurred.

Plaintiff's counsel and Mr. DeVilliers selectively asserted the attorney-client privilege. The undersigned judge is troubled by plaintiff's aggressive misuse of the privilege for non-privileged questions. Here are some examples:

> Q. How did you come to the 25-cent royalty number that you proposed here?
>
> A. I don't recall how that particular figure was arrived at.
>
> Q. Who did you discuss it with, if anyone?
>
> MR. BOHRER: Instruct you not to answer to the extent that the question goes to communications that you had internally at Plantronics.
>
> Q. Go ahead.
>
> A. I'm not going to answer on the basis that the communications related to attorney-client privileges.
>
>     *   *   *
>
> Q. But you're not going to tell me how many, how many people you spoke with, based on your client's instruction -- or excuse me, your counsel's instruction, correct?
>
> A. That's correct.
>
> Q. And you won't tell me who you spoke with, based on your counsel's instruction, correct?
>
> A. That's correct.
>
> Q. When did you speak with these people?
>
> MR. BOHRER: Instruct you not to answer to the extent it relates to communications that you had within Plantronics relating to providing legal services. Instruct you not to answer in that regard.

2

> Q. You won't tell me when you spoke with people about the 25-cent royalty based on your counsel's instruction?
>
> A. Yes.
>
> Q. Who decided to propose a royalty of 25 cents?
>
> MR. BOHRER: Instruct you not to answer. Attorney-client privileged communication.

(DeVilliers Dep. 39:13–24, 42:4–24). On the other hand, Mr. DeVilliers volunteered self-serving testimony such as the alleged "veto provision."

> Q. And that "someone" you're referring to is Aliph, my client, correct?
>
> A. That someone is the manufacturer of — sorry — a client of Primax that we did not want to have the earbud. So that's the veto power.
>
> \*         \*         \*
>
> Q. What factors did you consider in arriving at the 25-cent royalty that Plantronics offered to Primax for a license to the patent-in-suit?
>
> [Objection]
>
> A. Well, this was going to be a sweetheart deal for a partner of ours. It was going to be a very restricted license because we would have a veto over the manufact — the recipient of the — of headsets with the earbud made by Primax.
>
> There was also a cloud over the patent due to the reexamination. And also, there was no geographic limitation on the products for which the royalty would be paid.
>
> \*         \*         \*
>
> Q. What other documents would reflect the restriction that you've referred to as a veto power, other than Exhibit 391, if there are any?
>
> A. The --
>
> MR. BOHRER: I'm going to -- I'm sorry, I'm going to interrupt you. I apologize to both of you. The objection is that you can answer yes or no whether there are any other documents, but don't say anything more than that because there's an attorney-client privileged communication.
>
> \*         \*         \*

3

> Q. And you're not prepared to give me any testimony today about other documents aside from Exhibit 391 that would reflect the veto power restriction that you've mentioned; is that correct?
>
> A. Yes.
>
> Q. These documents exist, but you won't testify to them in view of you counsel's instruction?
>
> Mr. Bohrer: Mischaracterization, fails to acknowledge that there is an attorney-client communication.
>
> A. Yes, on the basis of attorney-client privileges.

(DeVilliers Dep. 21:4–8, 43:15–44:5, 22:12–22, 26:8–19).

In December 2011, Magistrate Judge Bernard Zimmerman, before whom the entire case was then pending, held a discovery hearing. Defendants' counsel stated on the record that they did not intend to file a motion disputing the privilege at that time but "reserve[d] the right and will enforce the right to prevent [plaintiff] from offering testimony that is within that privilege" (Dec. 14, 2011 Hr'g. Tr. 45:8–9, 48:12–13, 48:15–17). When plaintiff expressed concern with defendants possibly seeking to preclude at trial Mr. DeVilliers based on privilege, Magistrate Judge Zimmerman stated:

> The Court: And I'm saying he's not going to do that because I'm not going to let him. Because if he says to me at trial what you just said, I'm going to tell him, look, you had an opportunity. You should have resolved the question of whether Mr. DeVilliers had to answer more questions or whether these documents were privileged back last December . . . . What he, I understand, is telling me is that if you have, for example, asserted a privilege and prevented Mr. DeVilliers from testifying about certain areas, he isn't going to ask him about those areas, but you can't either.

(*id*. at 55:4–16). Both parties list Mr. DeVilliers as a "may call" witness in their pretrial disclosures. The principle that will apply, as stated during the hearing held on this motion on February 19, is that plaintiff will not be permitted to hide behind the privilege during a deposition but tender that so-called privileged information at trial.

Plaintiff argues that defendants' motion is a disguised *Daubert* motion against Mr. Napper who considered the offer in rendering his reasonable royalty opinion. Among his explanation for why defendants should pay 400% of the rate offered to the third-party, is a quote from Mr. DeVilliers. The following paragraph is stricken from Mr. Napper's report.

4

> Plantronics required that the license be restricted so that Plantronics would have control over the customers that Primax would be supplying Bluetooth mono headset products incorporating the patented technology.  Specifically, Plantronics limited the license it was offering by not allowing Primax the right to manufacture any Bluetooth headsets on behalf of Aliph, given the pending patent infringement litigation.  *Additionally, "[i]t was going to be a very restricted license because [Plantronics] would have a veto over the… recipient…of headsets with the earbud made by Primax."*  Additionally, Plantronics sought to also restrict the license so that Primax only sold Bluetooth headsets with the patented ear bud "attached or included, and not as a separate item" in order "to prevent large quantities of loose ear buds from getting into the hands of the wrong party."  Plantronics did not want its competitors to obtain access to its '453 patented technology and, therefore, sought to restrict the license in this fashion.  This also had a downward influence on the royalty rate offer made to Primax.

(Dkt. No. 325-10 at 21–22) (emphasis added).  Defendants, however, ask for the moon.  They take this privilege issue and run to the undersigned judge for a blanket ban on Mr. Napper arguing for a reasonable royalty over $0.25 per unit.  The relief requested is unjustified.  Mr. Napper provided a number of reasons for opining that a reasonable royalty should be $1.00 which the jury may or may not eventually accept.

**IT IS SO ORDERED.**

Dated:  February 21, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE