IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALIPH, INC., et al., <br><br> Defendants. | No. C 09-01714 WHA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE* NO. 3 REGARDING "DIMENSIONED TO CONTACT AN UPPER CONCHA"** |

Plaintiff Plantronics moves *in limine* to exclude any testimony, evidence, or argument "(a) that the claim limitation 'dimensioned to contact an upper concha' requires intent and guaranteed performance during design, and (b) that the headsets using the accused Ergo and Spout earbuds do not infringe this limitation because these earbuds are not intended to contact the upper concha of the ear." This motion is **GRANTED IN PART AND DENIED IN PART**.

Defendant Aliph is barred from arguing or soliciting testimony that the "dimensioned to contact an upper concha" limitation requires intent. The jury shall be instructed that intent is not required for direct infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, — U.S. —, 131 S. Ct. 2060, 2065, n. 2 (2011). On the other hand, this order further holds that the "reasonably capable" line of decisions does not apply to our limitation calling out "dimensioned to contact an upper concha."

The parties stated at oral argument that core to their dispute is whether Aliph's accused earbuds are "dimensioned to contact an upper concha." Claim 10 of the asserted patent states:

> 10. A headset comprising:
>
> a receiver sized to fit between a tragus and an antitragus of an ear, the receiver having a tragus contact point, and an anti-tragus contact point disposed substantially opposite to the tragus contact point;

1  an ear cushion dimensioned to cover a portion of the receiver; and

2  a concha stabilizer coupled to the ear cushion and *dimensioned to contact an upper concha* between an antihelix and a crux of a helix with the receiver disposed between the tragus and the antitragus.

(emphasis added). During claim construction, the parties agreed that "upper concha" means "a depression in a human ear that lies above the crux of the helix and below the antihelix, as illustrated by example in Figure 3 of the '453 patent" (Dkt. No. 99 at 2). Figure 3 of the asserted patent is shown below:



FIGURE 3

Even though both sides frame their dispute — in this motion and in their jury-instructions memoranda — as whether "intent" is required in the "dimensioned to contact an upper concha" limitation, the *real* dispute seems to be whether an earbud that is "reasonably capable" of contacting an upper concha infringes. This order finds that the "reasonably capable" test does not apply to direct infringement of the "dimensioned to contact an upper concha" limitation. In other words, short-lived contact with an upper concha (*i.e.*, while a user is fitting the headset to his ear) or contact with an upper concha in a small unusual segment of the population of ears cannot suffice to show direct infringement of this asserted patent by every accused product.

Key to the invention of the asserted patent is the design of a concha stabilizer, called an earbud, and the way in which it stays in the ear. Configuration is critical, otherwise the earbud would fall out. On an earlier appeal, the Federal Circuit construed "concha stabilizer" to mean "a stabilizing structure dimensioned to extend between the ear cushion and the upper concha." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1352 (Fed. Cir. 2013). As illustrated by example

1  in Figure 3, the structure must be stabilized in the human ear. It thus would be unduly expansive
2  to extend the claim to cover earbuds with only *de minimus* temporary adjustment contact with
3  the upper concha or earbuds which contact the upper concha in a small unusual subset of the
4  population of ears. We are dealing with the main run of ear shapes, not random outliers. Indeed,
5  "Fig. 3 shows a typical human ear" (col. 4:45).

On this point, the specification and figures are instructive. Although the patent does not contain a figure showing the claimed invention in a human ear, the patent does discuss preferred embodiments. Figures 1B and 2C are shown below:



The specification repeatedly refers to contacting the upper concha:

> "The cellular foam of the stabilizer support 17 gives the hinge point 28 sufficient angular tension to *maintain the concha contact point 24 against the surface of the upper concha 43*. The degree of angular flexure of the hinge point 28 is *dependent upon the size and shape of the user's ear, particularly the upper concha 43*, antihelix 45, and the crux of the helix 31. The hinge action of the hinge point 28 coupled with the general flexibility and resilience of the stabilizer support 17, allow the stabilizer support 17 to *automatically adjust to the size and shape of the user's upper concha 43* without any additional mechanical devices, to properly position the concha stabilizer pad 21" (col. 3:54–65) (emphasis added).

> "In the embodiments of FIGS. 2A and 2B the support arch 55 provides the support of the concha stabilizer pad 57, and *provides*

3

      *sufficient tension to maintain the concha stabilizer pad 57 against the upper concha 43 during use*" (col. 4:23–26) (emphasis added).

      "The torid shape of the concha stabilizer 57c enables the pad *to deform and adapt to the shape of the upper concha*, thereby maintaining the receiver in position" (col. 4:41–44) (emphasis added).

      "Another portion of the foam piece forms a supporting foam member that extends from the top of the ear cushion to *a concha stabilizer pad that rests against the upper concha*" (col. 2:11–13) (emphasis added).

      "A concha stabilizer pad is secured to the top of the arch and *provides a contact point when inserted into the upper concha*. The arch is resilient to provide *tension to the upper concha* through the foam pad, thereby stabilizing the receiver in the ear" (col. 2:21–26) (emphasis added).

      " . . . a concha stabilizer pad mounted at the end or top of the support member, *for contacting the upper concha* below the antihelix . . ." (col. 2:61–63) (emphasis added).

      "The end of the stabilizer support 17 is coupled to the concha stabilizer pad 21 *which contacts the upper concha 43* beneath the antihelix" (col. 3:26–28) (emphasis added).

      "The user than pushes the stabilizer support 17 *into and against the upper concha 43*, below the antihelix 45. The outer surface of the concha stabilizer pad 21 provides *a concha contact point 24 which contacts the upper concha 43*, thereby providing three points of contact for stabilizing the ear cushion" (col. 3:45–51) (emphasis added).

      "The concha stabilizer pad *engages the upper concha* below the antihelix when the receiver is placed in the lower concha between the tragus and antitragus, thereby creating *three points of contact at the tragus, anti-tragus, and the upper concha*" (col. 2:2–6) (emphasis added).

Despite such repetition in the patent, Plantronics' theory is that so long as the accused earbuds are "reasonably capable" of reaching the upper concha in some ear of some shape somewhere, Aliph infringes. This order disagrees.

      The Federal Circuit has stated that the "reasonably capable" case law is "relevant only to claim language that specifies that the claim is drawn to capability." *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009). Where the claim language specifies that infringement occurs only if the accused product is configured according to the limitation (*i.e.*, with the protrusions "resting upon" the cover), then just because the

4

1 accused product is reasonably capable of being put in the claimed configuration, that is
2 insufficient for finding infringement. *Id*. at 995.

3 In *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310–12
4 (Fed. Cir. 2005), the Federal Circuit reversed summary judgment of infringement because the
5 asserted apparatus claim contained a structural limitation that the anchor seat be "operatively
6 joined," meaning "connected and in contact," to a bone segment. The patentee had not proven
7 that the accused infringer made such an apparatus and it was not sufficient that the device *could*
8 contact the bone when the surgeon (not the accused infringer) implanted the device. Here too,
9 our claim contains a limitation that the "concha stabilizer coupled to the ear cushion" be
10 "dimensioned to contact an upper concha" (col. 6:12–13). Just because some unusual outlier
11 ears have extreme shapes, that does not translate to infringement for all accused earbuds. The
12 limitation calls out "contact" and the patent consistently refers to the concha stabilizer being
13 "against the surface of the upper concha," "against the upper concha," "inserted into the upper
14 concha," and "contacting the upper concha" (cols. 2:62, 2:22–23, 3:47, 3:56–57). While
15 Plantronics is not expressly limited to the precise measurements of Figure 3, if the claims were
16 to be extended to include earbuds that reach ears of an abnormal outlier shape, then the
17 infringing product would no longer be dimensioned in the same way. There would be a
18 vagueness problem. Many different dimensions would infringe and no one would know in
19 advance for sure what infringes. In this way, Plantronics' argument boils down to a means-plus-
20 function approach, that is, trying to capture all shapes of earbuds that conform to all shapes of
21 ears, no matter how bizarre, as they become known. The claim is not framed as a functional
22 claim, but if it were, it would only be right to limit the invention to the disclosed embodiments
23 plus equivalents. So although Plantronics is not restricted to the precise measurements of Figure
24 3, it nevertheless, cannot reach every ear known or unknown to man. Furthermore, that the
25 accused device may be altered into an infringing configuration under unusual circumstances does
26 not mandate a finding of infringement. *High Tech Med. Instrumentation, Inc. v. New Image*
27 *Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995).

28

5

On the other hand, when the claim only requires capacity to read on the limitations, "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001). In *Hilgraeve*, just because the accused infringer could point to four tests wherein the accused product did not infringe, those tests were not conclusive to find non-infringement at summary judgment. *Id*. at 1344. Similarly, in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369–70 (Fed. Cir. 2009), summary judgment of infringement was affirmed because the claim limitation merely stated: "*capable of engaging* second magnetic members of an auxiliary spectacle frame" and the patentee showed three specially-made auxiliary frames that could be top-mounted onto the primary frames. Unlike in *Hilgraeve* and *Revolution Eyewear*, here, "dimensioned to contact an upper concha" is not satisfied by mere capability, for the invention calls for tension against three points of contact in the ear.

To return to the intent issue, a "direct infringer's knowledge or intent is irrelevant." *Global-Tech*, 131 S. Ct. at 2065, n. 2. Direct infringement is a strict-liability tort. Even though Plantronics has asserted inducement and contributory infringement claims, Plantronics nevertheless needs to clear the threshold direct infringement hurdle by showing that the accused products necessarily infringe or specific instances of direct infringement in order to move on to indirect infringement. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

In *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329, 1340 (Fed. Cir. 2010), summary judgment of non-infringement for all products except for four was affirmed. The patentee presented direct infringement evidence for four models of the accused products only. Evidence that the other products were merely capable of infringing did not suffice. *Id*. at 1328–29. Genuine issues of material fact remained for the four models. *Id*. at 1340. But even in *Fujitsu*, there were customer service records showing direct infringement of the four accused *models* and the core question was whether the district court could rely on an industry standard in analyzing infringement (yes). *Id*. at 1327. Here, if the question is whether it suffices for plaintiff to show

6

*instances* of infringement of the asserted patent in unusual outlier ears, then the answer is no. So while this order agrees with Plantronics that intent is not an element of direct infringement, it cannot be that this patent — which repeatedly refers to contact with an upper concha — can be read onto products which may contact the upper concha in a few unusual outlier human ears.

Indeed, Aliph argues that "[t]o make the accused earbud contact the upper concha, a user would have to twist the headset into a vertical orientation which would prevent it from working properly and likely cause it to topple out in use" (Opp. 4). In other words, in Aliph's view, if the accused earbuds contact the upper concha, it is a misuse. This order will not preclude Aliph from proffering such evidence or testimony if admissible. In that regard, Aliph is not barred from arguing that the accused earbuds do not directly infringe. What Aliph is barred from arguing is that the claim limitation requires intent or direct infringement requires intent. The jury will be so instructed.

This order also notes that Plantronics has asserted indirect infringement and willfulness wherein intent play a role. In that regard, Plantronics has opened the door to evidence of intent and it would be unfair to cripple Aliph's defense. Plantronics cannot have it both ways.

Plantronics also seeks to strike paragraphs 46 through 48 of Aliph's non-infringement expert report by Professor Dennis K. Lieu. The relevant portions are reproduced below:

> 46. It is my opinion that Aliph's accused products do not have a stabilizer support member "dimensioned to fit within an upper concha" as required by claim 1. In standard engineering practice, the dimensions of a part are defined for the specific purpose of ensuring that the part functions in its intended manner, for example to ensure engagement of a feature in another part, or to ensure avoidance of engagement of a feature in another part. Further, that dimension must be specified in such a way to ensure the proper function of the part when manufacturing imperfections exist. Establishing the dimensions of a part is therefore not arbitrary, but is rather unique to fulfillling [sic] a specific functional need.
>
> 47. The Ear Channel Spout in the Spout earbud (or the spout nub in the Ergo earbud) is co-linear on the Medial Line with the Medial Crest of the U-shaped extension . . . . Given the manner in which the Spout and Ergo earbuds are dimensioned, and based on the size and shape of the U-shaped extension, it is evident that the intended area of engagement with the ear is significantly outside the upper concha . . . . This [upper concha] region would appear to be a spot of only several millimeters in width. With this definition of the upper concha, Aliph's U-shaped extension, as it is

7

>dimensioned, cannot fit within the upper concha. The broad shape of the extension is inconsistent with a feature dimensioned to fit the precise and small depression in the ear that is the upper concha.
>
>48.     The manner in which the Spout earbud is depicted in the photographs in the report of Mr. Katz is obviously incorrect, and potentially misleading . . . . In the proper location, the Medial Line would become more horizontal, and the engagement area of the Ushaped extension is in the lower and rear concha of the ear, with the Medial Crest engaged in the lower concha. Although the earbud can be forcibly installed such that the Ear Channel Spout is oriented substantially downward, and the Medial Crest is essentially oriented upward such that a portion of the U-shaped extension may engage the upper concha, it is obvious that doing so would result in discomfort for the wearer and significant loss of functionality of the device . . . .

This order does not strike paragraphs 46 through 48, however, Aliph shall not use Professor Lieu's report or testimony to argue that the "dimensioned to contact the upper concha" limitation requires intent.

In sum, this order finds that:

1.     Aliph is barred from arguing or soliciting testimony that the "dimensioned to contact an upper concha" limitation requires intent or direct infringement requires intent. The jury will be so instructed.

2.     The "reasonably capable" line of decisions does not apply to our limitation calling out "dimensioned to contact an upper concha."

3.     This order does not preclude Aliph from proffering admissible evidence that the accused earbuds do not infringe. To avoid unnecessary confusion by the jury, the parties should focus on what was invented, the design of the accused products, and how the accused products fit in the ear. As discussed at oral argument, there are a number of ways to avoid using the word "intent," including "dimensioned," "sized," and "designed." Possibly, there exist contemporaneous documents in Aliph's files that mention the word intent. This order does not outright exclude those documents. Each item will be assessed at the time upon objection.

4.     When the parties provide notice of their witnesses and exhibits to be used for the next court day(s), they should simultaneously provide notice of any demonstratives to be used. Those demonstratives should be available for inspection if requested. This can avoid needless wasting of the jury's time arguing about exhibits and demonstratives shown to a witness. More

8

guidance is provided in the Court's *Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases*.

**IT IS SO ORDERED.**

Dated: February 26, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE